**Michael Fuller, OSB No. 09357**
OlsenDaines
US Bancorp Tower
111 SW 5th Ave., Suite 3150
Portland, Oregon 97204
michael@underdoglawyer.com
Direct 503-222-2000

**Justin Baxter, OSB No. 992178**
Baxter & Baxter, LLP
8835 SW Canyon Lane, Suite 130
Portland, Oregon 97225
justin@baxterlaw.com
Direct 503-297-9031

**Kelly D. Jones, OSB No. 074217**
kellydonovanjones@gmail.com
Direct 503-847-4329

Of Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **SAPRINA ODLE** individually and on behalf of all others<br><br>Plaintiff<br><br>vs<br><br>**PALMER ADMINISTRATIVE SERVICES, INC., N.C.W.C., INC.,** and **DOES 1-10**<br><br>Defendants | Case No. 3:21-cv-623<br><br>**CLASS ACTION COMPLAINT**<br><br>Auto-Warranty Robocalls Telephone Consumer Protection Act (47 U.S.C. § 227)<br><br>Demand for Jury Trial |

**CLASS ACTION COMPLAINT** – Page 1 of 22

**INTRODUCTION**

**1.**

Auto-warranty robocalls were the top unwanted call complaint filed by American consumers with the FCC last year, and the trend continues into 2021.[1]

**2.**

Ms. Odle is an Oregon consumer. Over the past several years, Ms. Odle's cell phone has been blown up with over 150 unwanted robocalls trying to sell her Palmer extended auto-warranties. Ms. Odle repeatedly asked Palmer to stop calling her. The robocalls did not stop.

**3.**

Having no other choice, Ms. Odle now files this class action to get the robocalls to stop once and for all, and to recover $1,500 per call for each Oregon consumer who received an unwanted robocall from defendants over the past four years.

---

[1] https://www.fcc.gov/fcc-data-spotlighttop-five-unwanted-call-complaints

**CLASS ACTION COMPLAINT** – Page 2 of 22

## BACKGROUND

### 4.

Plaintiff brings this putative class action on behalf of herself and similarly situated Oregonians to enforce the privacy protections of the Telephone Consumer Protection Act (TCPA), and to seek redress for defendants' harassing, unsolicited, and unlawful calls soliciting extended auto warranties and other products and services using an artificial or prerecorded voice.

### 5.

After years of failed effort to stop the incessant illegal calls from defendants, exhausted and devoid of any other options, plaintiff and her counsel have decided to devote further time and resources to seek relief from this Court on behalf of themselves and their fellow Oregonians.

### 6.

The TCPA was enacted by Congress in 1991 in response to widespread public outrage about the proliferation of intrusive nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

**7.**

With limited exceptions, the TCPA makes it unlawful for any person to make any call, other than a call made for emergency purposes or made with the prior express consent of the called party, using an artificial or prerecorded voice to any telephone number assigned to a cellular telephone service. 47 U.S.C. § 227(b)(1)(A). With limited exceptions, the TCPA also makes it unlawful for any person to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party. 47 U.S.C. § 227(b)(1)(B). Under its delegation of authority to implement rules under the TCPA, the FCC promulgated regulations for telemarketing calls that require a party to obtain "express written consent" prior to making calls using a prerecorded or artificial voice. 47 C.F.R. § 64.1200(a)(1)-(2). The FCC rule defines "express written consent" as "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered." 47 C.F.R. § 64.1200(f)(8).

**CLASS ACTION COMPLAINT** – Page 4 of 22

**8.**

The TCPA provides a private cause of action for individuals to enjoin and to seek $500 for each call made in violation of § 227(b)(1), or $1,500 for each call made willfully or knowingly in violation of § 227(b)(1). *See* 47 U.S.C. § 227(b)(3).

**9.**

For a person or entity to "make" a call under the TCPA, the person or entity must either (1) directly make the call or (2) have an agency relationship with the person who made the call. *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 877-79 (9th Cir. 2014).

**10.**

Under federal common law agency principles, there are multiple ways to establish an agency relationship, including express actual authority, implied actual authority, apparent authority, and ratification. *See* Restatement (Third) of Agency.

## JURISDICTION AND THE PARTIES

### 11.

This Court has jurisdiction under 28 U.S.C. § 1331 because the TCPA, 47 U.S.C. § 227, is a federal consumer protection statute.

### 12.

Venue is appropriate in this District under 28 U.S.C. § 1391(b), and this Court has personal jurisdiction over defendants, because defendants conduct a significant amount of business transactions within this District, the wrongful conduct giving rise to this action occurred in, was directed to, or emanated from this District, and plaintiff resides in this District.

### 13.

Plaintiff is a natural person who lives in and is domiciled in Oregon.

### 14.

Defendant Palmer Administrative Services, Inc. (Palmer) is a Delaware incorporated entity, with a principal place of business located at 3430 Sunset Avenue, in Ocean, New Jersey 07712. Palmer is registered with the Oregon Secretary of State in order to conduct its business in Oregon, and its registered agent in Oregon is Registered Agents Inc. located at 5305 River Road North, Suite #B, Keizer, Oregon 97303.

**CLASS ACTION COMPLAINT** – Page 6 of 22

**15.**

Palmer conducts significant business in Oregon, including by making or authorizing calls to Oregonians using an artificial or prerecorded voice in violation of the TCPA to market its products and services, causing harm to plaintiff and the putative class members that Palmer knows is likely to be suffered here in Oregon.

**16.**

Defendant N.C.W.C, Inc. (NCWC) is a sister entity of Palmer, with a principal place of business at the same address as Palmer at 3430 Sunset Avenue, in Ocean, New Jersey 07712. Palmer and NCWC share common ownership and management, including Michael Shaftel. NCWC conducts significant business in Oregon, including by making or authorizing calls to Oregonians using an artificial or prerecorded voice in violation of the TCPA to market its or Palmer's products and services, causing harm to plaintiff and the putative class members that Palmer knows is likely to be suffered here in Oregon.

**17.**

Upon information and belief, Does 1-10 are yet-to-be-identified persons or entities that Palmer or NCWC contracted with, engaged, directed, or authorized to make calls to plaintiff and the putative class members, as set forth in more detail in this complaint, to market Palmer's or NCWC's products and services. Does 1-10 conduct significant business in Oregon, including by intentionally and expressly making calls using an artificial or prerecorded voice in violation of the TCPA to market Palmer's or NCWC's products and services, causing harm to plaintiff and the putative class members that they know is likely to be suffered here in Oregon.

## ADDITIONAL FACTUAL ALLEGATIONS

### 18.

Palmer offers and sells extended auto warranties and other products and services to American consumers, including to Oregon residents. Palmer generally relies on third party telemarketing agents that it, or its sister entity NCWC, engages to execute telemarketing campaigns by making calls to market or sell Palmer's or NCWC's products and services.

### 19.

NCWC in a common enterprise with its sister entity Palmer to market and sell Palmer's, or its own, extended auto warranties or other products and services to American consumers, including to Oregon residents. NCWC generally relies on third party telemarketing agents that it engages to execute telemarketing campaigns by making calls to market or sell Palmer's, or its own, products and services.

**20.**

Palmer's and NCWC's telemarking campaigns have unlawfully invaded the privacy of countless American consumers, hundreds of which of which have submitted complaints about Palmer's and NCWC's unlawful practices. *See, e.g.,*

https://www.bbb.org/us/nj/ocean/profile/extended-warranty-contract-service-companies/palmer-administrative-services-0221-90163943/customer-reviews;

https://www.bbb.org/us/nj/allenhurst/profile/auto-warranty-processing/ncwc-inc-0221-11001474.

**21.**

In 2015, Palmer, NCWC, and one of their telemarketing agents, Got Warranty, Inc., were sued in a class action lawsuit in the Northern District of West Virginia titled *Mey v. Got Warranty, Inc., Ganna Freiberg, N.C.W.C., Inc., and Palmer Administrative Services, Inc.*, Case No. 5:15-cv-00101-JPB-JES (Mey Class Action). *Inter alia*, the Mey Class Action alleged that Palmer, NCWC, and Got Warranty, Inc. violated § 227(b)(1) of the TCPA by "initiating a telephone call using an automated dialing system or prerecorded voice to Plaintiff's telephone numbers assigned to a cellular telephone service, or (b) by the fact that others caused the initiation of those calls on its behalf." Mey Class Action, Doc. 108 ¶ 65.

**CLASS ACTION COMPLAINT** – Page 10 of 22

**22.**

The Mey Class Action resulted in a class settlement (Mey Class Settlement), which was preliminarily approved by the court on April 6, 2017, certified a class including "[a]ll persons or entities in the United States to whom Got Warranty, Inc., or any third parties on its behalf, sent telemarketing calls promoting the goods or services of Defendants [Palmer and NCWC] at any time from August 6, 2011 to February 27, 2015," and authorized a $650,000 class settlement fund. The Mey Class Settlement was granted final approval in a judgment entered on July 26, 2017. Mey Class Action, Doc. 149.

**23.**

Despite the Mey Class Settlement, Palmer and NCWC continued or resumed their illegal telemarketing campaigns marketing their extended auto warranties by targeting Oregon residents like plaintiff with unsolicited, unwanted, and harassing calls using a prerecorded or artificial voice without the consent of the called parties.

**24.**

Palmer and NCWC and their telemarketing agents have altered their unlawful telemarketing campaigns to make it more difficult for consumers to be able to hold them accountable, through the use of phone number spoofing technology or similar tactics which make it nearly impossible for the recipients to discover the identity of the caller(s) without formal legal discovery. See https://www.fcc.gov/spoofing. These tactics also increase Palmer and NCWC's profits, because calls from numbers with local area codes are much more likely to be answered by the recipients and calls from different numbers are nearly impossible to block.

**25.**

Plaintiff began receiving repeated and continuous calls to her cellular (cell) phone number 541-530-XXXX from various phone numbers she did not recognize in 2017. Since February 28, 2017, plaintiff has received more than 150 of these calls. Plaintiff's caller identification on her cell phone indicated that these calls were being made from a myriad of different phone numbers, mostly with Oregon area codes.

**26.**

On many occasions, plaintiff answered the calls. Each and every time she answered, she was presented with a prerecorded or artificial voice message soliciting extended auto warranties and stating that she should "dial 1" to speak with an operator or "dial 2" if she wanted her number removed, or similar language.

**27.**

On multiple occasions when plaintiff answered the calls, she would "dial 2" on her phone as directed, yet the calls would not stop. On many other occasions, plaintiff would "dial 1" on her phone after the prerecorded or artificial voice prompt and she would be connected to a live agent. The live agent would then attempt to sell her an extended auto warranty offered by Palmer or NCWC. On many other calls that plaintiff answered and "dialed 1" to speak with an agent after the prerecorded or artificial voice prompt, she would request that the calls stop and that she be taken off the calling list. However, the live agent who she was connected to would simply hang up on her. On at least one occasion the live agent called her a nasty name and then hung up on her. On at least one occasion plaintiff requested information about the extended warranties and the company behind the calls and the agent stated that the call was in regard to extended auto warranties offered by Palmer and NCWC.

**CLASS ACTION COMPLAINT** – Page 13 of 22

**28.**

On many occasions plaintiff would not be able to answer the calls, and on each of these occasions one of multiple versions of a prerecorded or artificial voice message would be left on plaintiff's voicemail. When plaintiff listened to each these messages, she heard a prerecorded or artificial voice consistent with the prerecorded or artificial voice messages that played when plaintiff answered the calls, marketing extended auto warranties.

**29.**

Because plaintiff's caller identification indicated that these calls were from different numbers, with mostly Oregon area codes, plaintiff was unable to block the calls or to identify the caller or discern the nature of the call, before answering the calls or listening to the messages featuring a prerecorded or artificial voice.

**30.**

Plaintiff has never given her written express consent, nor any form of consent, for any person or entity, including defendants, to make calls to her phone number using a prerecorded or artificial voice.

**31.**

Plaintiff has suffered a concrete injury-in-fact and has standing because defendants' unlawful and unsolicited telemarketing calls using a prerecorded or artificial voice at issue here without her consent "present the precise harm and infringe the same privacy interests Congress sought to protect in enacting the TCPA" and "by their nature, invade the privacy and disturb the solitude of their recipients." *Van Patten v. Vertical Fitness Grp., Ltd. Liab. Co.*, 847 F.3d 1037, 1043 (9th Cir. 2017). Moreover, plaintiff was personally affected by these unwanted calls as she has been frustrated and distressed by her inability to stop the calls, and the calls have invaded her privacy and have disrupted her daily activities and the peaceful enjoyment of her personal and professional life.

**32.**

Palmer and NWC are directly or vicariously liable for the calls made to plaintiff and the putative class members under federal common law agency principles, including express actual authority, implied actual authority, apparent authority, and/or ratification. *See* Restatement (Third) of Agency; *In re Joint Petition Filed by Dish Network, LLC*, 28 F.C.C. Rcd. 6574, 6574 (2013).

**33.**

Palmer and NCWC either directly initiated the calls in violation of the TCPA as described in this complaint, or contracted with, authorized, or directed one or more of the Doe defendants to make the calls on Palmer's or NCWC's behalf to market their products or services. Palmer and NCWC (1) expressly or impliedly authorized their telemarketing agents to make calls using a prerecorded or artificial voice without the consent of the called parties; and/or (2) ratified their telemarketing agents' use of a prerecorded or artificial voice without consent of the called parties through acquiescence in their telemarketing agents' calling practices by remaining silent and continuing to accept the benefits of telemarketing agents' tortious conduct in violation of the TCPA despite knowing what their telemarketing agents' were doing or, at the least, remaining willfully ignorant by knowing of facts that would have led a reasonable person to investigate further but failing to do so ; and/or (3) Palmer's or NCWC's telemarketing agents acted with apparent authority in making the calls because the recipients of the calls, including plaintiff, reasonably believed that the calls were being made by Palmer or NCWC, or on behalf of Palmer or NCWC, because Palmer and NCWC's goods and services were what was being marketed in the calls.

## FRCP 23 CLASS ACTION ALLEGATIONS

### 34.

Under FRCP 23, plaintiff brings this action on behalf of herself and all other similarly situated individuals. The class is initially defined as: (1) all individuals that have phone numbers with an Oregon area code (503, 541, 971, or 458) to whom a call was made or initiated by or on behalf of Palmer or NCWC; (2) on or after February 28, 2017; (3) promoting, marketing, soliciting, or selling Palmer's or NCWC's products or services; (4) where such call featured an artificial or prerecorded voice; (5) where defendants do not have any current record of prior express written consent to place such calls at the time the calls were made. The following persons and entities are excluded from the class: (1) any judge or magistrate presiding over this action and members of their families; (2) defendants, defendants' subsidiaries, parents, successors, predecessors, and any entity in which defendants have a controlling interest; (3) defendants' current or former employees, officers, and directors; (4) persons who properly execute and file a timely request for exclusion from the class; (5) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (6) plaintiff's counsel and defendants' counsel; and (7) the legal representatives, successors, and assigns of any such excluded persons.

**35.**

A class action is proper under FRCP 23(a) because based on information and belief and the investigation by plaintiff's counsel, to be confirmed through defendants' records, the class consists of thousands of individuals. Therefore, joinder of all members is impracticable.

**36.**

This action can be maintained as a class action under FRCP 23(a) and (b) because there are questions of law and fact, and answers to those questions that are common to the class members and predominate over any questions relating to individual class members, including but not limited to:

**a)** Whether defendants made calls to plaintiff and the other class members using a prerecorded or artificial voice;

**b)** Whether defendants' calls to plaintiff and the other class members violated the TCPA;

**c)** Whether Palmer and NCWC are directly or vicariously liable for the unlawful calls made by their telemarketing agents; and

**d)** Whether plaintiff and the other class members are entitled to trebled statutory damages based on of defendants' conduct.

**CLASS ACTION COMPLAINT** – Page 18 of 22

**37.**

Plaintiff's claim is typical of the claims of the class members, based on the same factual circumstances, the same statute, and the same unlawful conduct—defendants' unlawful telemarketing campaign using a prerecorded or artificial voice without consent—which was uniformly directed toward plaintiff and the other class members, and plaintiff's and the other class members' statutory damages will be calculated uniformly based on the number of calls they received.

**38.**

Plaintiff will fairly and adequately represent and protect the interests of the other class members. Plaintiff has no interest antagonistic to those of the other class members, and there are no defenses that would be unique to plaintiff. Plaintiff has retained nationally known and locally respected counsel experienced in class action litigation and TCPA litigation to further ensure such representation and protection of the class. Plaintiff and her counsel intend to prosecute this action vigorously and have the resources necessary to successfully try this case to judgment.

**39.**

A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Absent class-wide adjudication, members of the class are without effective recourse. Because of the relatively small monetary value of each individual class member's claim, few, if any, class members could afford to prosecute an individual action against defendants. Even if the class members could sustain individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this complaint. Plaintiff's counsel is unaware of other litigation concerning the controversy. It is desirable to concentrate litigation of the claim in this forum for judicial economy and consistency. Moreover, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Furthermore, the common questions of law and fact in this case can be readily answered with common proof, primarily from defendants' own records.

## CLAIM FOR RELIEF

### – Violations of 47 U.S.C. § 227(b)(1) –

**40.**

Palmer, NCMC, or their agents made telemarketing calls to phone numbers belonging to plaintiff and the other class members using a prerecorded or artificial voice without their prior express consent, in violation of § 227(b)(1)(A)(iii) and § 227(b)(1)(B).

**41.**

Under § 227(b)(3), plaintiff and the class members are each entitled to a minimum of $500, and up to $1,500 if defendants' conduct is found to be willful or knowing, for each call made by any of the defendants in violation of § 227(b)(1)(A)(iii) or § 227(b)(1)(B).

**42.**

Under § 227(b)(3), plaintiff and the class members request an order enjoining defendants from engaging in further conduct in violation of § 227(b)(1).

**43.**

Demand for jury trial.

## PRAYER FOR RELIEF

On behalf of herself and the Class, plaintiff seeks relief as follows:

**A.**    An order under FRCP 23 certifying this case as a class action, appointing plaintiff as the class representative, and appointing plaintiff's counsel as counsel for the class;

**B.**    An order and judgment in favor of plaintiff and the class members against defendants for statutory damages in the maximum allowed under 47 U.S.C. § 227(b)(3), and for maximum allowable pre-judgment and post-judgment interest;

**C.**    An order enjoining defendants from engaging in future telemarketing in violation of the TCPA; and

**D.**    For any other relief this Court may determine is fair and proper.


April 25, 2021

RESPECTFULLY FILED,

s/ Michael Fuller
**Michael Fuller, OSB No. 09357**
Lead Trial Attorney for Plaintiff
OlsenDaines
US Bancorp Tower
111 SW 5th Ave., Suite 3150
Portland, Oregon 97204
michael@underdoglawyer.com
Direct 503-222-2000


**CLASS ACTION COMPLAINT** – Page 22 of 22