**CHOCK BARHOUM LLP**
Jeffrey W. Hansen, Esq., OSB No. 923290
Email:  jeff.hansen@chockbarhoum.com
121 SW Morrison Street, Suite 500
Portland, OR 97204
(503) 477-8906
*Attorney for Defendants Palmer Administrative*
*Services, Inc. and N.C.W.C., Inc.*

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## PORTLAND DIVISION

|  |  |
|---|---|
| **SAPRINA ODLE,** individually and on behalf of all others,<br><br>         **Plaintiff,**<br><br>**v.**<br><br>**PALMER ADMINISTRATIVE SERVICES, INC., et al.,**<br><br>         **Defendants.** | Case No. 3:21-cv-00623-AC<br><br>**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>**ORAL ARGUMENT REQUESTED** |

## LOCAL RULE 7-1 CERTIFICATION

In compliance with Local Rule 7-1(a), counsel for Defendants Palmer Administrative Services, Inc. ("Palmer") and N.C.W.C., Inc. ("NCWC") (collectively, "Defendants") conferred with counsel for Plaintiff Saprina Odle and are authorized to represent that Plaintiff opposes the relief sought herein.

## MOTION TO DISMISS

Pursuant to Local Rule 7-1(b), Fed. R. of Civ. P. 12(b)(1), 12(b)(2) and 12(b)(6), Defendants, by and through undersigned counsel, respectfully move this Court to enter an Order

dismissing Plaintiff Saprina Odle's Complaint for lack of personal jurisdiction; should it retain this case, the Court should nevertheless dismiss, with prejudice, all claims brought under to 47 U.S.C. § 227(b)(1)(A)(iii) for calls that occurred before July 6, 2020 for lack of subject-matter jurisdiction, and dismiss Plaintiff's entire Complaint for failure to state a claim.

## TABLE OF CONTENTS

1.    **The Supreme Court Holds the TCPA Unconstitutional, but Severs the Government-Backed Debt Exemption.**............................................17

2.    **The Court Does Not Reach a Majority on Liability for Pre-Severance Calls.**........................................................................18

3.    **The TCPA's Prohibition on Automated Calls Was Unconstitutional When the Alleged Calls Were Made.**........................21

## TABLE OF AUTHORITIES

**Cases**

*Abante Rooter & Plumbing, Inc. v. Alarm.com Inc.*, 2018 U.S. Dist. LEXIS 132078 (N.D. Cal. Aug. 3, 2018) ............................................................................................................... 29

*Aquilina v. Certain Underwriters at Lloyd's Syndicate*, 407 F. Supp. 3d 978 (D. Haw. 2019) ... 27

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................................. passim

*Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519 (1983) . 8

*Bank of Am., N.A. v. Knight*, 725 F.3d 815 (7th Cir. 2013) .......................................................... 27

*Barr v. American Association of Political Consultants, Inc.*, 140 S. Ct. 2335 (2020) .......... passim

*Bee, Denning, Inc. v. Capital All. Grp.*, 310 F.R.D. 614 (S.D. Cal. 2015) .................................. 32

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................................. 3, 8, 32

*Boisvert v. Carnival Corp.*, No. 8:20-cv-2076-30SPF, 2021 U.S. Dist. LEXIS 47397 (M.D. Fla. Mar. 12, 2021)........................................................................................................................ 17

*Bonkuri v. Grand Caribbean Cruises, Inc.*, Civ. No. 0:20-cv-60638-WPD, 2021 U.S. Dist. LEXIS 30940 (S.D. Fla. Jan. 19, 2021)...................................................................................... 17

*Born v. Celtic Mktg. LLC*, No. 8:19-cv-01950-JLS-ADS, 2020 U.S. Dist. LEXIS 89220 (C.D. Cal. May 20, 2020) ............................................................................................................. 11, 13

*Boschetto v. Hansing*, 539 F.3d 1011 (9th Cir. 2008) .................................................................. 6

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 137 S. Ct. 1773 (2017) ...................................... 9

*Brooks v. United States*, Case No. 10-3541 SC, 2011 U.S. Dist. LEXIS 87962 (N.D. Cal. Aug. 9, 2011) ....................................................................................................................................... 7

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)............................................................... 15

*Calder v. Jones*, 465 U.S. 783 (1984)........................................................................................ 11

*Camunas v. Nat'l Republican Senatorial Comm.*, CIVIL ACTION NO. 21-1005, 2021 U.S. Dist. LEXIS 100125, at *9 (E.D. Pa. May 26, 2021)...................................................................... 28

*City of Springfield v. Kibbe,* 480 U.S. 257 (1987)...................................................................... 23

*Ciuffitelli v. Deloitte & Touche LLP,* No. 3:16-cv-580-AC, 2017 U.S. Dist. LEXIS 106883 ..... 27

*Cochran v. Burlington Coat Factory of Or.*, 10-CV-6016-TC, 2011 U.S. Dist. LEXIS 136113 (D. Or. Sept. 27, 2011).................................................................................................. 7

*Corcoran v. CVS Health Corp.*, 169 F. Supp. 3d 970 (N.D. Cal. 2016)...................................... 13

*Creasy v. Charter Commc'ns, Inc.*, 489 F. Supp. 3d 499 (E.D. La. 2020)........................... passim

*Cunningham v. Arco Media Inc.*, No. 4:19-CV-00901-RWS-CAN, 2020 U.S. Dist. LEXIS 82584, at *12-13 (E.D. Tex. Apr. 3, 2020) .............................................................................. 33

*Cunningham v. Health Plan Intermediaries Holdings, LLC*, NO. 3:18-cv-00518, 2021 U.S. Dist. LEXIS 91978 (M.D. Tenn. May 14, 2021) .............................................................. 30

*Cunningham v. Lifestyles Dev., LLC*, CIVIL ACTION NO. 4:19-CV-00006-ALM-CAN, 2019 U.S. Dist. LEXIS 154112 (E.D. Tex. Aug. 8, 2019) .............................................................. 29

*Cunningham v. Matrix Fin. Servs.*, Civil Action No. 4:19-cv-896, 2021 U.S. Dist. LEXIS 62875, at *7-8 (E.D. Tex. Mar. 31, 2021) ................................................................. 17, 21

*Cunningham v. Sunshine Consulting Grp., LLC*, NO. 3:16-2921, 2018 U.S. Dist. LEXIS 121709, (M.D. Tenn. July 20, 2018)....................................................................................... 13

*Dickey v. Vital One Health Plans Direct, LLC*, No. 1:18-cv-01399-DAD-BAM, 2020 U.S. Dist. LEXIS 37576 (E.D. Cal. Mar. 3, 2020) ............................................................................ 32

*Dole Food Co., Inc. v. Watts*, 303 F.3d 1104 (9th Cir. 2002)...................................................... 15

*Ewing v. Encor Solar, LLC*, Case No.: 18-CV-2247-CAB-MDD, 2019 U.S. Dist. LEXIS 10270 (S.D. Cal. Jan. 22, 2019)................................................................................................ 14, 32

*Ex parte Siebold*, 100 U.S. 371 (1880) ........................................................................... 7, 19, 22

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477 (2010).................................... 24

*Goodyear Dunlop Tires Opers., S.A. v. Brown*, 564 U.S. 915 (2011)............................................ 9

*Grayned v. City of Rockford*, 408 U.S. 104 (1972)............................................................... 19, 20

*Horton v. Sunpath, Ltd.*, Civil Action No. 3:20-CV-1884-B-BH, 2021 U.S. Dist. LEXIS 50538 (N.D. Tex. Feb. 16, 2021) ..................................................................................................... 13

*Hussain v. Sullivan Buick-Cadillac-GMC Truck, Inc.*, Case No. 5:20-cv-38-Oc-30PRL, 2020 U.S. Dist. LEXIS 236577 (M.D. Fla. Dec. 11, 2020)....................................................... passim

*In re Dish Network, LLC*, 28 FCC Rcd. 6574 (2013) ................................................. 28

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945)........................................... 9, 15

*Jones v. Royal Admin. Servs.*, 887 F.3d 443 (9th Cir. 2018) ................................ 13, 29

*Kelly v. Ringler Assocs.*, Case No. 3:14-cv-00604-YY, 2017 U.S. Dist. LEXIS 59850  (D. Or. Feb. 21, 2017) ................................................................................ 10, 15

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994) ................................ 7

*Learjet, Inc. v. Oneok, Inc.*, 715 F.3d 716 (9th Cir. 2013) ......................................... 14

*Lindenbaum v. Realgy, LLC*, CASE NO.1:19 CV 2862, 2020 U.S. Dist. LEXIS 201572  (N.D. Ohio Oct. 29, 2020) ..................................................................... passim

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ................................................. 7

*Marbury v. Madison*, 5 U.S. (1 Cranch) 137 (1803)........................................... 2, 22

*Marks v. United States*, 430 U.S. 188, 193 (1977) ................................................. 22

*Massaro v. Beyond Meat, Inc.*, Case No.: 3:20-cv-00510-AJB-MSB, 2021 U.S. Dist. LEXIS 46980 (S.D. Cal. Mar. 12, 2021).......................................................... 17

*McCurley v. Royal Sea Cruises, Inc.*, Case No. 17-CV-00986-BAS-AGS, 2021 U.S. Dist. LEXIS 16403 (S.D. Cal. Jan. 28, 2021).......................................................... 17

*McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334 (1995)........................................ 25

*Miles v. Medicredit, Inc.*, No. 4:20-CV-01186 JAR, 2021 U.S. Dist. LEXIS 44267 (E.D. Mo. Mar. 9, 2021).......................................................................................... 17

*Montgomery v. Louisiana*, 136 S. Ct. 718 (2016)....................................... 7, 19, 20, 22

*Naiman v. TranzVia LLC*, Case No. 17-cv-4813-PJH, 2017 U.S. Dist. LEXIS 199131 (N.D. Cal. Dec. 4, 2017).................................................................................. 14, 29, 31

*Newhart v. Quicken Loans Inc.*, No. 9:15-CV-81250, 2016 U.S. Dist. LEXIS 168721(S.D. Fla. Oct. 12, 2016) .............................................................................. 26

*Nicosia v. De Rooy*, 72 F. Supp. 2d 1093 (N.D. Cal. 1999) ....................................... 6

*Opati v. Republic of Sudan*, 140 S. Ct. 1601(2020)............................................. 25

*Ott v. Mortg. Inv'rs Corp. of Ohio*, 65 F. Supp. 3d 1046 (D. Or. 2014)....................... 11

*Pinnacle Fitness & Rec. Mgmt. LLC v. Jerry & Vickie Family Tr.*, CASE NO. 08-CV-1368 H (BGS), 2010 U.S. Dist. LEXIS 131592 (S.D. Cal. Dec. 13, 2010) ........................................... 6

*Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749 (1995) ............................................................ 19

*Rosenberg v. LoanDepot.com LLC*, 435 F. Supp. 3d 308 (D. Mass. 2020) ................................ 31

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797 (9th Cir. 2004)............................. 6, 15

*SEC v. Med. Comm. for Human Rights*, 404 U.S. 403 (1972)........................................................ 7

*Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183 (2020) ................................... 24

*Sessions v. Morales-Santana*, 137 S. Ct. 1678 (2017)................................................................. 20

*Shanahan v. Nat'l Auto Protection Corp.*, Case No. 1:19-cv-03788, 2020 U.S. Dist. LEXIS 101031 (N.D. Ill. June 9, 2020) ................................................................................ 13, 31

*Snowden v. Cazares*, No. CV12-3443 DSF(JC), 2016 U.S. Dist. LEXIS 186727 (C.D. Cal. Sept. 8, 2016) ................................................................................................................. 27, 28

*Stark v. Stall*, No. 19-cv-00366-AJB-AHG, 2021 U.S. Dist. LEXIS 94503 (S.D. Cal. May 18, 2021.................................................................................................................................. 30

*Sundermann v. Golden Circle Real Estate Group*, Case No. 4:19-cv-00140, 2019 U.S. Dist. LEXIS 226057 (S.D. Iowa Oct. 29, 2019)................................................................ 31

*United States ex rel. Solis v. Millennium Pharms., Inc.*, 885 F.3d 623 (9th Cir. 2018) ................ 7

*United States v. Bacum*, 80 F.3d 539 (D.C. Cir. 1996)................................................................. 8

*United States v. Baucum*, 80 F.3d 539 (D.C. Cir. 1996)..................................................... 8, 19, 22

*United States v. Stroke*, No. 14-CR-45S, 2017 U.S. Dist. LEXIS 94776 (W.D.N.Y. June 20, 2017) .................................................................................................................................. 20

*Valdes v. Nationwide Real Estate Execs.*, SA CV 20-01734-DOC-(JDEx), 2021 U.S. Dist. LEXIS 100931(C.D. Cal. Apr. 22, 2021) ..................................................................... 30, 31

*Waldron v. United States*, 146 F.2d 145 (1944) .......................................................................... 21

*Warciak v. Subway Rests., Inc.*, No. 1:16-cv-08694, 2019 U.S. Dist. LEXIS 32357 (N.D. Ill. Feb. 28, 2019) ......................................................................................................................... 30

*Williams v. Yamaha Motor Co.*, 851 F.3d 1015 (9th Cir. 2017)........................................ 9, 13, 29

*Winters v. Grand Caribbean Cruises Inc.*, No. CV-20-00168-PHX-DWL, 2021 U.S. Dist. LEXIS 26779 (D. Ariz. Feb. 11, 2021)..................................................................... 12

*Zola H. v. Snyder*, Case No. 12-14073, 2013 U.S. Dist. LEXIS 125199 (D. Mich. Sept. 3, 2013) ........................................................................................................................................ 29

**Statutes**

47 U.S.C. § 227.......................................................................................... 1, 16, 32, 33

**Other Authorities**

Ryan C. Williams, *Questioning Marks: Plurality Decisions and Precedential Constraint*, 69 Stan. L. Rev. 795 (2017)........................................................................................... 22

## SUPPORTING MEMORANDUM

## I.    INTRODUCTION

Plaintiff's Complaint suffers from three threshold defects.  First, this Court lacks personal jurisdiction over Palmer and NCWC.  Plaintiff fails to allege a plausible basis for this Court to assert personal jurisdiction over Palmer and NCWC—because no plausible basis exists.  Plaintiff asserts only generalized and unsupported conclusions that Palmer, NCWC, or some unnamed John Doe Defendant allegedly acting on Palmer or NCWC's behalf (it is unclear which) allegedly made unsolicited calls to her cell phone.

The sworn Declaration submitted by Palmer and NCWC's President, Michael Shaftel ("Mr. Shaftel"), attached hereto as **Exhibit 1**, shows why Plaintiff could plead no plausible allegations establishing this Court's personal jurisdiction over them, and rebuts Plaintiff's already-insufficient jurisdictional allegations.  Palmer and NCWC have no ties to Oregon that could support this Court's exercise of general jurisdiction over them.  Palmer is a Delaware corporation based in New Jersey, and NCWC is a New Jersey corporation that also maintains its principal office in New Jersey.  General jurisdiction is neither plausibly alleged nor present.  Likewise, Palmer and NCWC do not initiate *any* outbound marketing calls to consumers, including any calls that form the basis of Plaintiff's claims, such that no plausible claim of specific jurisdiction based on direct liability is or *could* be plead.  Further, neither Palmer nor NCWC directed or controlled any third-party who may have made any of the phone calls at issue.  As such, specific jurisdiction based on a plausible claim of vicarious liability is also wanting here.

Second, this Court lacks subject-matter jurisdiction over all of Plaintiff's claims under 47 U.S.C. § 227(b)(1)(A)(iii), the automated-calling prohibition of the Telephone Consumer Protection Act ("TCPA"), for calls that occurred before July 6, 2020.  On that date, in *Barr v.*

*American Association of Political Consultants, Inc.*, 140 S. Ct. 2335 (2020) ("*AAPC*"), the Supreme Court held that the TCPA's automated-calling prohibition—the very statutory provision upon which Plaintiff's allegations are based—was an unconstitutional, content-based suppression of speech in derogation of the First Amendment.  It addressed the law's unconstitutional condition by prospectively severing the exemption that Congress had created for automated calls made to collect a federal debt.  Thus, the TCPA's automated-call prohibition was unconstitutional from the enactment of the government-debt exemption in 2015 until the Supreme Court's severance became operative in July of 2020.

Most, if not all, of the calls at issue in this case allegedly occurred while the automated-call prohibition of the TCPA was unconstitutional and thus unenforceable.[1]  Plaintiff is therefore attempting to recover under a law that the Supreme Court has declared was unconstitutional prior to July 6, 2020, which Plaintiff cannot do.  The provenance of this rule is unassailable.  "An act of congress repugnant to the constitution can not become a law."  *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 153 (1803).  This Court should—and *must*—therefore, dismiss all claims relating to section 227(b)(1)(A)(iii) for calls that occurred prior to the *AAPC* ruling, because it simply *cannot* entertain Plaintiff's claims under a statute that the Supreme Court has held was unconstitutional when the calls were made.

Third and finally, even if this Court could exercise personal jurisdiction over Defendants, or hear claims under section 227(b)(1)(A)(iii), the Court should still dismiss Plaintiff's Complaint for its failure to plausibly state any claims against Palmer or NCWC.  Plaintiff makes no allegations that provide any credible factual support for her claims that either Palmer or NCWC actually made

---

[1]     It is unclear the exact number of calls Plaintiff alleges she received or exactly when the calls occurred, as she alleges only that she began receiving calls on February 28, 2017, with no other references to specific dates, and that she received more than 150 calls.  Compl. ¶ 25.

any calls, or that any recording she heard or live agent she spoke with during the calls disclosed his or her authority to act on behalf of Palmer or NCWC.

Palmer and NCWC operate in a highly competitive industry with many, many actors (not all of whom honestly report their affiliations with third parties); Plaintiff seems to have sued these two companies simply because they are associated with the types of products she *may* have heard about on some of these recordings or discussed with a Doe Defendant. But simply being in the industry is clearly not a sufficient nexus to cross the Supreme Court's pleading standard under *Iqbal* and *Twombly*—that is, to take the allegations from possible to plausible. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009). There is no plausible claim for direct or vicarious liability against Palmer or NCWC. The allegations to support Plaintiff's claim of vicarious liability are merely unsubstantiated legal conclusions (which, for the Court's jurisdictional analysis, are controverted by the sworn declaration submitted by Mr. Shaftel). These companies do not engage in any telemarketing, do not authorize any other parties to make marketing calls on their behalf, and do not exercise any degree of control or direction over how the independent third-party contractors market and sell the products Palmer administers. Plaintiff seems to assume—contrary to well-settled law—that any time there is a contract there must be a principal-agency relationship. But common, everyday experience teaches us that a grocery store, for example, is not the legal agent of the thousands of food suppliers' goods it sells simply because it sells their products. Thus, Plaintiff's claims against Palmer and NCWC fall well short of the Supreme Court's pleading standard in *Twombly* and *Iqbal*. Plaintiff's Complaint should, therefore, be dismissed in its entirety.

## II.    STATEMENT OF FACTS

1.    On April 25, 2021, Plaintiff filed her Complaint, ECF No. 1, seeking damages and

injunctive relief based on her claims that Defendants violated the TCPA when Palmer, NCWC, or some John Doe Defendants allegedly working on their behalf (it is not clear who Plaintiff alleges actually made any single call), made some unspecified number of calls to her cellular phone using what Plaintiff claims was an automatic telephone dialing system to deliver prerecorded messages. Compl. ¶¶ 25, 32-33, 40-42.

2.      Apart from a reference to "more than 150" calls from "various phone numbers [Plaintiff] did not recognize," it is unclear on what dates the calls at issue in this case occurred, or whether these calls continue to occur, as Plaintiff only states that she has received calls "[s]ince February 28, 2017." Compl. ¶¶ 2, 25.

3.      Likewise, it is unclear why Plaintiff attributes all of the unspecified number of calls to Palmer or NCWC. Compl. ¶¶ 2, 25. Despite the large number of calls Plaintiff alleges she received "soliciting extended auto warranties" generally, she mentions no instance in which a prerecorded message she responded to mentioned either Palmer or NCWC by name. Compl. ¶ 26.

4.      Indeed, Plaintiff makes only a vague statement that "[o]n at least one occasion plaintiff requested information about the extended warranties and the company behind the calls and the agent stated that the call was in regard to extended auto warranties offered by Palmer and NCWC." Compl. ¶ 27.

5.      Additionally, while Plaintiff claims Defendants violated the TCPA's prohibition on calls to residential phone lines, section 227(b)(1)(B), she only alleges calls made to a cellular phone. Compl. ¶¶ 25, 40.

6.      Plaintiff provides no evidence that either Palmer or NCWC initiated any specific call to her.

7.      This is unsurprising, because as the declaration of Mr. Shaftel confirms, neither of

these entities make any outgoing marketing calls to *any* consumers.  Specifically, neither entity has made any calls to Plaintiff.  Shaftel Decl. ¶¶ 9-11.

8.      Likewise, Plaintiff provides no factual support for her allegations that any of the Doe Defendants may have initiated any of the unspecified number of calls as an agent of either Palmer or NCWC (because she cannot). Instead, Plaintiff just recites a list of factors describing a generic principal-agent relationship.  Compl. ¶¶ 32-33.

9.      Plaintiff cannot provide any evidence of a principal-agent relationship to support these conclusory recitals because ***no such relationship exists***.  Palmer and NCWC did not control or authorize any party to make the alleged calls to Plaintiff (or any other consumer).  Shaftel Decl. ¶¶ 12-18.  In fact, Palmer and NCWC do not direct or control any of the actions of any party that sells or markets the products Palmer administers.  All such entities are independent third-parties that, while agreeing to a broad-form compliance-with-laws clause, otherwise have absolute discretion and autonomy in how they conduct their marketing operations.  *Id.*

10.     Palmer and NCWC have no connection to this forum.  Palmer is a Delaware corporation engaged in selling and administering extended vehicle warranty plans, with its principal offices in New Jersey.  See Shaftel Decl. ¶¶ 3, 5.

11.     NCWC is a New Jersey corporation and affiliate of Palmer that contracts with the various independent third-party companies that are permitted to market and sell policies administered by Palmer, with its principal offices in New Jersey.  *Id.* ¶¶ 4, 6.

12.     Defendants do not own or lease property, maintain assets in, or conduct business operations of any kind from Oregon.  *Id.* ¶¶ 7-8.

## III.    LEGAL STANDARD

### A.    12(b)(2)

"In opposition to a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper." *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008) (citing *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)). When a motion is based on written materials rather than an evidentiary hearing, a plaintiff must "make a *prima facie* showing of jurisdictional facts." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004)) (quoting *Sher*, 911 F.2d at 1361). Although *uncontroverted* allegations in the complaint must be taken as true, plaintiff cannot "simply rest on the bare allegations of its complaint." *Schwarzenegger*, 374 F. 3d at 800 (citing *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996)) (quoting *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977)).

Importantly, "the allegations must not be conclusory, but must allege specific acts connecting the defendant with the forum." *Pinnacle Fitness & Rec. Mgmt. LLC v. Jerry & Vickie Family Tr.*, CASE NO. 08-CV-1368 H (BGS), 2010 U.S. Dist. LEXIS 131592, at *6 (S.D. Cal. Dec. 13, 2010) (citing *Greenspun v. Del E. Webb Corp.*, 634 F.2d 1204, 1208 n.5 (9th Cir. 1980)); *Nicosia v. De Rooy*, 72 F. Supp. 2d 1093, 1097 (N.D. Cal. 1999) (citing *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995)) ("The Court need not . . . assume the truth of conclusory allegations."). "Once the defendant has contradicted allegations contained in the complaint, plaintiff may not rest on the pleadings, and must present admissible evidence to support the court's exercise of personal jurisdiction." *Nicosia*, 72 F. Supp. 2d at 1097 (citing *Data Disc. Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1997)); *Cochran v. Burlington Coat Factory of Or.*, 10-CV-6016-TC, 2011 U.S. Dist. LEXIS 136113, at *3 (D. Or. Sept. 27, 2011) (same). "The

plaintiff must produce admissible evidence which, if believed, would be sufficient to establish the existence of personal jurisdiction." *Nicosia*, 72 F. Supp. 2d at 1097 (citing *WNS, Inc. v. Farrow, 884 F.2d 200, 203-204 (5th Cir. 1989)*).

**B.      12(b)(1)**

Motions filed under Rule 12(b)(1) allow a party to challenge a court's subject matter jurisdiction.  The Plaintiff bears the burden of proving that the Court has subject-matter jurisdiction to hear her claims.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *United States ex rel. Solis v. Millennium Pharms., Inc.*, 885 F.3d 623, 625 (9th Cir. 2018).  Federal district courts are courts of limited jurisdiction, and their powers are enumerated in Article III of the Constitution. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Brooks v. United States*, Case No. 10-3541 SC, 2011 U.S. Dist. LEXIS 87962, at *4 (N.D. Cal. Aug. 9, 2011) ("As a court of limited jurisdiction, 'a federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears.'") (quoting *Stock West, Inc. v. Confederated Tribes of Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989)).

The Constitution limits the federal judicial power to designated "cases" and "controversies."  U.S. Const., art. III, § 2.  Thus, "[i]t is well settled that federal courts may act only in the context of a justiciable case or controversy."  *SEC v. Med. Comm. for Human Rights*, 404 U.S. 403, 407 (1972) (quotation omitted).  The Supreme Court has long held that if "the laws are unconstitutional and void, the [federal court has] no jurisdiction of the causes."  *Ex parte Siebold*, 100 U.S. 371, 377 (1880); *see also Montgomery v. Louisiana*, 136 S. Ct. 718, 724 (2016) (finding a sentence under unconstitutional law is void because state was deprived of authority to impose it); *United States v. Baucum*, 80 F.3d 539, 540-41 (D.C. Cir. 1996) ("It is true that once a statute has been declared unconstitutional, the federal courts thereafter have no jurisdiction over

alleged violations (since there is no valid 'law of the United States' to enforce)").

C.    12(b)(6)

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" in meeting the standard required by Rule 8. *Id.*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim of relief that is plausible on its face.'" *Id* (quoting *Twombly*, 550 U.S. at 570). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." *Twombly*, 550 U.S. at 555 (citations omitted).

"Factual allegations must be enough to raise a right to relief above the speculative level . . . . ." *Twombly*, 550 U.S. at 555 (citation omitted). Courts may not assume that "the [plaintiff] can prove facts that [he or she] has not alleged or that the defendants have violated the . . . law[] in ways that have not been alleged." *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, [the complaint] 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

## IV.    ARGUMENT

### A.    The Court Lacks Personal Jurisdiction Over Defendants.

This Court lacks personal jurisdiction over Palmer and NCWC in this matter.  A plaintiff must show that the Court has general or specific jurisdiction when personal jurisdiction is challenged.  *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 137 S. Ct. 1773, 1780 (2017); *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) ("[I]n order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.") (citations and quotations omitted).  As shown below, Plaintiff has failed to plausibly allege either type of personal jurisdiction applies to either of the Defendants, and the sworn declaration of Mr. Shaftel submitted in support of this motion further rebuts Plaintiff's conclusory allegations regarding personal jurisdiction.

### 1.    This Court Lacks General Jurisdiction Over Defendants.

General jurisdiction does not exist here.  A court has general jurisdiction over a defendant-corporation when it has constant and pervasive, continuous and systematic affiliations with the forum state.  *Goodyear Dunlop Tires Opers., S.A. v. Brown*, 564 U.S. 915, 919 (2011); *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1021 (9th Cir. 2017) ("[T]he test for general jurisdiction asks whether a corporation is essentially 'at home' in the forum state." (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014))).  Palmer is a Delaware corporation engaged in selling and administering extended vehicle warranty plans, with its principal offices in New Jersey.  *See* Shaftel Decl. ¶¶ 3, 5.  NCWC is a New Jersey corporation, with its principal offices in New Jersey, that contracts with various independent third-party companies to license the right to market and sell policies administered by Palmer.  *Id.* ¶¶ 4, 6.  Defendants do not own or lease property in,

maintain any assets in, or conduct business operations of any kind from Oregon. *Id.* ¶¶ 7-8. General jurisdiction clearly does not apply to Defendants in this matter, and Plaintiff does not plausibly allege otherwise.

### 2. This Court Lacks Specific Jurisdiction Over Defendants.

Plaintiff also fails to plausibly show that specific jurisdiction exists as to either Palmer or NCWC. Courts in the Ninth Circuit analyze specific jurisdiction under a three-prong test:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; . . . (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Kelly v. Ringler Assocs.*, Case No. 3:14-cv-00604-YY, 2017 U.S. Dist. LEXIS 59850, at *24-25 (D. Or. Feb. 21, 2017) (citing *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1227-28 (9th Cir. 2011)). Plaintiff bears the burden of satisfying the first two prongs, and when she fails to do so, no examination under the third prong is necessary because it would be inherently unreasonable to exercise jurisdiction over Defendants. *See id.*

In short, the "specific" in "specific jurisdiction" is *specific to the Plaintiff's claim*. This is a TCPA case, so the only relevant inquiry is whether a defendant's *claim-related activities* targeted the forum, or in other words, whether each Defendant initiated any telephone call to Plaintiff or controlled someone who did. Plaintiff does not meet her burden as to any of these prongs because she makes no plausible assertions that Palmer or NCWC played any such part in initiating, or causing any John Doe Defendant to initiate, any of the subject calls. And the unsupported, conclusory allegations that she does make are rebutted by the sworn testimony provided by Palmer and NCWC's President.

a.    **Palmer and NCWC have not purposefully directed any actions at this forum.**

For the first prong of the specific jurisdiction test in TCPA cases, courts apply a purposeful-direction analysis.  *See Born v. Celtic Mktg. LLC*, No. 8:19-cv-01950-JLS-ADS, 2020 U.S. Dist. LEXIS 89220, at *10 (C.D. Cal. May 20, 2020) ("[A] purposeful direction analysis is used in suits sounding in tort.  Claims for violation of the TCPA sound squarely in tort and require application of the purposeful direction analysis.") (citations omitted).  To do so, the Ninth Circuit utilizes the "effects" test utilized by the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783 (1984), which examines whether the defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Born*, 2020 U.S. Dist. LEXIS at *9; *Ott v. Mortg. Inv'rs Corp. of Ohio*, 65 F. Supp. 3d 1046, 1057 (D. Or. 2014) (citing *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F3d 1218, 1228 (9th Cir 2011)).  Notably, "it is the defendant, not the plaintiff *or third parties*, who must create contacts with the forum State." *Born*, 2020 U.S. Dist. LEXIS at *10 (citing *Walden v. Fiore*, 571 U.S. 277, 291 (2014)).

Plaintiff's jurisdictional allegations are contained in the broad, generalized statement that "this Court has personal jurisdiction over defendants, because defendants conduct a significant amount of business transactions within this District, the wrongful conduct giving rise to this action occurred in, was directed to, or emanated from this District, and plaintiff resides in this District." Compl. ¶ 12.  This statement is largely irrelevant, because only the initiation of calls to Plaintiff in this forum is relevant to a purposeful-direction analysis in this TCPA case.  And *nowhere* in her Complaint does Plaintiff actually make any factually supported allegations that Palmer or NCWC initiated any call to her cell phone in this forum.  Rather, Plaintiff instead parrots the ambiguous statement that Palmer and NCWC are *either* directly or vicariously liable for the calls while

simultaneously alleging that John Doe Defendants made the calls.  Compl. ¶¶ 17, 32-33.  In other words, by her own admission, she is alleging *possible* facts, not a *plausible* right to relief.  As another court in the Ninth Circuit recently found when granting a motion to dismiss similar TCPA claims for lack of jurisdiction, "[t]his imprecision makes it difficult to discern who, exactly, is the alleged culprit." *Winters v. Grand Caribbean Cruises Inc.*, No. CV-20-00168-PHX-DWL, 2021 U.S. Dist. LEXIS 26779, at *11 (D. Ariz. Feb. 11, 2021).

Mr. Shaftel's declaration clarifies why Plaintiff's vague and conclusory allegations fail all three prongs of the effect test.  The first prong's analysis is simple: Palmer and NCWC did not commit any intentional act—they simply do not make outgoing marketing calls to consumers. Shaftel Decl. ¶¶ 9-10.  When comparing this clear statement with Plaintiff's conflicting, alternative allegations as to what party was responsible for the calls at issue, the Court must accept that Palmer and NCWC did not make any of the challenged calls to Plaintiff.  *See Winters*, 2021 U.S. Dist. LEXIS 26779, at *11-12 (finding plaintiff had not met burden of showing purposeful direction when they could not controvert TCPA defendant's declaration evidence that defendant was not responsible for the subject calls).

Likewise, Palmer and NCWC do not direct or control any independent third-party that does sell Palmer's products, including how those parties obtain leads to determine which potential customers are contacted (or where those consumers are located).  Shaftel Decl. ¶¶ 12-18.  In this vein, Plaintiff cannot rely on an agency theory to allege jurisdiction exists over either Palmer or NCWC via the alleged actions of John Doe Defendants because she provides no specific facts that address the key element of such a relationship—the principal's right of control.  *See Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1024-25 (9th Cir. 2017) (even assuming the relevance of agency to a specific jurisdiction analysis, "under any standard for finding an agency relationship,

the [principal] must have the right to substantially control its [agent's] activities.").[2]    Plaintiff

merely recites the elements of what this relationship entails in the context of a TCPA case without

providing any factual support for those conclusions.    Compl. ¶¶ 32-33.    Yet Mr. Shaftel's

declaration explains that neither Palmer nor NCWC assert the required degree of control over any

party that is authorized to market Palmer products.    Shaftel Decl. ¶¶ 12-18.[3]    Plaintiff does not

---

[2]    Conclusory and unsubstantiated allegations like those in the Complaint fail to establish (1) that the agent "functions as [the principal's] representative in that it performs services that are sufficiently important to the foreign corporation that if it did not have a representative to perform them, [the principal's] own officials would undertake to perform substantially similar services," and (2) "[the principal] exercises a measure of control over [the agent's] activities" in order to find an agency relationship existed.    *See* *Corcoran v. CVS Health Corp.*, 169 F. Supp. 3d 970, 983 (N.D. Cal. 2016) (setting forth the Ninth Circuit's criteria for finding jurisdiction exists based on an agency relationship) (quoting *United States v. Pangang Group Co., Ltd.*, 879 F. Supp. 2d 1052, 1058 (N.D. Cal. 2015)); *see also* *Jones v. Royal Admin. Servs.*, 887 F.3d 443, 450 (9th Cir. 2018) ("In determining whether vicarious liability may be imposed, the 'extent of control exercised by the [principal]' is the 'essential ingredient.'") (quoting *United States v. Bonds*, 608 F.3d 495, 505 (9th Cir. 2010)).

[3]    Courts in the Ninth Circuit and around the country have dismissed TCPA claims with far more evidence supporting allegations of personal jurisdiction via existence of a purported agent.    *See, e.g.*, *Horton v. Sunpath, Ltd.*, Civil Action No. 3:20-CV-1884-B-BH, 2021 U.S. Dist. LEXIS 50538, at *12 (N.D. Tex. Feb. 16, 2021) (granting TCPA defendant's motion to dismiss because "[plaintiff's] conclusory allegation that Defendant acted in an agency relationship with telemarketing companies to contact him in Texas to sell warranties does not suffice to impute [purported principal's] actions to Defendant under an agency theory."); *Shanahan v. Nat'l Auto Protection Corp.*, Case No. 1:19-cv-03788, 2020 U.S. Dist. LEXIS 101031, at *7 (N.D. Ill. June 9, 2020) (dismissing TCPA case against vehicle service contract administrator for lack of jurisdiction because contract with calling party did not create agency relationship); *Born v. Celtic Mktg. LLC*, 8:19-cv-01950-JLS-ADS, 2020 U.S. Dist. LEXIS 89220, at *13 (C.D. Cal. May 20, 2020) (in a factually similar case against one of Palmer's competitors in the vehicle-service-contract industry, dismissing TCPA plaintiff's claims for lack of personal jurisdiction based on agency because allegations did not address "the key element lacking here, namely, the principal's right of control." (citing *Williams*,  851 F.3d at 1024-25)); *Cunningham v. Sunshine Consulting Grp., LLC*, NO. 3:16-2921, 2018 U.S. Dist. LEXIS 121709, (M.D. Tenn. July 20, 2018) (dismissing TCPA claim for lack of personal jurisdiction for plaintiff's claim that he was called by a defendant's alleged agent based solely on "the fact that a single charge on Plaintiff's credit card account was attempted by another party through [defendant's] merchant account."); *Naiman v. TranzVia LLC*, Case No. 17-cv-4813-PJH, 2017 U.S. Dist. LEXIS 199131, at *38-39 (N.D. Cal. Dec. 4, 2017) ("[H]aving failed to adequately plead liability based on agency, plaintiff cannot show that the court has personal jurisdiction over [defendant] on that basis.").    Defendant provides

carry her burden to *plausibly* show that either Palmer or NCWC expressly aimed any action at the forum state.

And finally, there are no allegations that show either Palmer or NCWC had knowledge of any harm caused.  Indeed, Plaintiff makes no allegation that she at any point communicated at all with Palmer or NCWC, and Mr. Shaftel's declaration makes clear that neither of these Defendants ever called Plaintiff or have ever authorized any party to make unlawful calls to any party, including Plaintiff.  Shaftel Decl. ¶¶ 9-12.

        **b.**      **Plaintiff's claims do not arise from any forum-related activities of Palmer or NCWC.**

Plaintiff fails to carry her burden under the purposeful-direction prong of this test, and courts in the Ninth Circuit have found that when the plaintiff fails to establish purposeful direction, the Court need not address whether the suit resulted from the defendant's forum-related activities or whether exercising jurisdiction would be reasonable.  *Ewing v. Encor Solar, LLC*, Case No.: 18-CV-2247-CAB-MDD, 2019 U.S. Dist. LEXIS 10270, at \*11 (S.D. Cal. Jan. 22, 2019) (citing *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006).  But even assuming, *arguendo*, that the Court should examine this factor, Plaintiff still fails to carry her burden under this prong.

The Ninth Circuit has described the second prong of the purposeful-direction test as a "but for" test that is satisfied if a direct nexus exists between a defendant's contacts with the forum state and the cause of action.  *See Learjet, Inc. v. Oneok, Inc.*, 715 F.3d 716, 742 (9th Cir. 2013).  While Palmer does maintain a registered agent in Oregon, Palmer's only function is as an administrator of extended vehicle service contracts; it does not make marketing calls to consumers.  Shaftel Decl. ¶¶ 5, 8-10.  No direct nexus exists between Palmer or NCWC and this forum in connection with

---

further analysis of Plaintiff's failure to allege liability through a principal-agent relationship in Section IV.C(3), *infra*.

an uncertain number of calls that Plaintiff alleges she received from some unnamed combination of parties that was not acting under the direction or control of Palmer or NCWC.  Accordingly, if the Court even examines this factor, the Plaintiff fails to carry her burden under it.

### c.    It is inherently unreasonable to assert jurisdiction over Palmer or NCWC.

The third and final prong of the specific-jurisdiction analysis looks at "whether the exercise of jurisdiction . . . comport[s] with fair play and substantial justice, i.e., it must be reasonable." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-77 (1985) ("Once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945))).  The Ninth Circuit considers the following factors relevant to the reasonableness inquiry:

> (1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1114 (9th Cir. 2002).[4]

There is an obviously high burden for Palmer and NCWC, companies based in New Jersey,

---

[4]    As noted above, when a plaintiff fails to carry its burden under the first two prongs, as Plaintiff does here, personal jurisdiction is lacking and the Court need not examine this prong. *Kelly v. Ringler* Assocs., Case No.: 3:14-cv-00604-YY, 2017 U.S. Dist. LEXIS 59850, at *24 (D. Or. Feb. 21, 2017) (citing *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1227-28 (9th Cir. 2011) ("Plaintiffs bear the burden of satisfying the first two prongs.  If Plaintiffs are unable to establish both prongs, personal jurisdiction is lacking.")).

to appear in Oregon to defend this matter.  But, more importantly, under all of the remaining factors, it is inherently unreasonable that Palmer and NCWC be subjected to this jurisdiction when Plaintiff has made no plausible allegations that they have any connection to this jurisdiction or the calls that form the basis of her claims.  Plaintiff's TCPA claims, all resting on the unsupported and incorrect conclusory allegations that Palmer and NCWC were responsible for the calls at issue, must therefore be dismissed.

**B.    The Court Lacks Subject-Matter Jurisdiction Over Claims Pursuant to 47 U.S.C. § 227(b)(1)(A)(iii) that Occurred Prior to the Supreme Court's Decision in _Barr v. American Association of Political Consultants_.**

As explained above, this Court should dismiss this case for want of personal jurisdiction. Should this case remain here, however, Plaintiff's claims based on 47 U.S.C. § 227(b)(1)(A)(iii) that occurred before the Supreme Court's ruling in _AAPC_ on July 6, 2020[5] should be dismissed, with prejudice, for no Article III court can grant Plaintiff relief against Defendants under that statute.  In _AAPC_, the Supreme Court held that the TCPA's auto dialer restriction, as written, was an unconstitutional, content-based suppression on speech.  As a remedy, the Court prospectively severed the government-backed debt exception, but left the remainder of the TCPA intact.  That is, the Supreme Court severed the government-backed debt exception from section 227(b)(1)(A)(iii) on a going-forward basis.  Thus, for all calls alleged prior to the _AAPC_ ruling on July 6, 2020, the TCPA's restriction on automated calls was an unconstitutional, content-based restriction on speech.  Count I of Plaintiff's Complaint,[6] which alleges violations of section

---

[5]    With the exception of the date Plaintiff claims she began receiving calls, February 28, 2017 (which, as explained below, also falls outside of the applicable statute of limitations), Plaintiff does not state on what date any call occurred, so it is uncertain whether she alleges any calls occurred after the Supreme Court's ruling in _AAPC_.  Compl. ¶¶ 2, 25, 34.  Defendants' Rule 12(b)(1) motion applies only to calls that may have occurred prior to the _AAPC_ ruling.

[6]    Plaintiff lumps claims for violations of both section 227(b)(1)(A)(iii) and section 227(b)(1)(B) into a single paragraph of her complaint without referring to separate counts.  Compl.

227(b)(1)(A)(iii) for calls before *AAPC*'s severance, must therefore be dismissed, as it seeks to recover damages under a law that violated the First Amendment at the time of the calls at issue. *See generally* [Creasy v. Charter Commc'ns, Inc., 489 F. Supp. 3d 499 (E.D. La. 2020)](); [Lindenbaum v. Realgy, LLC, CASE NO.1:19 CV 2862, 2020 U.S. Dist. LEXIS 201572, at *6 (N.D. Ohio Oct. 29, 2020)](); [Hussain v. Sullivan Buick-Cadillac-GMC Truck, Inc., Case No. 5:20-cv-38-Oc-30PRL, 2020 U.S. Dist. LEXIS 236577, at *8 (M.D. Fla. Dec. 11, 2020)](); [Cunningham v. Matrix Fin. Servs., Civil Action No. 4:19-cv-896, 2021 U.S. Dist. LEXIS 62875, at *7-8 (E.D. Tex. Mar. 31, 2021)]().[7]

1.    **The Supreme Court Holds the TCPA Unconstitutional, but Severs the Government-Backed Debt Exemption.**

In *AAPC*, the Supreme Court held that the TCPA violates the First Amendment, because it discriminates against speech based on its content. [Barr v. Am. Ass'n of Political Consultants, 140 S. Ct. 2335, 2346 (2020)]() ("The initial First Amendment question is whether the robocall restriction, with the government-debt exception, is content-based. The answer is yes.").

---

¶ 40.  For the sake of clarity, Defendants refer to Plaintiff's section 227(b)(1)(A)(iii) claims as "Count I."

[7]      Defendants recognize that other post-*AAPC* decisions have rejected the holdings in *Creasy*, *Lindenbaum*, *Hussain*, and *Cunningham*. *See, e.g., Bonkuri v. Grand Caribbean Cruises, Inc.*, Civ. No. 0:20-cv-60638-WPD, 2021 U.S. Dist. LEXIS 30940 (S.D. Fla. Jan. 19, 2021) (containing no discussion of retroactive application of *AAPC* severance); [McCurley v. Royal Sea Cruises, Inc., Case No. 17-CV-00986-BAS-AGS](), 2021 U.S. Dist. LEXIS 16403 (S.D. Cal. Jan. 28, 2021) (relying on dicta of *AAPC* footnote 12 with no analysis of retroactive application of severance); [Massaro v. Beyond Meat, Inc., Case No.: 3:20-cv-00510-AJB-MSB, 2021 U.S. Dist.]() LEXIS 46980 (S.D. Cal. Mar. 12, 2021) (same); [Miles v. Medicredit, Inc., No. 4:20-CV-01186 JAR, 2021 U.S. Dist. LEXIS 44267, at *8 (E.D. Mo. Mar. 9, 2021)]() (declining to analyze retrospective liability because defendant was not a government debt collector); *Boisvert v. Carnival Corp.*, No. 8:20-cv-2076-30SPF, 2021 U.S. Dist. LEXIS 47397, at *4-5 (M.D. Fla. Mar. 12, 2021) (following other cases regarding the enforceability of *AAPC* with no analysis of retroactivity).  However, these cases largely ignore the crucial analysis regarding retroactive application of *AAPC*'s severance. The Court should decline to follow the untenable reasoning set forth in any such non-binding authority.

Page 17 – DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Specifically, the Court held that the government-backed debt exception—added in 2015—treated speech to collect a debt issued or guaranteed by the federal government more favorably than other forms of speech. *Id.* at 2347. As a remedy, however, the Court severed the government-backed debt exemption on a prospective basis. *See id.* at 2343 ("[S]even members of the Court conclude that the entire 1991 robocall restriction should not be invalidated, but rather that the 2015 government-debt exception must be invalidated and severed from the remainder of the statute.").

> ### 2. The Court Does Not Reach a Majority on Liability for Pre-Severance Calls.

Significantly, however, the Supreme Court did not reach a majority on the effect of severance for calls that took place before it severed the government-backed debt exemption. Writing for himself and two other justices, Justice Kavanaugh stated in a footnote: "On the other side of the ledger, our decision today does not negate the liability of parties who made robocalls covered by the robocall restriction." *AAPC*, 140 S. Ct. at 2355 n.12. But only three justices joined in that footnote. *Id.* Moreover, Justices Thomas and Gorsuch stated that it was a mere "suggestion," which does not bind other courts. *Id.* at 2363, 2366 ("[by] shield[ing] only government-debt collection callers . . . under an admittedly unconstitutional law," the three justices "wind up endorsing the very same kind of content discrimination" severance is "seeking to eliminate.").

In key decisions addressing this issue post-*AAPC*, several courts have sided with Justices Thomas and Gorsuch, and held that federal courts do not have subject matter jurisdiction over calls that occurred before the Supreme Court's decision in *AAPC* took effect. *See Creasy*, 489 F. Supp. 3d at 506; *Lindenbaum*, 2020 U.S. Dist. LEXIS 201572, at *6; *Hussain*, 2020 U.S. Dist. LEXIS 236577, at *8; *Cunningham*, 2021 U.S. Dist. LEXIS 62875, at *30-31.

The Supreme Court has long held that if "the laws are unconstitutional and void, the [federal court has] no jurisdiction of the causes." *Ex parte Siebold*, 100 U.S. at 377; *see also Montgomery*, 136 S. Ct. at 724 (finding that a sentence imposed under an unconstitutional law is void because the state was deprived of authority to impose it); *United States v. Baucum*, 80 F.3d 539, 540-41 (D.C. Cir. 1996) ("It is true that once a statute has been declared unconstitutional, the federal courts thereafter have no jurisdiction over alleged violations (since there is no valid 'law of the United States' to enforce)"); *see also Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 760 (1995) (Scalia, J., concurring) ("[W]hat a court does with regard to an unconstitutional law is simply to *ignore* it. It decides the case '*disregarding the [unconstitutional] law*,' because a law repugnant to the Constitution 'is void, and is as no law.'" (citation omitted)); *id*. at 759-60 ("A court does not—in the nature of things it *can* not [sic]—give a 'remedy' for an unconstitutional statute, since an unconstitutional statute is not in itself a cognizable 'wrong.'").

As relevant here, a speaker should not be punished for engaging in speech that was restricted in an unconstitutional fashion at the time of the speech. *See Grayned v. City of Rockford*, 408 U.S. 104, 107 n.2 (1972) (holding, also with regard to an invalid time-place-manner restriction, that determining the speaker's fate required assessing "the facial constitutionality of the [restriction] in effect" at the time of the speech at issue). It also supports the general rule that "once a statute has been declared unconstitutional, the federal courts thereafter have no jurisdiction over alleged violations (since there is no valid 'law of the United States' to enforce)." *Baucum*, 80 F.3d at 540-41 (per curiam).

In *Grayned*, the Supreme Court noted, in a constitutional challenge to a content-based speech restriction, that courts "must consider the facial constitutionality of the ordinance in effect when [the defendant] was arrested and convicted." 408 U.S. at 107 n.2. In other words, the

relevant question is whether the statute at issue was constitutional when the alleged violation occurred, not whether it has subsequently been cured by judicial or legislative action.  Thus, in this case, the automated-call ban must be assessed when Defendant allegedly committed the violations complained of, to the extent that they occurred before July 6, 2020, when the automated-call ban was unconstitutional, as the Supreme Court has now declared.  _See Sessions v. Morales-Santana, 137 S. Ct. 1678, 1699 n.24 (2017)_ (noting in a majority opinion that a "defendant convicted under a law classifying on an impermissible basis may assail his conviction without regard to the manner in which the legislature might subsequently cure the infirmity."); _United States v. Stroke_, No. 14-CR-45S, 2017 U.S. Dist. LEXIS 94776, at *5-6 (W.D.N.Y. June 20, 2017) ("[P]robable cause cannot rest on a statute that was unconstitutional at the time of an alleged incident.").

Similarly, in _Montgomery_, the Supreme Court addressed whether a new constitutional ruling from 2012 interpreting the Eighth Amendment to ban mandatory life sentences for juvenile homicide offenders must be applied retroactively to a juvenile who had been sentenced to life without parole in 1963. _See_ 136 S. Ct. at 723.  The Supreme Court concluded the answer is "yes": a "penalty imposed pursuant to an unconstitutional law is no less void because the prisoner's sentence became final before the law was held unconstitutional. There is no grandfather clause that permits States to enforce punishments the Constitution forbids. To conclude otherwise would undercut the Constitution's substantive guarantees." _Id_. at 731 (citing _United States v. U.S. Coin & Currency_, 401 U.S. 715, 724 (1971) ("No circumstances call more for the invocation of a rule of complete retroactivity" than when "the conduct being penalized is constitutionally immune from punishment.")); _see also Waldron v. United States_, 146 F.2d 145, 147-48 (1944) (vacating judgment against criminal defendant based on violation of unconstitutional statute, explaining

"inspection of the record discloses clearly that the court was without jurisdiction to enter the judgment").

### 3. The TCPA's Prohibition on Automated Calls Was Unconstitutional When the Alleged Calls Were Made.

As the courts in *Creasy*, *Lindenbaum*, *Hussain*, and *Cunningham* have held, the TCPA was unconstitutional between the enactment of the government-backed debt exemption in 2015 and when the Supreme Court severed it from section 227(b)(1)(A)(iii) via its *AAPC* opinion, issued on July 6, 2020. *Creasy*, 489 F. Supp. 3d at 508; *Lindenbaum*, 2020 U.S. Dist. LEXIS 201572, at *6; *Hussain*, 2020 U.S. Dist. LEXIS 236577, at *8, *Cunningham*, 2021 U.S. Dist. LEXIS 62875, at *30-31. The reasoning behind this is simple. A majority of the Supreme Court (six justices) held that the TCPA was unconstitutional with the inclusion of the government-backed debt exemption. *Creasy,* 489 F. Supp. 3d at 506. The statute only became constitutional after the Supreme Court's severance of the government-backed debt exemption took effect. *Id*. at 507. Thus, calls in violation of section 227(b)(1)(A)(iii) placed between 2015 and at least July 6, 2020—and thus including the applicable calls at issue in Count I—were placed when the TCPA's automated-call ban was unconstitutional.[8]

It is axiomatic that a defendant cannot be held liable under an unconstitutional law, and that federal courts lack jurisdiction to enforce unconstitutional statutes. *Ex parte Siebold*, 100 U.S.

---

[8]    *See id.*; *see also Lindenbaum*, 2020 U.S. Dist. LEXIS 201572, at *18 ("[A]t the time the robocalls at issue in this lawsuit were made, the statute could not be enforced as written. And, a later amendment to a statute cannot be retroactively applied. It would be an odd result to say the least if the judiciary could accomplish by severance that which Congress could not accomplish by way of amendment.") (citation omitted); *Hussain*, 2020 U.S. Dist. LEXIS 236577, at *8 ("Thus, at the time Defendants engaged in the speech at issue in this case, Defendants were subject to an unconstitutional content-based restriction. Because the Court is without authority to enforce an unconstitutional statute, the Court lacks subject matter jurisdiction over this action."); *Cunningham*, 2021 U.S. Dist. LEXIS 62875, at *31 ("In other words, during that stretch of time, § 227(b)(1)(A)(iii) had no legal effect.").

at 377; *see also Montgomery*, 136 S. Ct. at 724 (finding sentence under unconstitutional law is void because the state was deprived of authority to impose it); *Baucum*, 80 F.3d at 540-41 ("It is true that once a statute has been declared unconstitutional, the federal courts thereafter have no jurisdiction over alleged violations (since there is no valid 'law of the United States' to enforce)[.]").  Indeed, as arguably the most significant Supreme Court case in history held, "[a]n act of congress repugnant to the constitution cannot become a law." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 153 (1803).  Thus, as Justices Thomas and Gorsuch observed, it would be highly improper to hold Defendants liable for calls that took place during a period of time in which the TCPA's robocalling provision was unconstitutional.  *AAPC*, 140 S. Ct. at 2363.

Footnote 12 of the *AAPC* plurality opinion does not mandate a different result, and is not binding on this Court.  First, it does not command a majority of the Court.  Second, it is dicta.  In fractured opinions such as *AAPC*, "the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds."  *Marks v. United States*, 430 U.S. 188, 193 (1977) (quoting *Gregg v. Georgia*, 428 U.S. 153, 169 n.15 (1976)).  Thus, in *AAPC*, only the narrowest grounds critical to the decision bind lower courts. *Id*.; *see also* Ryan C. Williams, *Questioning Marks: Plurality Decisions and Precedential Constraint*, 69 Stan. L. Rev. 795, 798 (2017).

The Plurality in *AAPC* spelled out the "narrowest grounds" that commanded majorities: six members agreed that the TCPA, as written, violated the First Amendment, and seven members agreed that the government-backed debt exception should be severed.  *AAPC*, 140 S. Ct. at 2343. Those two holdings—and only those two holdings—bind this Court.  *Cunningham*, 2021 U.S. Dist. LEXIS 62875, at *26-28; *Creasy*, 489 F. Supp. 3d at 505; *Lindenbaum*, 2020 U.S. Dist. LEXIS 201572, at *18; *Hussain*, 2020 U.S. Dist. LEXIS 236577, at *7.  Accordingly, because

even the *AAPC* Plurality does not contend that its Footnote 12 commanded a majority, it is not precedential. *Cunningham*, 2021 U.S. Dist. LEXIS 62875, at *21 ("footnote twelve is unpersuasive").

Second, Footnote 12 is dicta. First, the question of liability for pre-severance calls was not even addressed by lower courts, making it extremely unlikely that the Court even intended to address it. *See City of Springfield v. Kibbe,* 480 U.S. 257, 259 (1987) (affirming that the Supreme Court "ordinarily will not decide questions not raised or litigated in the lower courts."). Second, the only issues before the Court were whether the government-backed debt exemption rendered the TCPA in violation of the First Amendment, and whether that exemption could be severed to save the statute. Question Presented, *Barr v. Am. Ass'n of Pol. Consultants,* , Case No. 19-631, https://www.supremecourt.gov/docket/docketfiles/html/qp/19-00631qp.pdf (last visited June 1, 2021). The parties to *AAPC* never even briefed or argued whether severance should apply prospectively or retrospectively.[9]

Plaintiff alleges that she received calls from Palmer, NCWC or their purported agent(s) beginning in February of 2017 without any clear end date (or date when any other specific call occurred). Compl. ¶¶ 2, 25. The Supreme Court declared the TCPA's robocall restriction unconstitutional and severed the unconstitutional provision from section 227(b)(1)(A)(iii) on July 6, 2020. Accordingly, calls before that date occurred when the Supreme Court has held the TCPA was an unconstitutional, content-based restriction on speech. *See AAPC*, 140 S. Ct. at 2346

---

[9]     *See Cunningham*, 2021 U.S. Dist. LEXIS 62875, at *19 (citing *Int'l Truck & Engine Corp. v. Bray*, 372 F.3d 717, 721 (5th Cir. 2004)) ("For starters, footnote twelve is, by definition, dictum); *id*. at *18-19 (citing *AAPC*, 140 S. Ct. at 2343) ("[F]ootnote [twelve] contradicts the judgment of the Supreme Court in *AAPC* . . . . [a]ccepting [plaintiff's] argument would produce a result entirely predicated on whether a TCPA defendant called an individual to collect government debt, which would eviscerate the six-Justice holding that Congress 'impermissibly favored debt-collection speech over political and other speech[] in violation of the First Amendment.'").

(plurality opinion); *id*. at 2356-57 (Sotomayor, J., concurring in the judgment) ("Even under intermediate scrutiny, the Government has not explained how a debt-collection robocall about a government-backed debt is any less intrusive or could be any less harassing than a debt-collection robocall about a privately backed debt."); *id*. at 2364 (Gorsuch, J., concurring in the judgment in part and dissenting in part) ("The statute is content-based because it allows speech on a subject the government favors (collecting its debts) while banning speech on other disfavored subjects (including political matters).").

The unconstitutional, unequal treatment that *AAPC* remedied was produced by combining the generally applicable robocall restriction enacted with the TCPA's creation in 1991 *and* the content-based government-debt exemption added in 2015.  Neither the general robocall restriction nor the government-debt exemption on their own violated the First Amendment.  Rather, the First Amendment violation only arose when the two were *combined*.  *See*, *e.g.*, *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 509 (2010) (recognizing the convergence of "a number of statutory provisions that, working together, produce a constitutional violation."); *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183, 2222 (2020) (Thomas, J. concurring in part and dissenting in part) (citing *Free Enter. Fund*, 561 U.S. at 509) ("In some instances, a constitutional injury arises as a result of two or more statutory provisions operating together.").

As section 227(b)(1)(A)(iii) of the TCPA only passed constitutional muster after July 6, 2020, this Court, like all other courts, lacks subject matter jurisdiction over all calls alleging such violations prior to that date.  Courts cannot hold defendants liable for violating unenforceable laws.  *See*, *e.g.*, *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357 (1995).  Each call—a form of speech—occurred during a time in which the TCPA's autodialed-call prohibition was effectively void.  *See Creasy*, 489 F. Supp. 3d at 508  ("the unconstitutional amended version of §

227(b)(1)(A)(iii) is what applied to [Defendants] at the time of the challenged communications at issue, and that fact deprives the Court of subject matter jurisdiction to adjudicate [Defendants]'s liability with regard to such communications."); *Lindenbaum*, 2020 U.S. Dist. LEXIS 201572, at *18; *Hussain*, 2020 U.S. Dist. LEXIS 236577, at *8; *see Cunningham*, 2021 U.S. Dist. LEXIS 62875, at *31. Courts simply do not construe legislation to have retroactive effect absent clear statutory directive, which is not present here.[10] Accordingly, Count I should be dismissed with prejudice as to any call that occurred prior to July 6, 2020. The Court simply lacks subject matter jurisdiction to award Plaintiff any relief under a law that the Supreme Court held was unconstitutional—and thus void—during that time.

## C. The Court Should Dismiss Plaintiff's Complaint in its Entirety for Failure to State a Claim.

### 1. Plaintiff Fails to Allege Her Claims With Requisite Specificity.

TCPA liability demands an examination of each individual call; allegations cannot be applied to an overall campaign. *See Newhart v. Quicken Loans Inc.*, No. 9:15-CV-81250, 2016 U.S. Dist. LEXIS 168721, at *7 (S.D. Fla. Oct. 12, 2016) (concluding, based on Commission and judicial precedent, that the proper analysis under section 227 requires an "examination of individual calls, not the 'overall campaign.'") (quotations omitted). Plaintiff does not plausibly allege any single call was made by or on behalf of Palmer or NCWC with specificity required to

---

[10]    *See Opati v. Republic of Sudan*, 140 S. Ct. 1601, 1607 (2020) ("The principle that legislation usually applies only prospectively 'is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic.' This principle protects vital due process interests, ensuring that 'individuals . . . have an opportunity to know what the law is' before they act, and may rest assured after they act that their lawful conduct cannot be second-guessed later. The principle serves vital equal protection interests as well: If legislative majorities could too easily make new laws with retroactive application, disfavored groups could become easy targets for discrimination, with their past actions visible and unalterable." (citations omitted) (quoting *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994)) (citing *Landgraf*, 511 U.S. at 266-67)).

state a *plausible* claim for violations of the TCPA.

Plaintiff makes the sweeping allegation that Palmer somehow responsible for "more than 150 of these calls." Compl. ¶¶ 2, 25.  But she does not describe how she comes to the conclusion that every one of the unspecified number of calls she claims to have received was tied to Defendants, when she can only describe "at least one occasion" when an unnamed agent "stated that the call was in regard to extended auto warranties offered by Palmer and NCWC."  *Id.* ¶ 27. It is also unclear when this single occasion of hearsay may have occurred, or who exactly this purported agent was working for.  It is simply not plausible for plaintiff to allege that Palmer or NCWC are responsible for every call she receives related to vehicle service contracts—a highly competitive industry with many companies offering similar products, and various ne'er-do-well actors often misrepresenting products on false pretenses—based on a call that she received on an uncertain date by an unnamed party that did not disclose that either Palmer or NCWC had any control over its actions.  By Plaintiff's absurd logic, it is plausible to assert a tort claim against UPS for every single accident involving a brown vehicle.  Plaintiff's generalized claims must be dismissed.

Plaintiff also fails to state any plausible claim against Palmer, NCWC or any of the mystery John Doe Defendants because she resorts to impermissible "lump" pleadings that cannot show with any specificity what any single defendant is alleged to have done.  Courts in the Ninth Circuit have established that lump pleadings making allegations attributing actions to defendants generally, rather than specific allegations as to individual defendants, will not survive a Rule 12 motion to dismiss.  *Aquilina v. Certain Underwriters at Lloyd's Syndicate*, 407 F. Supp. 3d 978, 997 (D. Haw. 2019) (citing *Destfino v. Reiswig*, 630 F.3d 952, 958-59 (9th Cir. 2011)) (approving district court's dismissals based on plaintiffs' "everyone did everything" allegations); *Ciuffitelli v.*

*Deloitte & Touche LLP*, No. 3:16-cv-580-AC, 2017 U.S. Dist. LEXIS 106883, at *44-45 (D. Or. Apr. 10, 2017) (ruling that plaintiffs failed to satisfy Rule 8 pleading requirements by attributing unlawful conduct to defendants generally); *Snowden v. Cazares*, No. CV12-3443 DSF(JC), 2016 U.S. Dist. LEXIS 186727, at *18 (C.D. Cal. Sept. 8, 2016) ("[T]he Second Amended Complaint never clearly connects any particular event or incident to any specific legal claim against any particular defendant as required.").

 Simply put, Plaintiff's "lump" allegations do not state any plausible claims for relief against Palmer or NCWC because Plaintiff does not plausibly allege what any particular defendant did or when any purported act occurred. *See Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013) ("Liability is personal."). For example, Plaintiff tends to group Palmer, NCWC, and the Doe Defendants together as some undefined amalgamation, *see, e.g.*, Compl. ¶ 5, ("After years of failed effort to stop the incessant illegal calls from defendants"), attribute all actions to all Defendants, *see, e.g., id.* ¶ 24, ("Palmer and NCWC and their telemarketing agents have altered their unlawful telemarketing campaigns."); *see also id.* ¶ 40 ("Palmer, NCMC [*sic*], or their agents made telemarketing calls"), or describe acts without attributing them to any particular Defendant. *See, e.g., id.* ¶ 25. While Plaintiff may attempt to describe a scenario in which Palmer, NCWC, and ten Doe Defendants are huddled around a telephone, collectively making illegal calls to consumers, this scenario is simply not plausible. Plaintiff's Complaint should be dismissed as a whole because it does not alert any individual defendant as to what unlawful act they committed.

### 2.   Plaintiff Fails to Plausibly Allege Direct Liability.

 To the extent that it is possible to parse out allegations to any specific defendant, Plaintiff still fails to state a claim for direct liability as to either Palmer or NCWC. The potential for direct liability under the TCPA can apply only under certain circumstances, and only to entities that

"initiate" the telemarketing calls. *See In re Dish Network, LLC*, 28 FCC Rcd. 6574, 6582 ¶ 24 (2013). A person or entity "initiates" a telephone call when it "takes the steps necessary to physically place a telephone call." *Id*. at 6583 ¶ 26. Plaintiff simply provides *no* evidence to show that Palmer or NCWC actually initiated any of the calls at issue. While Plaintiff simply makes conclusory statements that Palmer or NCWC are directly or vicariously liable for making the calls at issue, *see*, *e.g.*, Compl. ¶¶ 15-16, 32-33, Plaintiff makes no actual showing that any of the prerecorded messages she claims to have received made any reference to Palmer or NCWC, or that any live agent she spoke to ever notified her of any actual affiliation with Palmer or NCWC. *See*, *e.g.*, *Camunas v. Nat'l Republican Senatorial Comm.*, CIVIL ACTION NO. 21-1005, 2021 U.S. Dist. LEXIS 100125, at *9 (E.D. Pa. May 26, 2021) (granting 12(b)(6) motion because TCPA plaintiff's complaint "does not quote or otherwise describe the content of the alleged messages in a way that indicates the [defendant], rather than another individual or organization, sent the messages.").

Plaintiff's threadbare recitals are exactly the type of unsubstantiated "defendant-harmed-me" allegations that warrant dismissal. And as stated above, Plaintiff's attempt to plead direct liability as to Palmer or NCWC by making blanket allegation that "Palmer, NC[W]C, or their agents" made any unlawful calls, *see*, *e.g.*, Compl. ¶ 40, fails to meet the Rule 8 pleading standard. *Snowden*, 2016 U.S. Dist. LEXIS 186727, at *18-19; *Zola H. v. Snyder*, Case No. 12-14073, 2013 U.S. Dist. LEXIS 125199, at *26 (D. Mich. Sept. 3, 2013) (ruling that a complaint that "fails to imput[e] concrete acts to specific litigants, fails to state a plausible claim.") (citation omitted).

### 3.   Plaintiff Fails to Allege Vicarious Liability.

Plaintiff also fails to plausibly allege that Palmer or NCWC is vicariously liable for the calls at issue. "A plaintiff can establish an agency relationship, and therefore vicarious liability

under the TCPA, using the 'bedrock theories of agency,' actual authority, apparent authority, and ratification." *Abante Rooter & Plumbing, Inc. v. Alarm.com Inc.*, 2018 U.S. Dist. LEXIS 132078, at *10 (N.D. Cal. Aug. 3, 2018) (citing *Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 449 (9th Cir. 2018.   And as discussed above, the hallmark of establishing an agency relationship is a showing of the principal's control over the alleged agent. *See Williams v. Yamaha* Motor Co., 851 F.3d 1015, 1024-25 (9th Cir. 2017).

But Plaintiff falls completely flat in her attempt to plausibly allege that any such relationship exists.   Indeed, Plaintiff's allegations regarding vicarious liability are simple recitations of the elements of a TCPA agency claim, without any factual evidence to substantiate her conclusory recitals. *See* Compl. ¶¶ 32-33; *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" in meeting the standard required by Rule 8.); *see also Cunningham v. Lifestyles Dev., LLC*, CIVIL ACTION NO. 4:19-CV-00006-ALM-CAN, 2019 U.S. Dist. LEXIS 154112, at *12 (E.D. Tex. Aug. 8, 2019) (citing *Naiman* v. *Freedom Forever, LLC*, Case No.19-cv-00256-JSC, 2019 U.S. Dist. LEXIS 69728, at *8 (N.D. Cal. Apr. 24, 2019)) ("Plaintiff must allege factual allegations regarding [defendant's] relationship with the purported agents/callers—broad, general allegations are not sufficient.").

Moreover, to the extent that Plaintiff does vaguely describe being offered Palmer's product by an unnamed party in at least one call, this is not evidence of an agency relationship.  Compl. ¶ 27.  Crucially, nowhere in the Complaint does Plaintiff allege that she ever had any communication with Palmer or NCWC.  Accordingly, there is certainly no evidence of actual authority conferred unto any of the purported agents. *See, e.g., Valdes v. Nationwide Real Estate Execs.*, SA CV 20-01734-DOC-(JDEx), 2021 U.S. Dist. LEXIS 100931, at *9 (C.D. Cal. Apr. 22, 2021) ("Actual

authority is limited to actions 'specifically mentioned to be done in a written or oral communication' or 'consistent with' a principal's 'general statement of what the agent is supposed to do.'" (quoting *Salyers v. Metro. Life Ins. Co.*, 871 F.3d 934, 940 (9th Cir. 2017))).

And Plaintiff alleges no communications with Palmer or NCWC that could support the idea that either of them exercised control over or delegated authority to this undisclosed alleged agent. *Valdes*, 2021 U.S. Dist. LEXIS 100931, at *10 ("Apparent authority arises from the principal's manifestations to a third party that supplies a reasonable basis for that party to believe that the principal has authorized the alleged agent to do the act in question.") (citation omitted).[11] Nor does Plaintiff allege any statement by any John Doe Defendant that could plausibly show any agency relationship with Palmer or NCWC.[12]  Plaintiff's conclusory fabrications fall well short of *Iqbal*'s requirement to open the doors of discovery.

Plaintiff's unsupported conclusion regarding ratification does not hold water.  A purported principal must have knowledge of illegal conduct in order to ratify that conduct.  *Valdes*, 2021

---

[11]    *See also Cunningham v. Health Plan Intermediaries Holdings, LLC*, NO. 3:18-cv-00518, 2021 U.S. Dist. LEXIS 91978, at *7-8 (M.D. Tenn. May 14, 2021) (dismissing TCPA claims for failing to plausibly allege facts that purported principal had manifested authority in agent); *Warciak v. Subway Rests., Inc.*, No. 1:16-cv-08694, 2019 U.S. Dist. LEXIS 32357, at *7 (N.D. Ill. Feb. 28, 2019) (finding that to plausibly allege apparent authority in TCPA claim, "[plaintiff] would need to allege that he reasonably believed [agent] text messaged him as [principal's] agent and that his belief is traceable to some communication from [principal]." (citing *Smith v. State Farm Mut. Auto. Ins. Co.*, 30 F. Supp. 3d 765, 777 (N.D. Ill. 2014))); *Stark v. Stall*, No. 19-cv-00366-AJB-AHG, 2021 U.S. Dist. LEXIS 94503, at *8-9 (S.D. Cal. May 18, 2021).

[12]    At most Plaintiff alleges that some unnamed party contacted her purportedly to sell a Palmer product.  *See* Compl. ¶ 27.  Simply advertising or selling a company's products does not create an agency relationship.  *See Warciak v. Subway* Rests., *Inc.*, 949 F.3d 354, 357 (7th Cir. 2020).  7-11 sells Coca-Cola products, but that does not make 7-11 Coca-Cola's agent.  *See also Sundermann v. Golden Circle Real Estate Group*, Case No. 4:19-cv-00140, 2019 U.S. Dist. LEXIS 226057, at *8-9 (S.D. Iowa Oct. 29, 2019) (granting defendant seller's motion to dismiss because plaintiff did not plead facts sufficient to establish apparent authority or ratification when all statements other than caller's identification that he was calling on behalf of seller's d/b/a were "not factual allegations but legal conclusions that merely recite the elements required to show an agency relationship.").

U.S. Dist. LEXIS 100931, at *11 (quoting *Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1074 (9th Cir. 2019)) (affirming that ratification requires the alleged principal to have actual knowledge of the agent's actions or be willfully ignorant of material facts).[13]  Plaintiff pleads no such knowledge here, as there is no allegation as to any communications with either Palmer or NCWC.  Plaintiff points instead to BBB complaints from random consumers, which are not evidence of wrongdoing at all,[14] much less proof that Defendants had actual knowledge that some unnamed telemarketer allegedly made unlawful calls to *Plaintiff's* cell phone—the specific knowledge Plaintiff would need to allege to make out a plausible ratification theory here, which she of course cannot and has not done.

In short, Plaintiff's claim that an agency relationship exists between Palmer or NCWC and some unspecified Doe Defendant based on some vague hearsay regarding an unspecified relationship is not plausible under the Supreme Court's *Iqbal*/*Twombly* pleading standard.  The Court should therefore dismiss Plaintiff's claims.

### 4.    Plaintiff's Claims for Calls Outside the Statute of Limitations and for Calls to Residential Telephones Should Be Dismissed.

The only date Plaintiff specifically alleges a call occurred is February 28, 2017.  Compl. ¶ 25.  While Plaintiff generally alleges she received calls after that date, all calls that occurred more

---

[13]     *See also Rosenberg v. LoanDepot.com LLC*, 435 F. Supp. 3d 308, 325 (D. Mass. 2020) ("A seller may be liable for unauthorized conduct of a telemarketer *if the seller is aware of the unauthorized conduct of the telemarketer* and fails to terminate its services.") (emphasis added); *Naiman v. TranzVia LLC*, Case No. 17-cv-4813-PJH, 2017 U.S. Dist. LEXIS 199131, at *36-37 (N.D. Cal. Dec. 4, 2017) (citing *Batzel v. Smith*, 333 F.3d 1018, 1036 (9th Cir. 2003)) ("If an agency relationship was not established prior to the unauthorized tort, the continued funding of the other entity is not considered ratification."); Restatement (Third) Of Agency § 4.06 (2006) (A party "is not bound by a ratification made without knowledge of material facts involved in the original act when the [party] was unaware of such lack of knowledge.").

[14]     *See Shanahan*, 2020 U.S. Dist. LEXIS 101031, at *17 (rejecting BBB complaints as evidence of ratification).

than four years before April 25, 2021, the date Plaintiff filed her Complaint, are barred by the applicable statute of limitations. *See Dickey v. Vital One Health Plans Direct, LLC*, No. 1:18-cv-01399-DAD-BAM, 2020 U.S. Dist. LEXIS 37576, at *4 (E.D. Cal. Mar. 3, 2020) (citing *Giovanniello v. ALM Media, LLC*, 726 F.3d 106, 115 (2d Cir. 2013) ("The TCPA has a four-year statute of limitations [under 28 U.S.C. § 1658(a)].").  Accordingly, those claims must be dismissed.

Additionally, Plaintiff's claims for alleged violations of section 227(b)(1)(B), Compl. ¶ 40, should be dismissed for failure to state a claim because this section of the TCPA concerns only calls made to residential telephone lines, but Plaintiff only alleges calls made to her cellular phone. *See*, *e.g.*, Compl. ¶ 2.  The TCPA treats cellular telephones and residential telephones separately; they are not synonymous, as Plaintiff appears to assume.  *See, e.g., Ewing v. Senior Life Planning, LLC*, Case No. 19-cv-1005-BAS-LL, 2019 U.S. Dist. LEXIS 161034, at *19 (S.D. Cal. Sept. 19, 2019) (dismissing plaintiff's 47 U.S.C. § 227(b)(1)(B) claims because plaintiff only alleged calls to his cell phone); *Bee, Denning, Inc. v. Capital All. Grp.*, 310 F.R.D. 614, 621 (S.D. Cal. 2015) ("Plaintiffs' inclusion in the automated call class of persons who received a call to their residential telephone line involves an entirely different subsection of the TCPA, and thus raises a new claim for relief not alleged by Plaintiffs in their complaint. *Compare* 47 U.S.C. § 227(b)(1)(A)(iii) *with* 47 U.S.C. § 227(b)(1)(B).  Therefore, the Court will consider only an automated call class limited to persons receiving prerecorded voice calls to their cell phone."); *see also Cunningham v. Arco Media Inc.*, No. 4:19-CV-00901-RWS-CAN, 2020 U.S. Dist. LEXIS 82584, at *12-13 (E.D. Tex. Apr. 3, 2020) (collecting cases, finding that "the TCPA differentiates between calls made to cellular and residential lines" (quoting *Bates v. I.C. Sys., Inc.*, No. 09-CV-103A, 2009 U.S. Dist. LEXIS 96488, at *1 (W.D.N.Y. Oct. 19, 2009))), *report and recommendation adopted*, No. 4:19-CV-00901-RWS-CAN, 2020 U.S. Dist. LEXIS 81188 (E.D. Tex. May 8, 2020).  Accordingly,

Plaintiff's claims regarding any calls to residential telephone numbers must be dismissed.

## V.    CONCLUSION

For the reasons set forth above, Defendant respectfully moves this Court to enter an Order dismissing Plaintiff Saprina Odle's Complaint for lack of personal jurisdiction; alternatively, the Court should nevertheless dismiss all claims brought under 47 U.S.C. § 227(b)(1)(A)(iii) for calls before July 6, 2020, with prejudice, for lack of subject matter jurisdiction, and dismiss Plaintiff's entire Complaint for failure to state a claim under Rule 12(b)(6).

Respectfully submitted this 8th day of June, 2021.

**CHOCK BARHOUM LLP**
*Attorney for Defendants Palmer*
*Administrative Services, Inc. and N.C.W.C.,*
*Inc.*

By:    */s/ Jeffrey W. Hansen*
        Jeffrey W. Hansen, Esq., OSB No. 923290
        Chock Barhoum LLP
        121 SW Morrison Street, Suite 500
        Portland, OR 97204
        Phone: (503) 477-8906
        Email: jeff.hansen@chockbarhoum.com

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the applicable word-count limitation under LR 7-2(b) because it contains 11,042 words, including headings, but excluding the caption, signature block, and any certificates of counsel.

/s/ Jeffrey W. Hansen
Jeffrey W. Hansen, Esq., OSB No. 923290

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on June 8, 2021 a true and correct copy of

Defendants' Motion to Dismiss Plaintiff's Complaint and Exhibit 1 has been served via the Court's

ECF system on:

> Michael R. Fuller
> OlsenDaines
> US Bancorp Tower
> 111 SW 5th Ave., Suite 3150
> Portland, OR 97204
> Phone: 503-222-2000
> Fax: 503-362-1375
> Email: Michael@UnderdogLawyer.com
>
> Justin M. Baxter
> Baxter & Baxter, LLP
> 8835 S.W. Canyon Lane
> Suite 130
> Portland, OR 97225-3429
> Phone: 503-297-9031
> Fax: 503- 291-9172
> Email: justin@baxterlaw.com
>
> Kelly D. Jones
> Kelly D. Jones, Attorney at Law
> 819 SE Morrison St.
> Suite 255
> Portland, OR 97214
> Phone: 503-847-4329
> Fax: 503-715-0524
> Email: kellydonovanjones@gmail.com

*/s/ Jeffrey W. Hansen*
 Jeffrey W. Hansen, Esq., OSB No. 923290
