**Michael Fuller, OSB No. 09357**
OlsenDaines
US Bancorp Tower
111 SW 5th Ave., Suite 3150
Portland, Oregon 97204
michael@underdoglawyer.com
Direct 503-222-2000

**Justin Baxter, OSB No. 992178**
Baxter & Baxter, LLP
Direct 503-297-9031

**Kelly D. Jones, OSB No. 074217**
The Law Office of Kelly D. Jones
Direct 503-847-4329

Of Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **SAPRINA ODLE** and **JESSICA HLAVINKA** individually and on behalf of all others<br><br>Plaintiffs<br><br>vs<br><br>**PALMER ADMINISTRATIVE SERVICES, INC., N.C.W.C., INC.,** and **DOES 1-10**<br><br>Defendants | Case No. 3:21-cv-00623-AC<br><br>**CLASS ACTION COMPLAINT FIRST AMENDED**<br><br>Auto-Warranty Robocalls Telephone Consumer Protection Act (47 U.S.C. § 227)<br><br>Demand for Jury Trial |

**CLASS ACTION COMPLAINT** – Page 1 of 31

# INTRODUCTION

**1.**

Auto-warranty robocalls were the top unwanted call complaint filed by American consumers with the FCC last year, and the trend continues into 2021.[1]

**2.**

Ms. Odle is an Oregon consumer. Over the past several years, Ms. Odle's cell phone has been blown up with over 150 unwanted robocalls trying to sell her Palmer's extended auto-warranties. Ms. Odle repeatedly asked Palmer's call agents to stop calling her. The robocalls did not stop.

**3.**

Ms. Hlavinka is an Oregon consumer. Over the past several years, Ms. Hlavinka's cell phone has also been blown up with over 100 unwanted robocalls trying to sell her Palmer's extended auto-warranties.

**4.**

Having no other choice, plaintiffs now file this class action to get the robocalls to stop once and for all, and to recover $1,500 per call for each Oregon consumer who received an unwanted robocall marketing Palmer's auto-warranties over the past four years.

---

[1] https://www.fcc.gov/fcc-data-spotlighttop-five-unwanted-call-complaints

**CLASS ACTION COMPLAINT** – Page 2 of 31

## BACKGROUND

### 5.

Plaintiffs bring this putative class action on behalf of themselves and similarly situated Oregonians to enforce the privacy protections of the Telephone Consumer Protection Act (TCPA), and to seek redress for defendants' harassing, unsolicited, and unlawful calls soliciting extended auto-warranties and other products and services using an artificial or prerecorded voice without consent.

### 6.

After years of failed efforts to stop the incessant illegal calls from defendants, exhausted and devoid of any other options, plaintiffs and her counsel have decided to devote further time and resources to seek relief from this Court on behalf of themselves and their fellow Oregonians.

### 7.

The TCPA was enacted by Congress in 1991 in response to widespread public outrage about the proliferation of intrusive nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012).

**8.**

With limited exceptions, the TCPA makes it unlawful for any person to make any call, other than a call made for emergency purposes or made with the prior express consent of the called party, using an artificial or prerecorded voice to any telephone number assigned to a cellular telephone service. 47 U.S.C. § 227(b)(1)(A). Under its delegation of authority to implement rules under the TCPA, the FCC promulgated regulations for telemarketing calls that require a party to obtain "express written consent" prior to making calls using a prerecorded or artificial voice. 47 C.F.R. § 64.1200(a)(1)-(2). The FCC rule defines "express written consent" as "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered." 47 C.F.R. § 64.1200(f)(8).

**9.**

The TCPA provides a private cause of action for individuals to enjoin and to seek $500 for each call made in violation of § 227(b)(1), or $1,500 for each call made willfully or knowingly in violation of § 227(b)(1). *See* 47 U.S.C. § 227(b)(3).

**CLASS ACTION COMPLAINT** – Page 4 of 31

**10.**

For a person or entity to "make" a call under the TCPA, the person or entity must either (1) directly make the call or (2) have an agency relationship with the person who made the call. *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 877-79 (9th Cir. 2014).

**11.**

Under federal common law agency principles, there are multiple ways to establish an agency relationship and to establish a principal's liability for the unlawful actions of its agent, including express actual authority, implied actual authority, apparent authority, and ratification. *See* Restatement (Third) of Agency.

**CLASS ACTION COMPLAINT** – Page 5 of 31

## JURISDICTION AND THE PARTIES

### 12.

This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because the TCPA, 47 U.S.C. § 227, is a federal consumer protection statute.

### 13.

Venue is appropriate in this District under 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to plaintiffs' claims occurred in or was directed to this District and plaintiffs reside in this District.

### 14.

Ms. Odle is a natural person who lives in and is domiciled in Oregon.

### 15.

Ms. Hlavinka is a natural person who lives in and is domiciled in Oregon.

### 16.

Defendant Palmer Administrative Services, Inc. (Palmer) is a Delaware incorporated entity, with a principal place of business located at 3430 Sunset Avenue, in Ocean, New Jersey 07712. Palmer is registered with the Oregon Secretary of State in order to conduct its business in Oregon, and its registered agent in Oregon is Registered

Agents Inc. located at 5305 River Road North, Suite #B, Keizer, Oregon 97303.

### 17.

Defendant N.C.W.C, Inc. (NCWC) is a sister entity of Palmer, incorporated in New Jersey, with a principal place of business at the same address as Palmer at 3430 Sunset Avenue, in Ocean, New Jersey 07712. Palmer and NCWC share common ownership, direction, and management, including Michael Shaftel, who is the President of Palmer and NCWC. NCWC conducts significant business in Oregon, including by making or authorizing calls to Oregonians using an artificial or prerecorded voice in violation of the TCPA to market its or Palmer's products and services, causing harm to plaintiffs and the putative class members that Palmer knows is likely to be suffered here in Oregon.

### 18.

This Court can exercise specific personal jurisdiction over both Palmer and NCWC because, as set forth in more detail in this complaint regarding Palmer's and NCWC's agency relationship with and vicarious liability for the Doe defendants, Palmer, directly or through NCWC, purposefully directed their solicitation activities to Oregon by intentionally giving its contracted telemarketing agents (the Doe defendants) implied actual or apparent authority to make calls to residents of all 50 states, including those in Oregon such as plaintiffs

and the Class Members with Oregon-designated area codes, using artificial or prerecorded voice messages without their consent in violation of the TCPA. But for Palmer and NCWC's grant of authority and ratification of its telemarketing agents' unlawful calling practices in violation of the TCPA as set forth in this complaint, plaintiffs and the Class Members would not have suffered injury as recognized by the TCPA for which plaintiffs and the Class Members seek relief.

**19.**

As set forth in more detail in this complaint, the Doe defendants are yet-to-be-identified telemarketing persons or entities that Palmer, directly or through NCWC, contracted with, engaged, directed, and authorized to make calls to plaintiffs and the Class Members to market and sell Palmer's or NCWC's products. As also alleged in more detail in this complaint, these Doe defendants made the unlawful calls to plaintiffs and the Class Members using an artificial or prerecorded voice without consent of the called parties in violation of the TCPA, and thus are directly and jointly liable along with their principals Palmer and NCWC, for each of the unlawful calls. As set forth in this complaint, given the purposeful concealment of the Doe defendants' identities, through "call number spoofing" and other practices, plaintiffs have not yet identified the legal names of these persons or entities. Upon

discovery of this information in this litigation, plaintiffs will seek leave to amend this complaint to name and serve these Doe defendants.

## 20.

This Court has specific jurisdiction over the Doe defendants because they purposefully directed their unlawful telemarketing solicitation activities in violation of the TCPA to Oregon, by intentionally making calls to and targeting plaintiffs and the Class Members with Oregon-designated area codes, which they knew or should have known would cause harm here in Oregon. But for the Doe defendants' unlawful calling practices in violation of the TCPA as set forth in this complaint, plaintiffs and the Class Members would not have suffered injury as recognized by the TCPA for which plaintiffs and the Class Members seek relief.

## 21.

As set forth in more detail in this complaint, Does 1-10 (the Doe defendants) are yet-to-be-identified telemarketing agents that Palmer, directly or through NCWC, contracted with, engaged, directed, and authorized to make calls to plaintiffs and the Class Members, to market Palmer's or NCWC's products and services, and if successful, to input the called parties' identifying information and pricing details into a system that is shared between and can be accessed by these telemarketing agent(s) and Palmer and NCWC. As also alleged in more

**CLASS ACTION COMPLAINT** – Page 9 of 31

detail in this complaint, these Doe defendants made the unlawful calls to plaintiffs and the Class Members using an artificial or prerecorded voice without consent of the called parties in violation of the TCPA, and thus are directly and jointly liable along with their principals Palmer and NCWC, for each of the unlawful calls.

## ADDITIONAL FACTUAL ALLEGATIONS

### 22.

Palmer, and its commonly owned and operated sister entity, NCWC, markets, offers, and sells extended auto-warranties and other similar products and services to American consumers, including to Oregon residents such as plaintiffs and the Class Members. Critical to Palmer and NCWC's business model are mass telemarketing campaigns conducted by their contracted telemarketing agents (the Doe defendants) that Palmer directly, or through NCWC, engages, directs, and authorizes to make calls using artificial or prerecorded voice messages to market or sell Palmer's and NCWC's products and services.

### 23.

Upon information and belief, Palmer and NCWC utilize robocalling by their telemarketing agents to market and sell their extended auto-warranty products because it allows for thousands of automated sales calls to be initiated in a very short period of time, but their telemarketing sales agents only need actually spend time on the

**CLASS ACTION COMPLAINT** – Page 10 of 31

phone with consumers who respond positively to the artificial or
prerecorded voice messages, thereby illegally shifting the cost of
aggravation and wasted time to the public at large and away from
themselves where it belongs.

## 24.

Palmer's and NCWC's telemarking campaigns have unlawfully
invaded the privacy of countless American consumers, hundreds of
which of which have submitted complaints about Palmer's and NCWC's
unlawful practices. *See, e.g.*,

https://www.bbb.org/us/nj/ocean/profile/extended-warranty-contract-
service-companies/palmer-administrative-services-0221-
90163943/customer-reviews;

https://www.bbb.org/us/nj/allenhurst/profile/auto-warranty-
processing/ncwc-inc-0221-11001474.

## 25.

In 2015, Palmer, NCWC, and one of their telemarketing agents,
Got Warranty, Inc., were sued in a class action lawsuit in the Northern
District of West Virginia titled *Mey v. Got Warranty, Inc., Ganna
Freiberg, N.C.W.C., Inc., and Palmer Administrative Services, Inc.*, Case
No. 5:15-cv-00101-JPB-JES (Mey Class Action). *Inter alia*, the Mey
Class Action alleged that Palmer, NCWC, and Got Warranty, Inc.
violated § 227(b)(1) of the TCPA by "initiating a telephone call using an

**CLASS ACTION COMPLAINT** – Page 11 of 31

automated dialing system or prerecorded voice to Plaintiff's telephone numbers assigned to a cellular telephone service, or (b) by the fact that others caused the initiation of those calls on its behalf." Mey Class Action, Doc. 108 ¶ 65.

## 26.

The Mey Class Action resulted in a class settlement (Mey Class Settlement), which was preliminarily approved by the court on April 6, 2017, certified a class including "[a]ll persons or entities in the United States to whom Got Warranty, Inc., or any third parties on its behalf, sent telemarketing calls promoting the goods or services of Defendants [Palmer and NCWC] at any time from August 6, 2011 to February 27, 2015," and authorized a $650,000 class settlement fund. The Mey Class Settlement was granted final approval in a judgment entered on July 26, 2017. Mey Class Action, Doc. 149.

## 27.

As further alleged in this complaint, despite the Mey Class Settlement, Palmer and NCWC continued their illegal telemarketing campaigns marketing their extended auto warranties by intentionally targeting Oregon residents like plaintiffs and the Class Members with unsolicited, unwanted, and harassing calls to their cell phones using a prerecorded or artificial voice without their consent.

**CLASS ACTION COMPLAINT** – Page 12 of 31

**28.**

Upon information and belief, over the years, Palmer, NCWC, and their telemarketing agents have altered their unlawful telemarketing campaigns to make it more difficult for consumers like plaintiffs and the Class Members to be able to hold them accountable for their unlawful practices—through the use of phone number spoofing technology, by concealing the true legal names of the entities involved, creating layers of corporate shields, and other tactics—which make it nearly impossible for the recipients to discover the identity of the telemarketer agent and principals absent formal legal discovery. *See, e.g.*, https://www.fcc.gov/spoofing. These tactics also increase Palmer and NCWC's profits, because calls from numbers displaying local area codes are much more likely to be answered by the recipients and calls from hundreds of different numbers are nearly impossible to block.

**29.**

Ms. Odle began receiving repeated and continuous calls to her cellular (cell) phone number 541-530-XXXX from various phone numbers she did not recognize in 2017. Since February 28, 2017, Ms. Odle has received more than 150 of these calls. Ms. Odle's caller identification on her cell indicated that these calls were made from a myriad of different phone numbers, mostly with Oregon-designated area codes.

**CLASS ACTION COMPLAINT** – Page 13 of 31

**30.**

On many occasions, Ms. Odle answered the calls. Each and every time she answered, she was presented with a prerecorded or artificial voice message soliciting extended auto-warranties and stating that she should "dial 1" to speak with an operator or "dial 2" if she wanted her number removed, or similar language.

**31.**

On multiple occasions when Ms. Odle answered the calls, she would "dial 2" on her phone as directed, yet the calls would not stop. On many other occasions, Ms. Odle would "dial 1" on her phone after the prerecorded or artificial voice prompt and she would be connected to a live agent. The live agent would then attempt to sell her an extended auto-warranty offered by Palmer or NCWC. On many other calls that Ms. Odle answered and "dialed 1" to speak with an agent after the prerecorded or artificial voice prompt, she would request that the calls stop and that she be taken off the calling list. However, the live agent who she was connected to would simply hang up on her. On at least one occasion the live agent called Ms. Odle a nasty name and then hung up on her. On at least one occasion Ms. Odle requested information about the extended auto-warranties and the company behind the calls and the agent stated that the call was in regard to extended auto-warranties offered by Palmer and NCWC.

**CLASS ACTION COMPLAINT** – Page 14 of 31

**32.**

On many occasions Ms. Odle would not be able to answer the calls, and on each of these occasions one of multiple versions of a prerecorded or artificial voice message would be left on her voicemail. When Ms. Odle listened to each these messages, she heard a prerecorded or artificial voice consistent with the prerecorded or artificial voice messages that played when she answered the calls, marketing extended auto-warranties.

**33.**

Because Ms. Odle's caller identification indicated that these calls were from different numbers, with mostly Oregon area codes, she was unable to successfully block the calls or to identify the caller or discern the nature of the call, before answering the calls or listening to the messages featuring a prerecorded or artificial voice.

**34.**

Ms. Odle has never given her written express consent, nor any form of consent, for any person or entity, including any of the defendants, to make calls to her phone number using a prerecorded or artificial voice.

**35.**

Ms. Hlavinka began receiving repeated and continuous calls to her cellular (cell) phone number 541-733-XXXX from various phone

numbers she did not recognize in 2020. Since December 28, 2020, Ms. Hlavinka has received well over 100 of these calls. Ms. Hlavinka's' caller identification on her cell phone indicate that these calls were made from a myriad of different phone numbers, mostly with Oregon designated area codes.

**36.**

Often Ms. Hlavinka answered the calls. Each and every time she answered, she was presented with a prerecorded or artificial voice message soliciting extended auto warranties and stating that she should "dial 1" to speak with an operator or "dial 2" if she wanted her number removed, or similar language.

**37.**

On some occasions when Ms. Hlavinka answered the calls, she would "dial 2" on her phone as directed, yet the calls would not stop. During some of these calls Ms. Hlavinka would "dial 1" to be connected to a live agent and she requested that they stop calling her, and the agent would just hang up on her or say "no." During one of these calls that she answered, Ms. Hlavinka's caller identification displayed the incoming number beginning with a 971 Oregon area code. After listening to the prerecorded or artificial voice message, Ms. Hlavinka followed the prompt and was connected to a live agent. The live agent aggressively attempted to sell her an extended auto-warranty product and get her to

**CLASS ACTION COMPLAINT** – Page 16 of 31

enter into an agreement to do so. During this call, part of which Ms. Hlavinka recorded with audio and video, Ms. Hlavinka specifically asked the initial agent, and the second "supervising" agent that called himself "Jeffrey", whether they were attempting to sell her an extended auto-warranty plan offered by and through Palmer—to which both of these agents replied in the affirmative.

### 38.

Because Ms. Hlavinka's caller identification indicated that these calls were from different numbers, with mostly Oregon area codes, she was unable to successfully block the calls or to identify the caller or discern the nature of the call, before answering the calls or listening to the messages featuring a prerecorded or artificial voice.

### 39.

Plaintiffs have both suffered a concrete injury-in-fact and have standing to seek relief in this Court because defendants' unlawful and unsolicited telemarketing calls using a prerecorded or artificial voice without their consent "present the precise harm and infringe the same privacy interests Congress sought to protect in enacting the TCPA" and "by their nature, invade the privacy and disturb the solitude of their recipients." *Van Patten v. Vertical Fitness Grp., Ltd. Liab. Co.*, 847 F.3d 1037, 1043 (9th Cir. 2017). Moreover, Ms. Odle and Ms. Hlavinka were both personally and negatively affected by these unwanted calls as they

**CLASS ACTION COMPLAINT** – Page 17 of 31

both have been frustrated and distressed by their inability to stop the calls, and the calls have invaded plaintiffs' privacy and have disrupted their daily activities and the peaceful enjoyment of their personal and professional lives.

**40.**

Palmer and NCWC are jointly and vicariously liable for the unlawful calls made to plaintiffs and the putative Class Members by their telemarketing sales agents (the Doe defendants) under federal common law agency principles, including through express actual authority, implied actual authority, apparent authority, and/or ratification. *See* Restatement (Third) of Agency; *In re Joint Petition Filed by Dish Network, LLC*, 28 F.C.C. Rcd. 6574, 6574 (2013); *Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1072 (9th Cir. 2019) ("A court may hold [a defendant] . . .vicariously liable for the TCPA violations of third party callers . . .where the plaintiff establishes an agency relationship, as defined by federal common law, between the defendant and [the] third-party caller.") (quotes and citation omitted).

**41.**

Palmer and NCWC contracted with, directed, and authorized one or more of their telemarketing sales agents (the Doe defendants) to make the unlawful calls to plaintiffs and the Class Members in Oregon on Palmer's or NCWC's behalf to market and sell their products or

services, and provided these telemarketing sales agents with form contracts to be completed with the called parties' sensitive personal information and the pricing details of Palmer's or NCWC's products and services when the artificial or prerecorded voice calls succeeded in soliciting the called party to engage in a sales transaction. Palmer and NCWC also provided their telemarketing sales agents with access to a shared system, database, or portal, in order to share information about consumers, pricing and other information about Palmer's and NCWC's products, to facilitate the sale of Palmer and NCWC's products and services, including the form contracts that would be completed by the telemarketing sales agents during calls with consumers and relayed to Palmer and NCWC. Palmer and NCWC knew that its telemarketing sales agents were calling and soliciting Oregon residents on their behalf because they would have been provided with numerous completed sales agreements containing information from and about Oregon residents that the agents were successful in reaching with the robocalling scheme.

**42.**

Palmer, directly or through NCWC, had the right to control or direct many aspects of the Doe defendants' telemarketing campaigns marketing and selling Palmer or NCWC's products and services including, but not limited to, the right to control or direct which states or area codes the telemarketing calls were made to, how many

solicitation calls would be made on their behalf over a certain period, whether solicitation calls would be made using an artificial or prerecorded voice message, whether solicitation calls would be made to persons that did not give express consent to receive calls using an artificial or prerecorded voice message, the content of the artificial or prerecorded voice messages used in the calling campaign, the type of information gathered from the called parties, and the type and pricing of Palmer's or NCWC's products and services that would be marketed to the called parties.

## 43.

Palmer and NCWC's telemarketing agents (the Doe defendants) made the unlawful calls to plaintiffs and the Class Members with implied actual authority given to them by Palmer directly, or through NCMC, because the telemarketing agents were given open-ended instructions to make calls to consumers, including those with Oregon area codes like plaintiffs and the Class Members to market and sell Palmer's and NCWC's products and services and the telemarketing agents acted reasonably and accordingly by making calls to plaintiffs and the Class Members using artificial or prerecorded voice messages without consent. Despite their knowledge of the myriad of relevant complaints made by consumers regarding their telemarketers illegal calling practices, knowledge of previous lawsuits filed against them and

their telemarketing agents alleging similar unlawful conduct, including the Mey Class Action, their understanding of the TCPA, and their knowledge that they did not provide their telemarketing agents with a list of consumers who had given prior express consent to receive artificial or prerecorded voice calls, Palmer and NCWC knowingly stood by while their telemarketing agents utilized these unlawful calling practices to solicit consumers like plaintiffs and the Class Members on their behalf, impliedly authorizing their telemarketing agents' practices and becoming jointly liable for their telemarketing agents' TCPA violations.

**44.**

Palmer and NCWC's telemarketing agents (the Doe defendants) also made the unlawful calls to plaintiffs and the Class Members with apparent authority because Palmer and NCWC gave instructions and authorization for its telemarketing sales agents to make calls to plaintiffs and the Class Members to market and sell their products and services, to gather sensitive personal information from the called parties and to relay pricing and other information about Palmer's and NCWC's products and services, to complete form contracts that would later bind the called parties to Palmer and/or NCWC, and with the understanding that the telemarketing agents would, at least if questioned or a contract was completed, have to tell the called parties that the calls were being

made to solicit Palmer and NCWC's products and services. Given these facts, objectively, consumers like plaintiffs and the Class Members, would reasonably believe that the telemarketing agents had authority to act on behalf of Palmer and NCWC, including by making the calls to their cell phones using an artificial or prerecorded voice without consent in violation of the TCPA. As set forth in more detail in this complaint, this is what occurred in the case of plaintiffs' interactions with Palmer and NCWC's telemarketing agents. During one the many calls that Ms. Odle received from one of the Doe defendant telemarketing sales agents, the agent specifically stated that the company behind the calls was Palmer and NCWC and that the call was in regard to extended auto warranties offered by Palmer and NCWC. During one of Ms. Hlavinka's calls with Palmer and NCWC's telemarketing agents, the agent specifically stated that the call was being made to sell a Palmer auto-warranty product. Given these statements, Ms. Odle and Ms. Hlavinka both subjectively and reasonably believed that the unlawful calls were made on behalf of and with the authority of Palmer and/or NCWC. Because plaintiffs and the Class Members would reasonably believe that Palmer and NCWC's telemarketing sales agents had the authority to act on behalf of Palmer and NCWC and that belief is traceable to Palmer's and NCWC's manifestations, the telemarketing agents acted with apparent authority to make the calls using an artificial or prerecorded

**CLASS ACTION COMPLAINT** – Page 22 of 31

or voice without the consent of the called parties, and therefore Palmer and NCWC are jointly liable for their telemarketing agents' TCPA violations.

**45.**

Palmer and NCWC also ratified their telemarketing agents (the Doe defendants) unlawful calls to plaintiffs and the Class Members. As further alleged in this complaint, given their business model, previous TCPA litigation including the Mey Class Action, many relevant complaints directed to it by consumers, and history working with its telemarketing agents, Palmer and NCWC knew that robocalls and marketing calls to cell phones using artificial or prerecorded voice messages are ubiquitous in its auto-warranty solicitation business. Despite this knowledge, Palmer and NCWC contracted with the telemarketing sales agents (the Doe defendants) and continued to accept the benefits of their telemarketing sales agents conduct without demanding that these agents ensure that they were only calling consumers, unlike plaintiffs and the Class Members, that had expressly consented to receiving calls using an artificial or prerecorded voice message. Under these circumstances, the telemarketing agents that made the unlawful calls to plaintiffs and the Class Members were likely to draw the inference that Palmer's and NCWC's acquiescence and silence manifested Palmer's and NCWC's assent to these unlawful

practices, and thus, Palmer and NCWC are jointly liable for their telemarketing agents' TCPA violations because they ratified these unlawful practices by receiving or retaining the benefits of these practices, including by obtaining leads and generation of actual sales, with material knowledge of the unlawful practices.

**46.**

Even *if* the facts alleged in this complaint are insufficient to infer actual knowledge by Palmer and NCWC that its telemarketing sales agents (the Doe defendants) were violating the TCPA by calling plaintiffs and the Class Members using artificial or prerecorded voice messages without their consent, Palmer and NCWC at a minimum had knowledge of facts about their telemarketing agents' calling practices, especially given the common and relevant practices in their industry, that would have led a reasonable person to believe that it needed to investigate further. Instead, Palmer and NCWC continued to accept the many benefits of their telemarketing agents' unlawful calling practices and to remain silent about their agents' legal obligations under the TCPA. The facts currently known to plaintiffs suggest that Palmer, directly or through NCWC, set up its solicitation and sales model between Palmer, NCWC, and their telemarketing sales agents to remain willfully ignorant in order to avoid liability under the TCPA and in furtherance of its goal to reach as many consumers as possible with its

phone solicitations. *Inter alia*, Palmer and NCWC's general and open-ended instructions about how to solicit sales over the phone, lack of any specific or detailed instructions regarding TCPA compliance, failure to appropriately monitor their agents' calling practices and procedures, the failure to provide their agents with a preapproved list of consumers who actually consented to robocalls, the initial concealment of their identity in the phone messages, and the use of call number spoofing, indicate that Palmer and NCWC intentionally turned a blind eye to these unlawful practices, thus ratifying their telemarketer sales agents' TCPA violations through willful ignorance.

## FRCP 23 CLASS ACTION ALLEGATIONS

### 47.

Under FRCP 23, plaintiffs bring this action on behalf of themselves and all other similarly situated individuals. The class is initially defined as: (1) all individuals that have cellular telephone numbers with an Oregon area code (503, 541, 971, or 458) to whom a call was made or initiated by or on behalf of Palmer or NCWC; (2) on or after February 28, 2017; (3) promoting, marketing, soliciting, or selling Palmer's or NCWC's products or services; (4) where such call featured an artificial or prerecorded voice; (5) where no defendants have any current record of prior express written consent to place such calls at the time the calls were made. The following persons and entities are

excluded from the class: (1) any judge or magistrate presiding over this action and members of their families; (2) defendants, defendants' subsidiaries, parents, successors, predecessors, and any entity in which defendants have a controlling interest; (3) defendants' current or former employees, officers, and directors; (4) persons who properly execute and file a timely request for exclusion from the class; (5) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (6) plaintiff's counsel and defendants' counsel; and (7) the legal representatives, successors, and assigns of any such excluded persons.

## 48.

A class action is proper under FRCP 23(a) because based on information and belief and the investigation by plaintiffs' counsel, to be confirmed through defendants' records, the class consists of thousands of individuals. Therefore, joinder of all members is impracticable.

## 49.

This action can be maintained as a class action under FRCP 23(a) and (b) because there are questions of law and fact, and answers to those questions are common to the class members and predominate over any questions relating to individual class members, including but not limited to:

a) Whether the Doe defendants made calls to plaintiffs and the other Class Members using a prerecorded or artificial voice;

b) Whether the Doe defendants' calls to plaintiffs and the other Class Members violated the TCPA;

c) Whether Palmer and NCWC are vicariously liable for the unlawful calls made by their telemarketing agent(s) (the Doe defendants) to plaintiffs and the Class Members; and

d) Whether plaintiffs and the other Class Members are entitled to trebled statutory damages based on defendants' TCPA violations.

**50.**

Plaintiffs' claims are typical of the claims of the Class Members, because they are based on the same factual circumstances, the same statute, and the same unlawful conduct—defendants' unlawful telemarketing campaign using a prerecorded or artificial voice without consent—which was uniformly directed toward plaintiffs and the other Class Members, and plaintiffs' and the other Class Members' statutory damages will be calculated uniformly based on the number of unlawful calls they received during the class period.

**51.**

Plaintiffs will fairly and adequately represent and protect the interests of the other Class Members. Plaintiffs have no interest antagonistic to those of the other Class Members, and there are no

**CLASS ACTION COMPLAINT** – Page 27 of 31

defenses that would be unique to Plaintiffs. Plaintiffs have retained nationally known and locally respected counsel experienced in both class action litigation and TCPA litigation, to further ensure such representation and protection of the class. Plaintiffs and their counsel intend to prosecute this action vigorously and have the resources necessary to successfully try this case to judgment.

**52.**

A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Absent class-wide adjudication, members of the class are without effective recourse. Because of the relatively small monetary value of each individual Class Member's claim, few, if any, class members could afford to prosecute an individual action against defendants. Even if the Class Members could sustain individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this complaint. Plaintiffs' counsel is unaware of other litigation concerning the controversy. It is desirable to concentrate litigation of the claim in this forum for judicial economy and consistency. Moreover, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Furthermore, the common

questions of law and fact in this case can be readily answered with common proof, primarily from defendants' own records.

## CLAIM FOR RELIEF

### – Violations of 47 U.S.C. § 227(b)(1) –

### 53.

As alleged in detail in this complaint, Palmer's and NCWC's telemarketer sales agents (the Doe defendants) made telemarketing sales calls to cellular phone numbers belonging to plaintiffs and the other Class Members with Oregon area code phone numbers using a prerecorded or artificial voice without their prior express consent, in violation of 47 U.S.C. § 227(b)(1)(A)(iii).

### 54.

As alleged in detail in this complaint, Palmer and NWC are jointly and vicariously liable for the unlawful calls in violation of 47 U.S.C. § 227(b)(1)(A)(iii) made to plaintiffs and the Class Members by their telemarketer sales agents (the Doe defendants) under federal common law agency principles, including through express actual authority, implied actual authority, apparent authority, and/or ratification.

### 55.

Under 47 U.S.C. § 227(b)(3), plaintiffs and the Class Members are each entitled to a minimum of $500, and up to $1,500 if defendants'

conduct is found to be willful or knowing, for each call made by any of the defendants in violation of § 227(b)(1)(A)(iii).

**56.**

Under 47 U.S.C. § 227(b)(3), plaintiffs and the Class Members request an order enjoining any of the defendants from engaging in further similar conduct in violation of § 227(b)(1).

**57.**

Plaintiffs demand a jury trial.

## PRAYER FOR RELIEF

On behalf of themselves and the Class Members, plaintiffs seek relief as follows:

**A.** An order under FRCP 23 certifying this case as a class action, appointing plaintiffs as class representatives, and appointing plaintiffs' counsel as counsel for the class;

**B.** An order and judgment in favor of plaintiffs and the Class Members against all defendants jointly and severally for statutory damages in the maximum allowed under 47 U.S.C. § 227(b)(3), and for maximum allowable pre-judgment and post-judgment interest;

**C.** An order enjoining all defendants from engaging in future similar telemarketing practices in violation of the TCPA; and

**D.** For any other relief this Court may determine is fair and proper.

June 24, 2021

RESPECTFULLY FILED,

s/ Michael Fuller
**Michael Fuller, OSB No. 09357**
Lead Trial Attorney for Plaintiff
OlsenDaines
US Bancorp Tower
111 SW 5th Ave., Suite 3150
Portland, Oregon 97204
michael@underdoglawyer.com
Direct 503-222-2000

**CLASS ACTION COMPLAINT** – Page 31 of 31