**CHOCK BARHOUM LLP**
Jeffrey W. Hansen, OSB No. 923290
Email:  jeff.hansen@chockbarhoum.com
Jonathan S. Liou, OSB No. 104404
Email:  jon.liou@chockbarhoum.com
121 SW Morrison Street, Suite 500
Portland, OR 97204
Phone:  (503) 477-8906

**ROTH JACKSON**
Joseph P. Bowser, *admitted pro hac vice*
Email: jbowser@rothjackson.com
1519 Summit Ave., Ste. 102
Richmond, VA 23230
Phone: (804) 441-8701

**ROTH JACKSON**
Gregory M. Caffas, *admitted pro hac vice*
Email: gcaffas@rothjackson.com
8200 Greensboro Dr., Ste. 820
McLean, VA 22102
Phone: (703) 485-3533

*Attorney for Defendants Palmer Administrative
Services, Inc. and N.C.W.C., Inc.*

## UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF OREGON

#### PORTLAND DIVISION

| | |
|---|---|
| **SAPRINA ODLE** **and** **JESSICA HLAVINKA,** individually and on behalf of all others, <br><br> **Plaintiffs,** <br><br> v. <br><br> **PALMER ADMINISTRATIVE SERVICES, INC., N.C.W.C., INC., and DOES 1-10,** <br><br> **Defendants.** | Case No. 3:21-cv-00623-AC <br><br><br> **DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT** <br><br> Oral Argument Requested |

**LOCAL RULE 7-1 CERTIFICATION**

In compliance with Local Rule 7-1(a), counsel for Defendants Palmer Administrative Services, Inc. and N.C.W.C., Inc. conferred with counsel for Plaintiffs Saprina Odle and Jessica Hlavinka and are authorized to represent that Plaintiffs oppose the relief sought herein.

**MOTION TO DISMISS**

Pursuant to Local Rule 7-1(b), Federal Rules of Civil Procedure 12(b)(2), and 12(b)(6), Palmer Administrative Services, Inc. and N.C.W.C., Inc. (collectively, "Defendants"), by and through undersigned counsel, respectfully move this Court to enter an Order dismissing Plaintiffs' Amended Complaint for lack of personal jurisdiction and for failure to state a claim.

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................ 1

II.     STATEMENT OF FACTS ................................................................... 3

III.    LEGAL STANDARD ......................................................................... 7

   A.   12(b)(2) .............................................................................................. 7

   B.   12(b)(6) .............................................................................................. 8

IV.     ARGUMENT ..................................................................................... 9

   A.   The Court Lacks Personal Jurisdiction over Defendants. ................. 9

      1.  This Court Lacks General Jurisdiction over Defendants ................. 9

      2.  This Court Lacks Specific Jurisdiction over Defendants ............... 10

         a.  Palmer and NCWC have not purposefully directed any actions at this forum ....... 11

         b.  Plaintiff's claims do not arise from any forum-related activities of Palmer or NCWC ................................................................. 15

         c.  It is inherently unreasonable to assert jurisdiction over Palmer or NCWC .......... 16

   B.   The Court Should Dismiss Plaintiffs' Amended Complaint in its Entirety for Failure to State a Claim. ................................................. 17

      1.  Plaintiffs Fail to Allege Their Claims With Requisite Specificity ................................ 17

      2.  Plaintiffs Fail to Plausibly Allege Direct Liability ......................... 19

      3.  Plaintiffs Fail to Allege Vicarious Liability .................................. 20

      4.  Plaintiff Odle's Claims for Calls Outside the Statute of Limitations Should Be Dismissed ....................................................... 23

V.      CONCLUSION ................................................................................ 24

## TABLE OF AUTHORITIES

**Cases**

*Abante Rooter & Plumbing, Inc. v. Alarm.com Inc.*, 2018 U.S. Dist. LEXIS 132078 (N.D. Cal. Aug. 3, 2018) ................................................................................................................ 20

*AMA Mulitmedia, LLC v. Wanat*, 970 F.3d 1201, 1207 (9th Cir. 2020) ........................................ 7

*Aquilina v. Certain Underwriters at Lloyd's Syndicate*, 407 F. Supp. 3d 978 (D. Haw. 2019)... 18

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................................. passim

*Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519 (1983) . 9

*Bank of Am., N.A. v. Knight*, 725 F.3d 815 (7th Cir. 2013) ........................................................ 19

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................................ 2, 8, 23

*Born v. Celtic Mktg. LLC*, No. 8:19-cv-01950-JLS-ADS, 2020 U.S. Dist. LEXIS 89220 (C.D. Cal. May 20, 2020) ............................................................................................................ 11, 14

*Boschetto v. Hansing*, 539 F.3d 1011 (9th Cir. 2008) .................................................................. 7

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 137 S. Ct. 1773 (2017) ........................................ 9

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) .............................................................. 16

*Calder v. Jones*, 465 U.S. 783 (1984) ........................................................................................ 11

*Camunas v. Nat'l Republican Senatorial Comm.*, CIVIL ACTION NO. 21-1005, 2021 U.S. Dist. LEXIS 100125 (E.D. Pa. May 26, 2021) ................................................................................. 20

*Ciuffitelli v. Deloitte & Touche LLP*, No. 3:16-cv-580-AC, 2017 U.S. Dist. LEXIS 106883 (D. Or. Apr. 10, 2017) ................................................................................................................. 18

*Cochran v. Burlington Coat Factory of Or.*, 10-CV-6016-TC, 2011 U.S. Dist. LEXIS 136113 (D. Or. Sept. 27, 2011) ............................................................................................................. 8

*CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066 (9th Cir. 2011) .................................... 7

*Corcoran v. CVS Health Corp.*, 169 F. Supp. 3d 970 (N.D. Cal. 2016) ...................................... 13

*Cunningham v. Health Plan Intermediaries Holdings, LLC*, NO. 3:18-cv-00518, 2021 U.S. Dist. LEXIS 91978 (M.D. Tenn. May 14, 2021) .............................................................................. 22

*Cunningham v. Lifestyles Dev., LLC*, CIVIL ACTION NO. 4:19-CV-00006-ALM-CAN, 2019 U.S. Dist. LEXIS 154112 (E.D. Tex. Aug. 8, 2019) ................................................................ 21

*Cunningham v. Sunshine Consulting Grp., LLC*, NO. 3:16-2921, 2018 U.S. Dist. LEXIS 121709 (M.D. Tenn. July 20, 2018) .......................................................................................... 14

*Dickey v. Vital One Health Plans Direct, LLC*, No. 1:18-cv-01399-DAD-BAM, 2020 U.S. Dist. LEXIS 37576 (E.D. Cal. Mar. 3, 2020) ................................................................ 24

*Dole Food Co., Inc. v. Watts*, 303 F.3d 1104 (9th Cir. 2002) ........................................................ 16

*Ewing v. Encor Solar, LLC*, Case No.: 18-CV-2247-CAB-MDD, 2019 U.S. Dist. LEXIS 10270 (S.D. Cal. Jan. 22, 2019) ............................................................................................ 15

*Goodyear Dunlop Tires Opers., S.A. v. Brown*, 564 U.S. 915 (2011) .......................................... 9

*Horton v. Sunpath, Ltd.*, Civil Action No. 3:20-CV-1884-B-BH, 2021 U.S. Dist. LEXIS 50538 (N.D. Tex. Feb. 16, 2021) .......................................................................................... 14

*In re Dish Network, LLC*, 28 FCC Rcd. 6574 (2013) ................................................................... 19

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945) ................................................................ 9, 16

*Jones v. Royal Admin. Servs.*, 887 F.3d 443 (9th Cir. 2018) .................................................. 13, 20

*Kelly v. Ringler Assocs.*, Case No. 3:14-cv-00604-YY, 2017 U.S. Dist. LEXIS 59850 (D. Or. Feb. 21, 2017) .............................................................................................................. 10, 16

*Learjet, Inc. v. Oneok, Inc.*, 715 F.3d 716 (9th Cir. 2013) ........................................................ 15

*Naiman v. TranzVia LLC*, Case No. 17-cv-4813-PJH, 2017 U.S. Dist. LEXIS 199131 (N.D. Cal. Dec. 4, 2017) ....................................................................................................... 14, 21, 23

*Newhart v. Quicken Loans Inc.*, No. 9:15-CV-81250, 2016 U.S. Dist. LEXIS 168721 (S.D. Fla. Oct. 12, 2016) .......................................................................................................... 17

*Nicosia v. De Rooy*, 72 F. Supp. 2d 1093 (N.D. Cal. 1999) ........................................................ 7

*Ott v. Mortg. Inv'rs Corp. of Ohio*, 65 F. Supp. 3d 1046 (D. Or. 2014) ....................................... 11

*Pinnacle Fitness & Rec. Mgmt. LLC v. Jerry & Vickie Family Tr.*, CASE NO. 08-CV-1368 H (BGS), 2010 U.S. Dist. LEXIS 131592 (S.D. Cal. Dec. 13, 2010) ........................................... 7

*Rosenberg v. LoanDepot.com LLC*, 435 F. Supp. 3d 308 (D. Mass. 2020) .................................. 23

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797 (9th Cir. 2004) .............................. 7, 16

*Shanahan v. Nat'l Auto Protection Corp.*, Case No. 1:19-cv-03788, 2020 U.S. Dist. LEXIS 101031 (N.D. Ill. June 9, 2020) ......................................................................................... 14, 23

*Snowden v. Cazares*, No. CV12-3443 DSF(JC), 2016 U.S. Dist. LEXIS 186727 (C.D. Cal. Sept. 8, 2016) ...................................................................................................................... 18, 20

*Stark v. Stall*, No. 19-cv-00366-AJB-AHG, 2021 U.S. Dist. LEXIS 94503 (S.D. Cal. May 18, 2021) ............................................................................................................................. 22

*Sundermann v. Golden Circle Real Estate Group*, Case No. 4:19-cv-00140, 2019 U.S. Dist. LEXIS 226057 (S.D. Iowa Oct. 29, 2019) .............................................................................. 22

*Valdes v. Nationwide Real Estate Execs.*, SA CV 20-01734-DOC-(JDEx), 2021 U.S. Dist. LEXIS 100931 (C.D. Cal. Apr. 22, 2021) ...................................................................... 21, 22

*Warciak v. Subway Rests., Inc.*, No. 1:16-cv-08694, 2019 U.S. Dist. LEXIS 32357 (N.D. Ill. Feb. 28, 2019) .................................................................................................................. 22

*Williams v. Yamaha Motor Co.*, 851 F.3d 1015 (9th Cir. 2017) ........................................ 9, 13, 21

*Winters v. Grand Caribbean Cruises Inc.*, No. CV-20-00168-PHX-DWL, 2021 U.S. Dist. LEXIS 26779 (D. Ariz. Feb. 11, 2021) ....................................................................... 12, 13

*Zola H. v. Snyder*, Case No. 12-14073, 2013 U.S. Dist. LEXIS 125199 (D. Mich. Sept. 3, 2013) ..................................................................................................................................... 20

## SUPPORTING MEMORANDUM

## I.    INTRODUCTION

Plaintiff Saprina Odle filed the initial Complaint in this matter on April 25, 2021, which Defendants responded to by filing a Motion to Dismiss.  Rather than filing an opposition, Plaintiffs filed an Amended Complaint adding Plaintiff Jessica Hlavinka as a party to this matter. Ms. Hlavinka's duplicative allegations add quantity to the case, but no quality—the Amended Complaint suffers from the same defects as the initial Complaint.[1]  First, this Court lacks personal jurisdiction over Palmer and NCWC.  Plaintiffs fail to allege a plausible basis for this Court to assert personal jurisdiction over Palmer and NCWC—because no plausible basis exists. Plaintiffs assert only generalized and unsupported conclusions that some John Doe Defendant(s), allegedly acting on behalf of Palmer or NCWC, made unsolicited calls to their cell phones. Plaintiffs do not present any factual support for their unfounded theory of liability—Plaintiffs' threadbare recitals of the elements of a principal-agency relationship in TCPA cases are exactly the type of insufficient, conclusory allegations that warrant dismissal.

This is especially true in light of the sworn Declaration submitted by Palmer and NCWC's former President, Michael Shaftel ("Mr. Shaftel"), attached hereto as **Exhibit 1**, which shows why Plaintiffs cannot plead plausible allegations establishing this Court's personal jurisdiction over them, and rebuts Plaintiffs' insufficient, seemingly contrived jurisdictional allegations.  Palmer and NCWC have no ties to Oregon that could support this Court's exercise

---

[1]    Defendants posit that this Court lacks subject matter jurisdiction over Plaintiff Saprina Odle's claims under 47 U.S.C. § 227(b)(1)(A)(iii), as explained in their initial Motion to Dismiss.  Motion to Dismiss, ECF No. 11, at 16-25.  Defendants do not restate that jurisdictional challenge here, as the 12(b)(1) portion of the Motion is not entirely dispositive and does not apply to Plaintiff Jessica Hlavinka's claims given the timing of those alleged calls.  Defendants do not waive this (non-waivable) challenge; should the Court decline to dismiss this matter in its entirety pursuant to Rules 12(b)(2) or 12(b)(6), Defendants will renew the subject-matter-jurisdiction issues at the appropriate time via a motion under Rule 12(h)(3).

of general jurisdiction over them.  Palmer is a Delaware corporation based in New Jersey, and NCWC is a New Jersey corporation that also maintains its principal office in New Jersey. General jurisdiction is neither plausibly alleged nor present.  Likewise, Palmer and NCWC do not initiate *any* outbound marketing calls to consumers, including any calls that form the basis of Plaintiffs' claims, such that no plausible claim of specific jurisdiction based on direct liability is or *could* be plead.  Further, neither Palmer nor NCWC directed or controlled any third-party who may have made any of the phone calls at issue.  As such, specific jurisdiction based on a plausible claim of vicarious liability is also wanting here.

And even if this Court could exercise personal jurisdiction over Defendants, the Court should still dismiss the Amended Complaint for its failure to plausibly state any claims against Palmer or NCWC.  Plaintiffs make no allegations that provide any credible factual support for their claims that either Palmer or NCWC actually made any calls, or that any recording they heard or live agent they spoke with during the calls disclosed his or her authority to act on behalf of Palmer or NCWC.

Palmer and NCWC operate in a highly competitive industry with many, many actors (not all of whom honestly report their affiliations with third parties); Plaintiffs seem to have sued these two companies simply because they are associated with the types of products they *may* have heard about on some of these recordings or discussed with a Doe Defendant.  But simply being in the industry is clearly not a sufficient nexus to cross the Supreme Court's pleading standard under *Iqbal* and *Twombly*—that is, to take the allegations from possible to plausible. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  There is no plausible claim for direct or vicarious liability against Palmer or NCWC. The allegations to support Plaintiffs' claim of vicarious liability are merely unsubstantiated legal

conclusions (which, for the Court's jurisdictional analysis, are controverted by the sworn declaration submitted by Mr. Shaftel). These companies do not engage in any telemarketing, do not authorize any other parties to make marketing calls on their behalf, and do not exercise any degree of control or direction over how the independent third-party contractors market and sell the products Palmer administers. Plaintiffs seem to assume—contrary to well-settled law—that any time there is a contract there must be a principal-agency relationship. But common, everyday experience teaches us that a grocery store, for example, is not the legal agent of the thousands of food suppliers' goods it sells simply because it sells their products. Thus, Plaintiffs' claims against Palmer and NCWC fall well short of the Supreme Court's pleading standard in *Twombly* and *Iqbal*. Plaintiffs' Amended Complaint should, therefore, be dismissed in its entirety.

## II.    STATEMENT OF FACTS

1.      On April 25, 2021, Plaintiff Saprina Odle filed her initial Complaint, ECF No. 1, seeking damages and injunctive relief based on her claims that Defendants violated the TCPA when Palmer, NCWC, or some John Doe Defendants allegedly working on their behalf, made some unspecified number of calls to her cellular phone using what she claims was an automatic telephone dialing system to deliver prerecorded messages. Compl. ¶¶ 25, 32-33, 40-42.

2.      After Defendants moved to dismiss Plaintiff Odle's initial Complaint, Plaintiffs filed their Amended Complaint, ECF No. 16, on June 24, 2021, adding Plaintiff Jessica Hlavinka as a party. Plaintiff Odle's allegations remain unchanged from the initial Complaint, and Plaintiff Hlavinka makes nearly identical allegations to Plaintiff Odle's regarding an unspecific number of calls to her cellular phone made by John Doe Defendant(s), allegedly at the behest of Palmer or NCWC. Am. Compl. ¶¶ 29-38.

3.       Apart from a reference to "more than 150" calls from "various phone numbers [Plaintiff Odle] did not recognize," it is unclear on what dates the calls at issue in this case occurred, or whether these calls continue to occur, as Plaintiff Odle only states that she has received calls "[s]ince February 28, 2017."  Am. Compl. ¶¶ 2, 29.  Likewise, it is unclear on what dates Plaintiff Hlavinka received calls or whether calls continue to occur, as she similarly alleges only that she received "more than 100" calls from "various phone numbers she did not recognize" since December 28, 2020.  Am. Compl. ¶¶ 3, 35.

4.       It is unclear why Plaintiffs attribute all of the unspecified number of calls to Palmer or NCWC.  Am. Compl. ¶¶ 2-3, 29, 35.  Despite the large number of calls Plaintiffs allege they received "soliciting extended auto warranties" generally, they mention no instance in which a prerecorded message they responded to mentioned either Palmer or NCWC by name.  Am. Compl. ¶¶ 31, 36.

5.       Indeed, Plaintiff Odle makes only the vague statement that "[o]n at least one occasion Ms. Odle requested information about the extended auto-warranties and the company behind the calls and the agent stated that the call was in regard to extended auto-warranties offered by Palmer and NCWC."  Am. Compl. ¶ 31.

6.       Plaintiff Hlavinka's allegations purporting to link calls to Palmer or NCWC are similarly specious.  On one call on an unspecified date, Plaintiff Hlavinka claims that after listening to a prerecorded message that made no mention of Palmer or NCWC, she spoke to two different live agents.  Am. Compl. ¶ 37.  Plaintiff Hlavinka states that she "specifically asked" both of these live agents "whether they were attempting to sell her an extended auto-warranty plan offered by and through Palmer—to which both of these agents replied in the affirmative."  *Id.*  Plaintiff Hlavnika provides no basis for how she had the wherewithal to specifically ask

about an affiliation with Palmer or how this conversation following a single call also associates Palmer with "more than 100" calls from various different phone numbers playing messages that by her own admission make no mention of Palmer.

7.     Plaintiffs provide no evidence that either Palmer or NCWC directly made any specific call to either of them.

8.     This is unsurprising, because as the declaration of Mr. Shaftel confirms, neither of these entities make any outgoing marketing calls to *any* consumers.   And more specifically, neither entity has made any calls to either Plaintiff, and never had any business relationship with anyone with their names.  Shaftel Decl. ¶¶ 10-11, 21-24.

9.     Likewise, Plaintiffs provide no factual support for their allegations that any of the Doe Defendants may have initiated any of the unspecified number of calls as an agent of either Palmer or NCWC (because they cannot). Instead, Plaintiffs just recite a list of factors describing common elements of a generic principal-agent relationship. Am. Compl. ¶¶ 18-21, 40-46.

10.     Plaintiffs cannot provide any evidence of a principal-agent relationship to support these conclusory recitals because **no such relationship exists**.   Palmer and NCWC did not control or authorize any party to make any of the alleged calls to either Plaintiff (or any other consumer).  Shaftel Decl. ¶¶ 13-22.  In fact, Palmer and NCWC do not direct or control any of the actions of any party that sells or markets the products Palmer administers.  *Id.*  All such entities are independent third-parties that, while agreeing to a broad-form compliance-with-laws clause, otherwise have absolute discretion and autonomy in how they conduct their marketing operations.  *Id.*

11.     And after being served with the initial Complaint and Amended Complaint in this matter, Palmer and NCWC were able to inquire as to whether any of the independent third-

parties presently authorized to sell Palmer-administered products made any calls to either Plaintiff. *Id.* ¶¶ 23-24. Based on the information presently available, none of these companies have been able to find record of making any calls to either Plaintiff. *Id.*

12.    Similarly, the scenario Plaintiff Hlavinka describes in paragraph 37 of the Amended Complaint, in which two live agents responded affirmatively when Ms. Hlavinka asked "whether they were attempting to sell her an extended auto-warranty plan offered by and through Palmer" is implausible. Again, no entity authorized to market Palmer-administered products has record of making any calls to what Defendants understand to be Ms. Hlavinka's phone number, and she claims that this call was relatively recent (i.e., some time after December 28, 2020). Am. Compl. ¶ 35; Shaftel Decl. ¶ 24. And as discussed at length above, no entity marketing Palmer-administered products is granted actual or apparent authority to act as Palmer or NCWC's agent to make such a representation. Shaftel Decl. ¶¶ 18-22.

13.    Palmer and NCWC have no connection to this forum. Palmer is a Delaware corporation engaged in selling and administering extended vehicle warranty plans, with its principal offices in New Jersey. *Id.* ¶¶ 4, 6.

14.    NCWC is a New Jersey corporation and affiliate of Palmer that contracts with the various independent third-party companies that are permitted to market and sell policies administered by Palmer, with its principal offices in New Jersey. *Id.* ¶¶ 5, 7.

15.    Defendants do not own or lease property, maintain assets in, or conduct business operations of any kind from Oregon. *Id.* ¶¶ 8-9.

## III.    LEGAL STANDARD

### A.    Rule 12(b)(2)

"In opposition to a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper." *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008) (citing *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)). When a motion is based on written materials rather than an evidentiary hearing, a plaintiff must "make a *prima facie* showing of jurisdictional facts." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (quoting *Sher*, 911 F.2d at 1361).    Uncontroverted allegations in the Amended Complaint must be taken as true, but plaintiffs "cannot simply rest on the bare allegations in the complaint." *AMA Mulitmedia, LLC v. Wanat*, 970 F.3d 1201, 1207 (9th Cir. 2020) (quoting *In re Boon Glob. Ltd.*, 923 F.3d 643, 650 (9th Cir. 2019); *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011).    "[D]isputed allegations in the complaint that are not supported with evidence or affidavits cannot establish jurisdiction[.]" *AMA Multimedia*, 970 F.3d at 1207 (citing *In re Boon Glob. Ltd.*, 923 F.3d at 650).

Importantly, "the allegations must not be conclusory, but must allege specific acts connecting the defendant with the forum." *Pinnacle Fitness & Rec. Mgmt. LLC v. Jerry & Vickie Family Tr.*, CASE NO. 08-CV-1368 H (BGS), 2010 U.S. Dist. LEXIS 131592, at *6 (S.D. Cal. Dec. 13, 2010) (citing *Greenspun v. Del E. Webb Corp.*, 634 F.2d 1204, 1208 n.5 (9th Cir. 1980)); *Nicosia v. De Rooy*, 72 F. Supp. 2d 1093, 1097 (N.D. Cal. 1999) (citing *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995)) ("The Court need not . . . assume the truth of conclusory allegations.").    "Once the defendant has contradicted allegations contained in the complaint, plaintiff may not rest on the pleadings, and must present admissible evidence to

support the court's exercise of personal jurisdiction." *Nicosia*, 72 F. Supp. 2d at 1097 (citing *Data Disc. Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1997)); *Cochran v. Burlington Coat Factory of Or.*,  10-CV-6016-TC, 2011 U.S. Dist. LEXIS 136113, at *3 (D. Or. Sept. 27, 2011) (same).   "The plaintiff must produce admissible evidence which, if believed, would be sufficient to establish the existence of personal jurisdiction." *Nicosia*, 72 F. Supp. 2d at 1097 (citing *WNS, Inc. v. Farrow*, 884 F.2d 200, 203-204 (5th Cir. 1989)).

### B.    Rule 12(b)(6)

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009).  "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" in meeting the standard required by Rule 8.  *Id.*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim of relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." *Twombly*, 550 U.S. at 555 (citations omitted).

"Factual allegations must be enough to raise a right to relief above the speculative level . . . . ." *Twombly*, 550 U.S. at 555 (citation omitted). Courts may not assume that "the [plaintiff] can prove facts that [he or she] has not alleged or that the defendants have violated the . . . law[]

in ways that have not been alleged." *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, [the complaint] 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

## IV.    ARGUMENT

### A.    The Court Lacks Personal Jurisdiction Over Defendants.

This Court lacks personal jurisdiction over Palmer and NCWC in this matter.  Plaintiffs must show that the Court has general or specific jurisdiction when personal jurisdiction is challenged. *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 137 S. Ct. 1773, 1780 (2017); *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) ("[I]n order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.") (citations and quotations omitted).  As shown below, Plaintiffs have failed to plausibly allege either type of personal jurisdiction applies to either of the Defendants, and the sworn declaration of Mr. Shaftel submitted in support of this motion further rebuts Plaintiffs' conclusory allegations regarding personal jurisdiction.

### 1.    This Court Lacks General Jurisdiction Over Defendants.

General jurisdiction does not exist here.  A court has general jurisdiction over a defendant-corporation when it has constant and pervasive, continuous and systematic affiliations with the forum state. *Goodyear Dunlop Tires Opers., S.A. v. Brown*, 564 U.S. 915, 919 (2011); *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1021 (9th Cir. 2017) ("[T]he test for general jurisdiction asks whether a corporation is essentially 'at home' in the forum state.") (quoting

Page 9 - DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

*Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014)).  Palmer is a Delaware corporation engaged in selling and administering extended vehicle warranty plans, with its principal offices in New Jersey.  *See* Shaftel Decl. ¶¶ 4, 6.  NCWC is a New Jersey corporation, with its principal offices in New Jersey, that contracts with various independent third-party companies to license the right to market and sell policies administered by Palmer.  *Id.* ¶¶ 5, 7.  Defendants do not own or lease property in, maintain any assets in, or conduct business operations of any kind from Oregon.  *Id.* ¶¶ 8-9.  General jurisdiction clearly does not apply to Defendants in this matter, and Plaintiffs do not plausibly allege otherwise.

### 2. This Court Lacks Specific Jurisdiction Over Defendants.

Plaintiffs also fail to plausibly show that specific jurisdiction exists as to either Palmer or NCWC.  Courts in the Ninth Circuit analyze specific jurisdiction under a three-prong test:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; . . . (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Kelly v. Ringler Assocs.*, Case No. 3:14-cv-00604-YY, 2017 U.S. Dist. LEXIS 59850, at *24-25 (D. Or. Feb. 21, 2017) (citing *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1227-28 (9th Cir. 2011)).  Plaintiffs bear the burden of satisfying the first two prongs, and when they fail to do so, no examination under the third prong is necessary because it would be inherently unreasonable to exercise jurisdiction over Defendants.  *See id.*

In short, the "specific" in "specific jurisdiction" is *specific to the Plaintiffs' claims*.  This is a TCPA case, so the only relevant inquiry is whether a defendant's *claim-related activities* targeted the forum, or in other words, whether each Defendant initiated any telephone call to Plaintiffs or controlled someone who did.  Plaintiffs do not meet their burden under any of these

prongs because they make no plausible assertions that Palmer or NCWC played any such part in making, or causing any John Doe Defendant to make, any of the subject calls.  And the unsupported, conclusory allegations that they do make are rebutted by the sworn testimony provided by Palmer and NCWC's former President.

          a.      **Palmer and NCWC have not purposefully directed any actions at this forum.**

For the first prong of the specific jurisdiction test in TCPA cases, courts apply a purposeful-direction analysis.  *See Born v. Celtic Mktg. LLC*, No. 8:19-cv-01950-JLS-ADS, 2020 U.S. Dist. LEXIS 89220, at *10 (C.D. Cal. May 20, 2020) ("[A] purposeful direction analysis is used in suits sounding in tort.  Claims for violation of the TCPA sound squarely in tort and require application of the purposeful direction analysis.") (citations omitted).  To do so, the Ninth Circuit employs the "effects" test utilized by the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783 (1984), which examines whether the defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state."  *Born*, 2020 U.S. Dist. LEXIS at *9; *Ott v. Mortg. Inv'rs Corp. of Ohio*, 65 F. Supp. 3d 1046, 1057 (D. Or. 2014) (citing *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F3d 1218, 1228 (9th Cir 2011)).  Notably, "it is the defendant, not the plaintiff *or third parties*, who must create contacts with the forum State."  *Born*, 2020 U.S. Dist. LEXIS at *10 (citing *Walden v. Fiore*, 571 U.S. 277, 291 (2014)).

Plaintiffs fail to plausibly allege personal jurisdiction applies to Palmer or NCWC, because they concede that Palmer and NCWC did not themselves make any of the calls at issue. They instead rely on a factually unsupported theory that Palmer and/or NCWC are somehow vicariously liable for the alleged actions of the Doe Defendants.  Plaintiffs' jurisdictional allegations are summarized in the following broad, generalized statement:

> This Court can exercise specific personal jurisdiction over both Palmer and
> NCWC because, as set forth in more detail in this complaint regarding Palmer's
> and NCWC's agency relationship with and vicarious liability for the Doe
> defendants, Palmer, directly or through NCWC, purposefully directed their
> solicitation activities to Oregon by intentionally giving its contracted
> telemarketing agents (the Doe defendants) implied actual [sic] or apparent
> authority to make calls to residents in all 50 states, including those in Oregon . . . .
> But for Palmer and NCWC's grant of authority and ratification of its
> telemarketing agents' unlawful calling practices in violation of the TCPA as set
> forth in this complaint, plaintiffs . . . would not have suffered injury[.]

Am. Compl. ¶ 18.  But *nowhere* in the Amended Complaint do Plaintiffs actually make any

factually supported allegations that show Palmer and NCWC are vicariously liable for the calls

the John Doe Defendants allegedly made.

Instead, Plaintiffs spew a scatter-shot description of the elements of a principal-agent

relationship in a TCPA case based on nothing other than what they seem to imagine Palmer and

NCWC's operations to be.  Am. Compl. ¶¶ 40-46.  In other words, by their own admission, they

are alleging *possible* facts, not a *plausible* right to relief.  As another court in the Ninth Circuit

recently found when granting a motion to dismiss similar TCPA claims for lack of jurisdiction,

"[t]his imprecision makes it difficult to discern who, exactly, is the alleged culprit."  *Winters v.

Grand Caribbean Cruises Inc.*, No. CV-20-00168-PHX-DWL, 2021 U.S. Dist. LEXIS 26779, at

*11 (D. Ariz. Feb. 11, 2021).

Mr. Shaftel's declaration clarifies why Plaintiffs' vague and conclusory allegations fail

all three prongs of the Calder effect test, and why no agency relationship exists between Palmer

or NCWC and any Doe Defendant.  The first prong's analysis is simple: Palmer and NCWC did

not commit any intentional act—they simply do not make outgoing marketing calls to

consumers.  Shaftel Decl. ¶¶ 10-11.  When comparing this clear statement with Plaintiffs'

conflicting, alternative allegations as to what party was responsible for the calls at issue, the

Court must accept that Palmer and NCWC did not make any of the challenged calls to either

Plaintiff.  *See Winters*, 2021 U.S. Dist. LEXIS 26779, at *11-12 (finding plaintiff had not met burden of showing purposeful direction when they could not controvert TCPA defendant's declaration evidence that defendant was not responsible for the subject calls).

Likewise, Palmer and NCWC do not direct or control any independent third-party that does sell Palmer's products, including how those parties obtain leads to determine which potential customers are contacted (or where those consumers are located).  Shaftel Decl. ¶¶ 13-22.  In this vein, Plaintiffs cannot rely on an agency theory to allege jurisdiction exists over either Palmer or NCWC via the alleged actions of John Doe Defendants, because they provide no specific facts that address the key element of such a relationship—the principal's right of control. *See Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1024-25 (9th Cir. 2017) (even assuming the relevance of agency to a specific jurisdiction analysis, "under any standard for finding an agency relationship, the [principal] must have the right to substantially control its [agent's] activities.").[2] Plaintiffs merely recite the elements of what this relationship entails in the context of a TCPA case without providing any factual support for those conclusions.  Am. Compl. ¶¶ 40-46; *see*, *e.g.*, Am. Compl. ¶ 42 ("Palmer, directly or through NCWC, had the right to control or direct many aspects of the Doe defendants' telemarketing campaigns[.]").  Yet in contrast to Plaintiffs' fanciful and conclusory theories, Mr. Shaftel's declaration explains reality: neither Palmer nor

---

[2]    Conclusory and unsubstantiated allegations like those in the Amended Complaint fail to establish (1) that the agent "functions as [the principal's] representative in that it performs services that are sufficiently important to the foreign corporation that if it did not have a representative to perform them, [the principal's] own officials would undertake to perform substantially similar services," and (2) "[the principal] exercises a measure of control over [the agent's] activities" in order to find an agency relationship existed.  *See Corcoran v. CVS Health Corp.*, 169 F. Supp. 3d 970, 983 (N.D. Cal. 2016) (setting forth the Ninth Circuit's criteria for finding jurisdiction exists on an agency relationship) (quoting *United States v. Pangang Group Co., Ltd.*, 879 F. Supp. 2d 1052, 1058 (N.D. Cal. 2015)); *see also Jones v. Royal Admin. Servs.*, 887 F.3d 443, 450 (9th Cir. 2018) ("In determining whether vicarious liability may be imposed, the 'extent of control exercised by the [principal]' is the 'essential ingredient.'") (quoting *United States v. Bonds*, 608 F.3d 495, 505 (9th Cir. 2010)).

NCWC assert the required degree of control over any party that is authorized to market Palmer products.  Shaftel Decl. ¶¶ 13-22.[3]  Plaintiffs do not carry their burden to *plausibly* show that either Palmer or NCWC expressly aimed any action at the forum state.

And finally, there are no allegations that show either Palmer or NCWC had knowledge of any harm caused.  Indeed, Plaintiffs make no allegation that she at any point communicated at all with Palmer or NCWC, and Mr. Shaftel's declaration makes clear that neither of these Defendants ever called either Plaintiff or have ever authorized any party to make unlawful calls to any party, including Plaintiffs.[4]  Shaftel Decl. ¶¶ 10-11, 15, 20-22.

---

[3]      Courts in the Ninth Circuit and around the country have dismissed TCPA claims with far more evidence supporting allegations of personal jurisdiction via actions of a purported agent. *See*, *e.g*., *Horton v. Sunpath, Ltd.*, Civil Action No. 3:20-CV-1884-B-BH, 2021 U.S. Dist. LEXIS 50538, at *12 (N.D. Tex. Feb. 16, 2021) (granting TCPA defendant's motion to dismiss because "[plaintiff's] conclusory allegation that Defendant acted in an agency relationship with telemarketing companies to contact him in Texas to sell warranties does not suffice to impute [purported principal's] actions to Defendant under an agency theory."); *Shanahan v. Nat'l Auto Protection Corp.*, Case No. 1:19-cv-03788, 2020 U.S. Dist. LEXIS 101031, at *7 (N.D. Ill. June 9, 2020) (dismissing TCPA case against vehicle service contract administrator for lack of jurisdiction because contract with calling party did not create agency relationship); *Born v. Celtic Mktg. LLC*, 8:19-cv-01950-JLS-ADS, 2020 U.S. Dist. LEXIS 89220, at *13 (C.D. Cal. May 20, 2020) (in a factually similar case against one of Palmer's competitors in the vehicle-service-contract industry, dismissing TCPA plaintiff's claims for lack of personal jurisdiction based on agency because allegations did not address "the key element lacking here, namely, the principal's right of control." (citing *Williams*,  851 F.3d at 1024-25)); *Cunningham v. Sunshine Consulting Grp., LLC*, NO. 3:16-2921, 2018 U.S. Dist. LEXIS 121709, at *10 (M.D. Tenn. July 20, 2018) (dismissing TCPA claim for lack of personal jurisdiction for plaintiff's claim that he was called by a defendant's alleged agent based solely on "the fact that a single charge on Plaintiff's credit card account was attempted by another party through [defendant's] merchant account."); *Naiman v. TranzVia LLC*, Case No. 17-cv-4813-PJH, 2017 U.S. Dist. LEXIS 199131, at *38-39 (N.D. Cal. Dec. 4, 2017) ("[H]aving failed to adequately plead liability based on agency, plaintiff cannot show that the court has personal jurisdiction over [defendant] on that basis."). Defendants provide further analysis of Plaintiffs' failure to allege liability through a principal-agent relationship in Section IV.B(3), *infra*.

[4]      And there appears to be no wrongful conduct Defendants could have knowledge of— after being served with the Amended Complaint, Palmer and NCWC were able to inquire as to whether any of the independent third-parties presently authorized to sell Palmer-administered products made any calls to either Plaintiff.  Shaftel Decl. ¶¶ 23-24.  Based on the information

**b.    Plaintiffs' claims do not arise from any forum-related activities of Palmer or NCWC.**

Plaintiffs fail to carry their burden under the purposeful-direction prong of this test, and courts in the Ninth Circuit have found that when plaintiffs fail to establish purposeful direction, the Court need not address whether the suit resulted from the defendant's forum-related activities or whether exercising jurisdiction would be reasonable. *Ewing v. Encor Solar, LLC*, Case No.: 18-CV-2247-CAB-MDD, 2019 U.S. Dist. LEXIS 10270, at *11 (S.D. Cal. Jan. 22, 2019) (citing *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006)). But even assuming, *arguendo*, that the Court should examine this factor, Plaintiffs still fail to carry their burden under this prong.

The Ninth Circuit has described the second prong of the purposeful-direction test as a "but for" test that is satisfied if a direct nexus exists between a defendant's contacts with the forum state and the cause of action. *See Learjet, Inc. v. Oneok, Inc.*, 715 F.3d 716, 742 (9th Cir. 2013). While Palmer does maintain a registered agent in Oregon, Palmer's only function is as an administrator of extended vehicle service contracts; it does not make marketing calls to consumers. Shaftel Decl. ¶¶ 6, 9-11. And NCWC simply manages distribution rights to market and sell Palmer-administered products; it has no Oregon-based operations and makes no calls to consumers. *Id.* ¶¶ 10, 16. No direct nexus exists between Palmer or NCWC and this forum in connection with an uncertain number of calls that Plaintiffs allege they received from some unnamed combination of parties that were not acting under the direction or control of Palmer or NCWC. Accordingly, if the Court even examines this factor, the Plaintiffs fail to carry their burden under it.

---

presently available, none of these companies have been able to find record of making any calls to either Plaintiff. *Id.*

c.    **It is inherently unreasonable to assert jurisdiction over Palmer or NCWC.**

The third and final prong of the specific-jurisdiction analysis looks at "whether the exercise of jurisdiction . . . comport[s] with fair play and substantial justice, i.e., it must be reasonable." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-77 (1985) ("Once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945))).    The Ninth Circuit considers the following factors relevant to the reasonableness inquiry:

> (1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1114 (9th Cir. 2002).[5]

There is an obviously high burden for Palmer and NCWC, companies based in New Jersey, to appear in Oregon to defend this matter.    But, more importantly, under all of the remaining factors, it is inherently unreasonable that Palmer and NCWC be subjected to this jurisdiction when Plaintiffs have made no plausible allegations that they have any connection to this jurisdiction or the calls that form the basis of her claims.    Plaintiffs' TCPA claims, all resting

---

[5]    As noted above, when a plaintiff fails to carry its burden under the first two prongs, as Plaintiffs do here, personal jurisdiction is lacking and the Court need not examine this prong. *Kelly v. Ringler Assocs.*, Case No.: 3:14-cv-00604-YY, 2017 U.S. Dist. LEXIS 59850, at *24 (D. Or. Feb. 21, 2017) (citing *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1227-28 (9th Cir. 2011) ("Plaintiffs bear the burden of satisfying the first two prongs.  If Plaintiffs are unable to establish both prongs, personal jurisdiction is lacking.")).

on the unsupported and incorrect conclusory allegations that Palmer and NCWC were responsible for the calls at issue, must therefore be dismissed.

**B.      The Court Should Dismiss Plaintiffs' Amended Complaint in its Entirety for Failure to State a Claim.**

**1.      Plaintiffs Fail to Allege Their Claims With Requisite Specificity.**

TCPA liability demands an examination of each individual call; allegations cannot be applied to an overall campaign. *See Newhart v. Quicken Loans Inc.*, No. 9:15-CV-81250, 2016 U.S. Dist. LEXIS 168721, at *7 (S.D. Fla. Oct. 12, 2016) (concluding, based on Commission and judicial precedent, that the proper analysis under section 227 requires an "examination of individual calls, not the 'overall campaign.'") (quotations omitted). Plaintiffs do not plausibly allege any single call was made by or on behalf of Palmer or NCWC with specificity required to state a *plausible* claim for violations of the TCPA.

Plaintiffs make the sweeping allegation that Palmer is somehow responsible for "more than 150" to Plaintiff Odle and "more than 100" calls to Plaintiff Hlavinka. Am. Compl. ¶¶ 2-3, 29, 35. But they do not describe how they come to the conclusion that every one of the unspecified number of calls they claim to have received was tied to Defendants, when each Plaintiff can only describe "at least one occasion" when some unidentified person supposedly disclosed some unspecific association with Palmer or NCWC. *See id.* ¶ 31 (Plaintiff Odle alleging "on one occasion" an unidentified live agent "stated that the call was in regard to extended auto-warranties offered by Palmer or NCWC."); *id.* ¶ 37 (Plaintiff Hlavinka alleging that on one call, two live agents answered affirmatively her inquiry that "they were attempting to sell her an extended auto-warranty plan offered by and through Palmer[.]"). It is also unclear when the single occasion of hearsay each Plaintiff relies on may have occurred, or who exactly these purported agents were working for. Regardless, it is simply not plausible for Plaintiffs to

allege that Palmer or NCWC are responsible for every call they receive related to vehicle service contracts—a highly competitive industry with many companies offering similar products, and various ne'er-do-well actors often misrepresenting products on false pretenses—based on a single call received on an uncertain date from an unnamed party that did not disclose that either Palmer or NCWC had any control over its actions.  By Plaintiffs' absurd logic, it is plausible to assert a tort claim against UPS for every single accident involving a brown vehicle.  Plaintiffs' generalized claims must be dismissed.

Plaintiffs also fail to state any plausible claim against Palmer, NCWC or any of the mystery John Doe Defendants because they resort to impermissible "lump" pleadings that cannot show with any specificity what any single defendant is alleged to have done.  Courts in the Ninth Circuit have established that lump pleadings making allegations attributing actions to defendants generally, rather than specific allegations as to individual defendants, will not survive a Rule 12 motion to dismiss.  *Aquilina v. Certain Underwriters at Lloyd's Syndicate*, 407 F. Supp. 3d 978, 997 (D. Haw. 2019) (citing *Destfino v. Reiswig*, 630 F.3d 952, 958-59 (9th Cir. 2011)) (approving district court's dismissals based on plaintiffs' "everyone did everything" allegations); *Ciuffitelli v. Deloitte & Touche LLP*, No. 3:16-cv-580-AC, 2017 U.S. Dist. LEXIS 106883, at *44-45 (D. Or. Apr. 10, 2017) (ruling that plaintiffs failed to satisfy Rule 8 pleading requirements by attributing unlawful conduct to defendants generally); *Snowden v. Cazares*, No. CV12-3443 DSF(JC), 2016 U.S. Dist. LEXIS 186727, at *18 (C.D. Cal. Sept. 8, 2016) ("[T]he Second Amended Complaint never clearly connects any particular event or incident to any specific legal claim against any particular defendant as required.").

Simply put, Plaintiffs' "lump" allegations do not state any plausible claims for relief against Palmer or NCWC because Plaintiffs do not plausibly allege what any particular

defendant did or when any purported act occurred. *See Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013) ("Liability is personal. An allegation that someone looted a corporation does not propound a plausible contention that a particular person did anything wrong."). For example, Plaintiff tends to group Palmer, NCWC, and the Doe Defendants together as some undefined amalgamation, *see*, *e.g.*, Am. Compl. ¶ 6, ("After years of failed effort to stop the incessant illegal calls from defendants"), attribute all actions to all Defendants, *see*, *e.g.*, *id.* ¶ 28, ("Palmer, NCWC, and their telemarketing agents have altered their unlawful telemarketing campaigns[.]"), or describe acts without attributing them to any particular Defendant. *See*, *e.g.*, *id.* ¶¶ 29, 35. While Plaintiffs may attempt to describe a scenario in which Palmer, NCWC, and ten Doe Defendants are huddled around a telephone, with Palmer or NCWC whispering instructions on how to collectively make illegal calls to consumers, this scenario is simply not plausible. Plaintiffs' Amended Complaint should be dismissed as a whole because it does not alert any individual defendant as to what unlawful act they committed.

### 2.    Plaintiffs Fail to Plausibly Allege Direct Liability.

To the extent that it is possible to parse out allegations to any specific defendant, Plaintiffs still fail to state a claim for direct liability as to either Palmer or NCWC. The potential for direct liability under the TCPA can apply only under certain circumstances, and only to entities that "initiate" the telemarketing calls. *See In re Dish Network, LLC*, 28 FCC Rcd. 6574, 6582 ¶ 24 (2013). A person or entity "initiates" a telephone call when it "takes the steps necessary to physically place a telephone call." *Id.* at 6583 ¶ 26. Plaintiffs simply provide *no* evidence to show that Palmer or NCWC actually initiated any of the calls at issue. Indeed, Plaintiffs concede that Palmer and NCWC are not directly liable for any of the calls at issue, and rest entirely on their theory of vicarious liability. *See*, *e.g.*, Am. Compl. ¶ 40 (Palmer and

NCWC are jointly and vicariously liable for the unlawful calls . . . .").

And to the extent Plaintiffs may argue that they do allege direct liability, they do not make any actual showing that any of the prerecorded messages they claim to have received made any reference to Palmer or NCWC, or that any live agent they spoke to ever disclosed that live agent's actual affiliation with Palmer or NCWC. *See*, *e.g.*, *Camunas v. Nat'l Republican Senatorial Comm.*, CIVIL ACTION NO. 21-1005, 2021 U.S. Dist. LEXIS 100125, at *9 (E.D. Pa. May 26, 2021) (granting 12(b)(6) motion because TCPA plaintiff's complaint "does not quote or otherwise describe the content of the alleged messages in a way that indicates the [defendant], rather than another individual or organization, sent the messages.").

Plaintiffs' threadbare recitals are exactly the type of unsubstantiated "defendant-harmed-me" allegations that warrant dismissal. And as stated above, to the extent Plaintiffs' lump pleadings attempt to plead direct liability as to Palmer or NCWC by making blanket allegations to "defendants" generally, *see*, *e.g.*, Am. Compl. ¶ 40, they fail to meet the Rule 8 pleading standard. *Snowden*, 2016 U.S. Dist. LEXIS 186727, at *18-19; *Zola H. v. Snyder*, Case No. 12-14073, 2013 U.S. Dist. LEXIS 125199, at *26 (D. Mich. Sept. 3, 2013) (ruling that a complaint that "fails to imput[e] concrete acts to specific litigants, fails to state a plausible claim.") (citation omitted).

### 3. Plaintiffs Fail to Allege Vicarious Liability.

Plaintiffs also fail to plausibly allege that Palmer or NCWC is vicariously liable for the calls at issue. "A plaintiff can establish an agency relationship, and therefore vicarious liability under the TCPA, using the 'bedrock theories of agency,' actual authority, apparent authority, and ratification." *Abante Rooter & Plumbing, Inc. v. Alarm.com Inc.*, 2018 U.S. Dist. LEXIS 132078, at *10 (N.D. Cal. Aug. 3, 2018) (citing *Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443,

449 (9th Cir. 2018)).   And as discussed above, the hallmark of establishing an agency relationship is a showing of the principal's control over the alleged agent.  *See Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1024-25 (9th Cir. 2017).

But Plaintiffs fall completely flat in their attempt to plausibly allege that any such relationship exists.   Indeed, Plaintiffs' allegations regarding vicarious liability are simple recitations of the elements of a TCPA agency claim, without any factual evidence to substantiate their conclusory recitals.  *See* Am. Compl. ¶¶ 40-46; *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" in meeting the standard required by Rule 8.); *see also Cunningham v. Lifestyles Dev., LLC*, CIVIL ACTION NO. 4:19-CV-00006-ALM-CAN, 2019 U.S. Dist. LEXIS 154112, at *12 (E.D. Tex. Aug. 8, 2019) (citing *Naiman v. Freedom Forever, LLC*, Case No.19-cv-00256-JSC, 2019 U.S. Dist. LEXIS 69728, at *8 (N.D. Cal. Apr. 24, 2019)) ("Plaintiff must allege factual allegations regarding [defendant's] relationship with the purported agents/callers—broad, general allegations are not sufficient.").

Moreover, to the extent that Plaintiffs do vaguely describe being offered Palmer's product by an unnamed party in at least one call, this is not evidence of an agency relationship. Am. Compl. ¶¶ 29, 37.  Crucially, nowhere in the Amended Complaint do Plaintiffs allege that they ever had any communication with Palmer or NCWC.  Accordingly, there is certainly no evidence of actual authority conferred unto any of the purported agents.  *See, e.g., Valdes v. Nationwide Real Estate Execs.*, SA CV 20-01734-DOC-(JDEx), 2021 U.S. Dist. LEXIS 100931, at *9 (C.D. Cal. Apr. 22, 2021) ("Actual authority is limited to actions 'specifically mentioned to be done in a written or oral communication' or 'consistent with' a principal's 'general statement of what the agent is supposed to do.'" (quoting *Salyers v. Metro. Life Ins. Co.*, 871 F.3d 934, 940

(9th Cir. 2017))).

And Plaintiffs allege no communications with Palmer or NCWC that could support the idea that either of them exercised control over or delegated authority to this undisclosed alleged agent. *Valdes*, 2021 U.S. Dist. LEXIS 100931, at *10 ("Apparent authority arises from the principal's manifestations to a third party that supplies a reasonable basis for that party to believe that the principal has authorized the alleged agent to do the act in question.") (citation omitted).[6] Nor do Plaintiffs allege any statement by any John Doe Defendant that could plausibly show any agency relationship with Palmer or NCWC.[7]  Plaintiffs' conclusory fabrications fall well short of *Iqbal*'s requirement to open the doors of discovery.

Plaintiffs' unsupported conclusions regarding ratification similarly do not hold water.  A purported principal must have knowledge of illegal conduct in order to ratify that conduct. *Valdes*, 2021 U.S. Dist. LEXIS 100931, at *11 (quoting *Henderson v. United Student Aid Funds,*

---

[6]    *See also Cunningham v. Health Plan Intermediaries Holdings, LLC*, NO. 3:18-cv-00518, 2021 U.S. Dist. LEXIS 91978, at *7-8 (M.D. Tenn. May 14, 2021) (dismissing TCPA claims for failing to plausibly allege facts that purported principal had manifested authority in agent); *Warciak v. Subway Rests., Inc.*, No. 1:16-cv-08694, 2019 U.S. Dist. LEXIS 32357, at *7 (N.D. Ill. Feb. 28, 2019) (finding that to plausibly allege apparent authority in TCPA claim, "[plaintiff] would need to allege that he reasonably believed [agent] text messaged him as [principal's] agent and that his belief is traceable to some communication from [principal]." (citing *Smith v. State Farm Mut. Auto. Ins. Co.*, 30 F. Supp. 3d 765, 777 (N.D. Ill. 2014))); *Stark v. Stall*, No. 19-cv-00366-AJB-AHG, 2021 U.S. Dist. LEXIS 94503, at *8-9 (S.D. Cal. May 18, 2021).

[7]    At most Plaintiffs allege that some unnamed party contacted them purportedly to sell a Palmer product.  *See* Am. Compl. ¶¶ 29, 37.  Simply advertising or selling a company's products does not create an agency relationship.  *See Warciak v. Subway Rests., Inc.*, 949 F.3d 354, 357 (7th Cir. 2020) ("While an agency relationship can be created by contract, not all contractual relationships form an agency.  For example, when a company wishes to place an advertisement in a circular, the publisher of the circular does not become the agent of the company.").  7-11 sells Coca-Cola products, but that does not make 7-11 Coca-Cola's agent.  *See also Sundermann v. Golden Circle Real Estate Group*, Case No. 4:19-cv-00140, 2019 U.S. Dist. LEXIS 226057, at *8-9 (S.D. Iowa Oct. 29, 2019) (granting defendant seller's motion to dismiss because plaintiff did not plead facts sufficient to establish apparent authority or ratification when all statements other than caller's identification that he was calling on behalf of seller's d/b/a were "not factual allegations but legal conclusions that merely recite the elements required to show an agency relationship.").

*Inc.*, 918 F.3d 1068, 1074 (9th Cir. 2019)) (affirming that ratification requires the alleged principal to have actual knowledge of the agent's actions or be willfully ignorant of material facts).[8]    Plaintiffs plead no such knowledge here, as there is no allegation as to any communications with either Palmer or NCWC.  Plaintiffs point instead to BBB complaints from random consumers, which are not evidence of wrongdoing at all,[9] much less proof that Defendants had actual knowledge that some unnamed telemarketer allegedly made unlawful calls to *Plaintiffs'* cell phones—the specific knowledge Plaintiffs would need to allege to make out a plausible ratification theory here, which they of course cannot and have not done.

In short, Plaintiffs' claims that an agency relationship exists between Palmer or NCWC and some unspecified Doe Defendant(s) based on some vague hearsay regarding an unspecified relationship is not plausible under the Supreme Court's *Iqbal/Twombly* pleading standard.  The Court should therefore dismiss Plaintiffs' claims.

### 4.    Plaintiff Odle's Claims for Calls Outside the Statute of Limitations Should Be Dismissed.

The only date Plaintiff Odle specifically alleges a call occurred is February 28, 2017. Am. Compl. ¶ 29.  While Plaintiff Odle generally alleges she received calls after that date, all calls that occurred more than four years before April 25, 2021, the date Plaintiff Odle filed her initial Complaint, are barred by the applicable statute of limitations.  *See Dickey v. Vital One*

---

[8]    *See also Rosenberg v. LoanDepot.com LLC*, 435 F. Supp. 3d 308, 325 (D. Mass. 2020) ("A seller may be liable for unauthorized conduct of a telemarketer *if the seller is aware of the unauthorized conduct of the telemarketer* and fails to terminate its services.") (emphasis added); *Naiman v. TranzVia LLC*, Case No. 17-cv-4813-PJH, 2017 U.S. Dist. LEXIS 199131, at *36-37 (N.D. Cal. Dec. 4, 2017) (citing *Batzel v. Smith*, 333 F.3d 1018, 1036 (9th Cir. 2003)) ("If an agency relationship was not established prior to the unauthorized tort, the continued funding of the other entity is not considered ratification."); Restatement (Third) Of Agency § 4.06 (2006) (A party "is not bound by a ratification made without knowledge of material facts involved in the original act when the [party] was unaware of such lack of knowledge.").

[9]    *See* Am. Compl. ¶ 24 (citing BBB complaints); *see Shanahan*, 2020 U.S. Dist. LEXIS 101031, at *17 (rejecting BBB complaints as evidence of ratification).

*Health Plans Direct, LLC*, No. 1:18-cv-01399-DAD-BAM, 2020 U.S. Dist. LEXIS 37576, at *4 (E.D. Cal. Mar. 3, 2020) ("The TCPA has a four-year statute of limitations [under 28 U.S.C. § 1658(a)].") (citation omitted).  Accordingly, those claims must be dismissed.

## V.    CONCLUSION

For the reasons set forth above, Defendants respectfully move this Court to enter an Order dismissing Plaintiffs Saprina Odle and Jessica Hlavinka's Amended Complaint for lack of personal jurisdiction and for failure to state a claim under Rules 12(b)(2) and 12(b)(6).

Respectfully submitted this 29th day of July, 2021.

**CHOCK BARHOUM LLP**
*Attorney for Defendants Palmer*
*Administrative Services, Inc. and N.C.W.C.,*
*Inc.*

By:    */s/ Jeffrey W. Hansen*
        Jeffrey W. Hansen, Esq.
        Jonathan S. Liou, Esq.
        Chock Barhoum LLP
        121 SW Morrison Street, Suite 500
        Portland, OR 97204
        Phone: (503) 477-8906
        Email: jeff.hansen@chockbarhoum.com
               jon.liou@chockbarhoum.com

By: */s/ Joseph P. Bowser*
Joseph P. Bowser, *admitted pro hac vice*
ROTH JACKSON
1519 Summit Ave., Ste. 102
Richmond, VA 23230
Phone: 804-441-8701
Email: jbowser@rothjackson.com

By: */s/ Gregory M. Caffas*
Gregory M. Caffas, *admitted pro hac vice*
ROTH JACKSON
8200 Greensboro Dr., Ste. 820
McLean, VA 22102
Phone: 703-485-3533
Email: gcaffas@rothjackson.com

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the applicable word-count limitation under LR 7-2(b) because it contains 8,005 words, including headings, but excluding the caption, signature block, and any certificates of counsel.

*/s/ Jeffrey W. Hansen*

Jeffrey W. Hansen, Esq.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on July 29, 2021 a true and correct copy of Defendants' Motion to Dismiss Plaintiffs' Amended Complaint has been served via the Court's ECF system on:

Michael R. Fuller
OlsenDaines
US Bancorp Tower
111 SW 5th Ave., Suite 3150
Portland, OR 97204
Phone: 503-222-2000
Fax: 503-362-1375
Email: Michael@UnderdogLawyer.com

Justin M. Baxter
Baxter & Baxter, LLP
8835 S.W. Canyon Lane
Suite 130
Portland, OR 97225-3429
Phone: 503-297-9031
Fax: 503- 291-9172
Email: justin@baxterlaw.com

Kelly D. Jones
Kelly D. Jones, Attorney at Law
819 SE Morrison St.
Suite 255
Portland, OR 97214
Phone: 503-847-4329
Fax: 503-715-0524
Email: kellydonovanjones@gmail.com

*/s/ Jeffrey W. Hansen*
Jeffrey W. Hansen, Esq.

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF OREGON
# PORTLAND DIVISION

**CHOCK BARHOUM LLP**
Jeffrey W. Hansen, Esq.
121 SW Morrison Street, Suite 500
Portland, OR 97204
(503) 477-8906
*Attorney for Defendants Palmer Administrative*
*Services, Inc. and N.C.W.C., Inc.*

| | |
|---|---|
| **SAPRINA ODLE** **and** **JESSICA HLAVINKA** individually and on behalf of all others, **Plaintiffs,** **v.** **PALMER ADMINISTRATIVE SERVICES, INC., N.C.W.C., INC., and DOES 1-10,** **Defendants.** | Case No. 3:21-cv-00623-AC **DECLARATION OF MICHAEL SHAFTEL IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT** |

Pursuant to 28 U.S.C. § 1746, I, MICHAEL SHAFTEL, under penalty of perjury, declare as follows:

1.    My name is Michael Shaftel.  I am over 21 years of age and am competent to testify.  I was President of Palmer Administrative Services, Inc. ("Palmer") and N.C.W.C., Inc. ("NCWC") from the company's inception many years ago until June 25, 2021.  Since then, I have been assisting with the transition of the company's ownership to the new management team.

2.    I make the statements in this declaration based on my personal knowledge, including knowledge of Palmer and NCWC during the period which I served as President of

those companies, which includes the time period in which all events described in the Plaintiffs' Amended Complaint, filed June 24, 2021, occurred.

3.    I have reviewed Plaintiffs Saprina Odle and Jessica Hlavinka's Amended Complaint in this case.

4.    Palmer is a Delaware corporation and maintains its principal place of business in New Jersey.

5.    NCWC is a New Jersey corporation with its principal place of business in New Jersey.

6.    Palmer is a third-party administrator of extended service contracts for automobiles.  It is engaged primarily in the business of handling claims by policy holders and customer service for such policy holders.  Palmer does not market or sell the contracts it administers, and the companies that do market and sell Palmer-administered service contracts do so through NCWC, to whom Palmer has contractually authorized the right to enter into the commercial arrangements under which third-parties are authorized to sell Palmer-administered contracts.

7.    NCWC is an affiliate of Palmer that, among other things, contracts with the various independent third-party companies that are permitted to market and sell policies administered by Palmer.  Like Palmer, NCWC has no consumer-facing role or obligations before a Palmer product is sold by one of the independent third-party sellers.  NCWC is not a party to the consumers' service contracts that are sold by the independent third-party sellers, each of whom sell in their own business name.  Thus, when a consumer buys a Palmer-administered contract, there are at least three parties, and possibly a fourth, to those contracts, as follows:  (1) the consumer who buys the policy from (2) the third-party seller; (3) Palmer, who administers

EXHIBIT 1, Page 2 of 7

the extended service contracts by handling claims, paying the various vendors, etc.; and (4) *if* the consumer chooses to pay for their Palmer-administered plan through third-party financing, then the third-party finance company is a party to that part of the transaction.

8.    Neither NCWC nor Palmer own or lease any real estate or property in the State of Oregon.

9.    While Palmer is registered to do business in the State of Oregon, there are no office locations in Oregon where Palmer has ever conducted business operations of any kind. NCWC is not registered to do business in Oregon, and has never conducted any of its business operations from Oregon.

10.    As explained above, Palmer and NCWC do not engage in outbound telemarketing themselves, and therefore do not initiate outbound sales calls to any consumers, such that Palmer and NCWC could not have made, and did not make, any telemarketing calls to either Plaintiff.

11.    In fact, Palmer and NCWC were not aware of any of the alleged calls to either Plaintiff, and they have no record of either Plaintiff's name in their files as having ever been a customer.

12.    Palmer and NCWC are certainly not the only companies associated with extended service contracts for automobiles; the industry for the sale and administration of these products is highly competitive, and a number of Palmer's competitors market products through phone calls to consumers.

13.    Plaintiffs state in paragraph 18 of their Amended Complaint that "Palmer, directly or through NCWC, purposefully directed their solicitation activities to Oregon by intentionally giving its contracted telemarketing agents (the Doe defendants) implied actual or apparent authority to make calls to residents of all 50 states, including those in Oregon such as plaintiffs

3

and the Class Members with Oregon-designated area codes, using artificial or prerecorded voice messages without their consent in violation of the TCPA." These allegations are false.

14.    Palmer and NCWC did not and do not direct, oversee, or manage any third-party in initiating calls in which Palmer-administered contracts are marketed, or any other outbound telemarketing phone calls to consumers in Oregon.

15.    Palmer and NCWC did not cause anyone else to call either Plaintiff or any purported class members, including the calls described in paragraphs 29 through 38 of Plaintiffs' Amended Complaint.

16.    Again, Palmer's business is focused on the administration and claims-handling of its current customers' claims and managing the many vendor relationships needed to ably manage the customers' claims under those policies with the various garages, mechanics, auto body shops and the like. And NCWC principally manages the distribution of the rights to market and sell the Palmer-administered products, and provides some other post-sale support services for Palmer's customers. Neither company contacts consumers until they become a Palmer customer, after one of the NCWC-authorized third-party sellers sells the consumer a Palmer extended-service product.

17.    Palmer and NCWC have no role or involvement in the operations of any third-party telemarketing company authorized to sell products Palmer administers. The marketing operations of these companies, including how they obtain leads and what scripts they use, are created and maintained entirely by those marketing companies. Apart from a broad-form compliance-with-laws clause in NCWC's agreements with the third-party marketers, Palmer and NCWC have no control over how the marketers conduct their operations.

EXHIBIT 1, Page 4 of 7

18.    In short, any allegation by Plaintiffs that a telemarketing call associated with a Palmer product was made "on behalf of" or with "implied, actual, or apparent authority" of Palmer or NCWC is mistaken because Palmer and NCWC do not confer that authority on telemarketing companies and do not control (or have the right to control) those companies' telemarketing practices.

19.    Additionally, Palmer and NCWC do not confer the authority to draft or in any way materially alter the extended vehicle warranty plans Palmer administers to any telemarketing companies permitted to market or sell Palmer's products.  These independent marketing companies may only input a customer's identifying information and pricing details into form agreements.  Palmer controls the terms of its own products, but beyond that has no right or duty to manage how the marketers conduct their day-to-day operations.

20.    I also note that Palmer and NCWC have not ratified the conduct of any party that allegedly made any call to either Plaintiff in violation of the TCPA or any other law or regulation "on behalf of" Palmer or NCWC.

21.    Again, before receiving the lawsuit and then the Amended Complaint, Palmer and NCWC had no knowledge of any issues surrounding any allegedly unwanted calls to Plaintiffs, neither of whom have ever bought a Palmer-administered policy according to the company's records, and thus neither Palmer nor NCWC are aware of any benefit ever received from anyone with Plaintiffs' names.

22.    Nor has Palmer or NCWC ever directed or authorized any company permitted to market or sell policies it administers to violate the TCPA or any other relevant state statute. Again, Palmer and NCWC made no marketing calls to either Plaintiff, and to my knowledge still,

to date, have no knowledge that any of their independent, third-party marketers did, such that Palmer and NCWC are aware of no conduct they could even ratify.

23.     Specifically, after being served with this lawsuit, NCWC inquired with the third-party telemarketing companies currently authorized to sell products Palmer administers whether any of those companies has record of making any calls to Plaintiff Saprina Odle at her cellular phone number 541-530-XXXX (it is my understanding that, to date, Plaintiffs have refused our counsel's request to provide full phone numbers to aid in this investigation).   With the information available to us, none of these companies have a record of any calls or other interactions with Ms. Odle, by name.

24.     After being served with Plaintiffs' Amended Complaint, Palmer and NCWC also investigated Plaintiff Jessica Hlavinka's claims.   While our investigation was unable to provide a high level of confidence of what Ms. Odle's phone number may be with only the limited information in her Complaint, our independent investigation of third-party databases gives us a reasonable level of confidence that Ms. Hlavinka's cellular phone number ends in -883.   NCWC asked each of the authorized third-party marketing companies whether any of those companies has a record of making any calls to Plaintiff Jessica Hlavinka on her cell phone number believed to end in -883.   All of those companies reported having no record of making any calls to Ms. Hlavinka at that number.

25.     In short, Palmer and NCWC do not, nor have they ever, made illegal robocalls, or authorized any other parties to make illegal robocalls. And based on the information Plaintiffs have provided to date, we have uncovered no evidence that connects Palmer, NCWC, or any of the NCWC-authorized third-party sellers with these two Plaintiffs.

EXHIBIT 1, Page 6 of 7

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 28 day of July , 2021.

MICHAEL SHAFTEL

7