**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF OREGON**
**PORTLAND DIVISION**

**CHOCK BARHOUM LLP**
Jeffrey W. Hansen, Esq.
121 SW Morrison Street, Suite 500
Portland, OR 97204
(503) 477-8906
*Attorney for Defendants Palmer Administrative Services, Inc. and N.C.W.C., Inc.*

| | |
|---|---|
| **SAPRINA ODLE and JESSICA HLAVINKA** individually and on behalf of all others,<br><br>**Plaintiffs,**<br><br>v.<br><br>**PALMER ADMINISTRATIVE SERVICES, INC., N.C.W.C., INC., and DOES 1-10,**<br><br>**Defendants.** | Case No. 3:21-cv-00623-AC<br><br>**DECLARATION OF MICHAEL SHAFTEL IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT** |

Pursuant to 28 U.S.C. § 1746, I, MICHAEL SHAFTEL, under penalty of perjury, declare as follows:

1.	My name is Michael Shaftel. I am over 21 years of age and am competent to testify. I was President of Palmer Administrative Services, Inc. ("Palmer") and N.C.W.C., Inc. ("NCWC") from the company's inception many years ago until June 25, 2021. Since then, I have been assisting with the transition of the company's ownership to the new management team.

2.	I make the statements in this declaration based on my personal knowledge, including knowledge of Palmer and NCWC during the period which I served as President of

those companies, which includes the time period in which all events described in the Plaintiffs' Amended Complaint, filed June 24, 2021, occurred.

3. I have reviewed Plaintiffs Saprina Odle and Jessica Hlavinka's Amended Complaint in this case.

4. Palmer is a Delaware corporation and maintains its principal place of business in New Jersey.

5. NCWC is a New Jersey corporation with its principal place of business in New Jersey.

6. Palmer is a third-party administrator of extended service contracts for automobiles. It is engaged primarily in the business of handling claims by policy holders and customer service for such policy holders. Palmer does not market or sell the contracts it administers, and the companies that do market and sell Palmer-administered service contracts do so through NCWC, to whom Palmer has contractually authorized the right to enter into the commercial arrangements under which third-parties are authorized to sell Palmer-administered contracts.

7. NCWC is an affiliate of Palmer that, among other things, contracts with the various independent third-party companies that are permitted to market and sell policies administered by Palmer. Like Palmer, NCWC has no consumer-facing role or obligations before a Palmer product is sold by one of the independent third-party sellers. NCWC is not a party to the consumers' service contracts that are sold by the independent third-party sellers, each of whom sell in their own business name. Thus, when a consumer buys a Palmer-administered contract, there are at least three parties, and possibly a fourth, to those contracts, as follows: (1) the consumer who buys the policy from (2) the third-party seller; (3) Palmer, who administers

2

the extended service contracts by handling claims, paying the various vendors, etc.; and (4) *if* the consumer chooses to pay for their Palmer-administered plan through third-party financing, then the third-party finance company is a party to that part of the transaction.

8. Neither NCWC nor Palmer own or lease any real estate or property in the State of Oregon.

9. While Palmer is registered to do business in the State of Oregon, there are no office locations in Oregon where Palmer has ever conducted business operations of any kind. NCWC is not registered to do business in Oregon, and has never conducted any of its business operations from Oregon.

10. As explained above, Palmer and NCWC do not engage in outbound telemarketing themselves, and therefore do not initiate outbound sales calls to any consumers, such that Palmer and NCWC could not have made, and did not make, any telemarketing calls to either Plaintiff.

11. In fact, Palmer and NCWC were not aware of any of the alleged calls to either Plaintiff, and they have no record of either Plaintiff's name in their files as having ever been a customer.

12. Palmer and NCWC are certainly not the only companies associated with extended service contracts for automobiles; the industry for the sale and administration of these products is highly competitive, and a number of Palmer's competitors market products through phone calls to consumers.

13. Plaintiffs state in paragraph 18 of their Amended Complaint that "Palmer, directly or through NCWC, purposefully directed their solicitation activities to Oregon by intentionally giving its contracted telemarketing agents (the Doe defendants) implied actual or apparent authority to make calls to residents of all 50 states, including those in Oregon such as plaintiffs

and the Class Members with Oregon-designated area codes, using artificial or prerecorded voice messages without their consent in violation of the TCPA." These allegations are false.

14. Palmer and NCWC did not and do not direct, oversee, or manage any third-party in initiating calls in which Palmer-administered contracts are marketed, or any other outbound telemarketing phone calls to consumers in Oregon.

15. Palmer and NCWC did not cause anyone else to call either Plaintiff or any purported class members, including the calls described in paragraphs 29 through 38 of Plaintiffs' Amended Complaint.

16. Again, Palmer's business is focused on the administration and claims-handling of its current customers' claims and managing the many vendor relationships needed to ably manage the customers' claims under those policies with the various garages, mechanics, auto body shops and the like. And NCWC principally manages the distribution of the rights to market and sell the Palmer-administered products, and provides some other post-sale support services for Palmer's customers. Neither company contacts consumers until they become a Palmer customer, after one of the NCWC-authorized third-party sellers sells the consumer a Palmer extended-service product.

17. Palmer and NCWC have no role or involvement in the operations of any third-party telemarketing company authorized to sell products Palmer administers. The marketing operations of these companies, including how they obtain leads and what scripts they use, are created and maintained entirely by those marketing companies. Apart from a broad-form compliance-with-laws clause in NCWC's agreements with the third-party marketers, Palmer and NCWC have no control over how the marketers conduct their operations.

18. In short, any allegation by Plaintiffs that a telemarketing call associated with a Palmer product was made "on behalf of" or with "implied, actual, or apparent authority" of Palmer or NCWC is mistaken because Palmer and NCWC do not confer that authority on telemarketing companies and do not control (or have the right to control) those companies' telemarketing practices.

19. Additionally, Palmer and NCWC do not confer the authority to draft or in any way materially alter the extended vehicle warranty plans Palmer administers to any telemarketing companies permitted to market or sell Palmer's products. These independent marketing companies may only input a customer's identifying information and pricing details into form agreements. Palmer controls the terms of its own products, but beyond that has no right or duty to manage how the marketers conduct their day-to-day operations.

20. I also note that Palmer and NCWC have not ratified the conduct of any party that allegedly made any call to either Plaintiff in violation of the TCPA or any other law or regulation "on behalf of" Palmer or NCWC.

21. Again, before receiving the lawsuit and then the Amended Complaint, Palmer and NCWC had no knowledge of any issues surrounding any allegedly unwanted calls to Plaintiffs, neither of whom have ever bought a Palmer-administered policy according to the company's records, and thus neither Palmer nor NCWC are aware of any benefit ever received from anyone with Plaintiffs' names.

22. Nor has Palmer or NCWC ever directed or authorized any company permitted to market or sell policies it administers to violate the TCPA or any other relevant state statute. Again, Palmer and NCWC made no marketing calls to either Plaintiff, and to my knowledge still,

to date, have no knowledge that any of their independent, third-party marketers did, such that Palmer and NCWC are aware of no conduct they could even ratify.

23. Specifically, after being served with this lawsuit, NCWC inquired with the third-party telemarketing companies currently authorized to sell products Palmer administers whether any of those companies has record of making any calls to Plaintiff Saprina Odle at her cellular phone number 541-530-XXXX (it is my understanding that, to date, Plaintiffs have refused our counsel's request to provide full phone numbers to aid in this investigation). With the information available to us, none of these companies have a record of any calls or other interactions with Ms. Odle, by name.

24. After being served with Plaintiffs' Amended Complaint, Palmer and NCWC also investigated Plaintiff Jessica Hlavinka's claims. While our investigation was unable to provide a high level of confidence of what Ms. Odle's phone number may be with only the limited information in her Complaint, our independent investigation of third-party databases gives us a reasonable level of confidence that Ms. Hlavinka's cellular phone number ends in -883. NCWC asked each of the authorized third-party marketing companies whether any of those companies has a record of making any calls to Plaintiff Jessica Hlavinka on her cell phone number believed to end in -883. All of those companies reported having no record of making any calls to Ms. Hlavinka at that number.

25. In short, Palmer and NCWC do not, nor have they ever, made illegal robocalls, or authorized any other parties to make illegal robocalls. And based on the information Plaintiffs have provided to date, we have uncovered no evidence that connects Palmer, NCWC, or any of the NCWC-authorized third-party sellers with these two Plaintiffs.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 28 day of July, 2021.

*[signature]*

MICHAEL SHAFTEL

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on July 29, 2021 a true and correct copy of Declaration of Michael Shaftel in Support of Defendants' Motion to Dismiss Plaintiffs' Amended Complaint has been served via the Court's ECF system on:

Michael R. Fuller
OlsenDaines
US Bancorp Tower
111 SW 5th Ave., Suite 3150
Portland, OR 97204
Phone: 503-222-2000
Fax: 503-362-1375
Email: Michael@UnderdogLawyer.com

Justin M. Baxter
Baxter & Baxter, LLP
8835 S.W. Canyon Lane
Suite 130
Portland, OR 97225-3429
Phone: 503-297-9031
Fax: 503- 291-9172
Email: justin@baxterlaw.com

Kelly D. Jones
Kelly D. Jones, Attorney at Law
819 SE Morrison St.
Suite 255
Portland, OR 97214
Phone: 503-847-4329
Fax: 503-715-0524
Email: kellydonovanjones@gmail.com

                */s/ Jeffrey W. Hansen*
                Jeffrey W. Hansen, Esq.